UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE 1 and JANE DOE 2, on behalf of themselves and all similarly situated women,<br><br>        Plaintiffs,<br><br>    -against-<br><br>THE CITY OF NEW YORK and BENNY SANTIAGO,<br><br>        Defendants. | 15 Civ. 3849 (AKH) |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF JANE DOE 1'S MOTION FOR CLASS CERTIFICATION
## <u>AND APPOINTMENT OF CLASS COUNSEL</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 3

ARGUMENT ......................................................................................................................... 10

I.     CLAIMS FOR SYSTEM-WIDE JAIL REFORM ARE PARTICULARLY
APPROPRIATE FOR CLASS TREATMENT. ........................................................... 10

II.    RULE 23 CLASS CERTIFICATION STANDARD ..................................................... 11

III.   THIS ACTION SHOULD BE MAINTAINED AS A CLASS ACTION. ................... 12

    A.   The Proposed Class Satisfies the Prerequisites of Rule 23(a). ...................................... 12

        1.   Numerosity - Rule 23(a)(1) ................................................................................ 12

        2.   Common Question of Law or Fact - Rule 23(a)(2) .............................................. 16

        3.   Typicality - Rule 23(a)(3) ................................................................................... 18

        4.   Adequacy of Representation - Rule 23(a)(4) ....................................................... 20

    B.   This Suit Qualifies as a Class Action Under Rule 23(b)(2). ......................................... 21

    C.   This Suit Qualifies as a Class Action under Rule 23(b)(1) ........................................... 22

IV.   CLASS STANDING REQUIREMENTS ARE MET. ................................................... 24

CONCLUSION ...................................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Cases**

*Amador v. Andrews*,
     655 F.3d 89 (2d Cir. 2011)..........................................................................   24, 25

*Baby Neal ex rel. Kanter v. Casey*,
     43 F.3d 48 (3d Cir. 1994) ...................................................................11, 18, 22

*Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*,
     222 F.3d 52 (2d Cir. 2000)..........................................................................   20

*Betances v. Fischer*,
     304 F.R.D. 416 (S.D.N.Y. 2015) ................................................................   20

*Boucher v. Syracuse Univ.*,
     164 F.3d 113 (2d Cir. 1999)........................................................................   14

*Butler v. Suffolk Cty*,
     289 F.R.D. 80 (E.D.N.Y. 2013) ..........................................................   *passim*

*Clarkson v. Coughlin*,
     145 F.R.D. 339 (S.D.N.Y. 1993) ................................................................   15

*Comer v. Cisneros*,
     37 F.3d 775 (2d Cir. 1994)..........................................................................   24, 25

*Consol. Rail Corp. v. Town of Hyde Park*,
     47 F.3d 473 (2d Cir. 1995)..........................................................................   12

*Cortigiano v. Oceanview Manor Home for Adults*,
     227 F.R.D. 194 (E.D.N.Y. 2005) ................................................................   15

*Crawford v. Cuomo*,
     796 F.3d. 252 (2d Cir. 2015).......................................................................   6-7

*Cutler v. Perales*,
     128 F.R.D. 39 (S.D.N.Y. 1989) ..................................................................   19

*Daniels v. City of New York*,
     198 F.R.D. 409 (S.D.N.Y. 2001) ................................................................   16-17

*Dean v. Coughlin*,
     107 F.R.D. 331 (S.D.N.Y. 1985) .................................................14-15, 17, 19, 22

*Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*,
     445 U.S. 326 (1980).....................................................................................   25

*Floyd v. City of New York*,
    283 F.R.D. 153 (S.D.N.Y. 2012) ........................................................................... 13

*Gerstein v. Pugh*,
    420 U.S. 103 (1975) ............................................................................................... 25

*Hassine v. Jeffes*,
    846 F.2d 169 (3d Cir. 1988) ................................................................................. 10

*Ingles v. City of New York*,
    No. 01 Civ. 8279(DC), 2003 WL 402565 (S.D.N.Y. Feb. 20, 2003) .................... 11, 20, 23

*Inmates of Attica Corr. Facility v. Rockefeller*,
    453 F.2d 12 (2d Cir. 1971) .................................................................................. 11, 16

*Jones v. Goord*,
    190 F.R.D. 103 (S.D.N.Y. 1999) ........................................................................ 16, 19

*In re J.P. Morgan Chase Cash Balance Litig.*,
    242 F.R.D. 265 (S.D.N.Y. 2007) ........................................................................... 23

*Juana D. ex rel. Ray M. v. Bd. of Educ.*,
    884 F. Supp. 696 (E.D.N.Y. 1995) ........................................................................ 16

*M.K.B. v. Eggleston*,
    445 F. Supp. 2d 400 (S.D.N.Y. 2006) .................................................................... 13

*MacNamara v. City of New York*,
    275 F.R.D. 125 (S.D.N.Y. 2011) ........................................................................... 16

*Marisol A. ex rel. Forbes v. Giuliani*,
    929 F. Supp. 662 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 372 (2d Cir. 1997) ............... 11, 22

*Marisol A. ex rel. Forbes v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997) ............................................................................... 11, 12

*Nicholson v. Williams*,
    205 F.R.D. 92 (E.D.N.Y. 2001) .......................................................................... 14, 16

*Robertson v. NBA*,
    389 F. Supp. 867 (S.D.N.Y. 1975) ......................................................................... 23

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) .......................................................................... *passim*

*Robinson v. Metro-North Commuter R.R.*,
    267 F.3d 147 (2d Cir. 2001) ............................................................................... 18, 22

*Stinson v. City of New York*,
    282 F.R.D. 360 (S.D.N.Y. 2012) ..................................................................... 13

*Ventura v. N.Y.C. Health & Hosps. Corp.*,
    125 F.R.D. 595 (S.D.N.Y. 1989) ..................................................................... 14

*Weiss v. York Hosp.*,
    745 F.2d 786 (3d Cir. 1984).......................................................................... 10-11

**Statutes**

9 N.Y.C. R. & Regs. § 7504.1 ................................................................................. 9

11 R.I. Gen. Laws Ann. § 11-25-24 (West 1995)...................................................... 6

18 Pa. Cons. Stat. § 3124.2 (West 2011) .................................................................. 6

720 Ill. Comp. Stat. Ann. 5/11-9.2 (West 2014)....................................................... 6

Ala. Code § 14-11-31 (2004) ................................................................................. 6

Alaska Stat. Ann. § 11.41.427 (West 2013) .............................................................. 6

Ariz. Rev. Stat. Ann. § 13-1419 (2011) ................................................................... 6

Ark. Code Ann. § 5-14-127(a)(2) (West 2009) ......................................................... 6

Cal. Penal Code Ann. § 289.6 (West 2014) .............................................................. 6

Colo. Rev. Stat. Ann. § 18-7-701 (West 2010).......................................................... 6

Conn. Gen. Stat. Ann. § 53a-73a (West 2013) ......................................................... 6

Del. Code Ann. tit. 11, § 1259 (West 2010) ............................................................. 6

D.C. Code Ann. § 22-3014 (West 2013) .................................................................. 6

Fed. R. Civ. P. 23 ......................................................................................... *passim*

Fla. Stat. Ann. § 794.011 (West 2014) ..................................................................... 6

Ga. Code Ann. § 16-6-5.1 (West 2015) ................................................................... 6

Haw. Rev. Stat. Ann. § 707-732(e) (West 2008)........................................................ 6

Idaho Code Ann. § 18-6110 (West 2009) ................................................................ 6

Ind. Code Ann. § 35-44.1-3-10 (West 2014) ............................................................ 6

Iowa Code Ann. § 709.16 (West 2015) ................................................................ 6

Kan. Stat. Ann. § 21-5512 (West 2014) ............................................................... 6

Ky. Rev. Stat. Ann. § 510.120 (West 2012) ........................................................ 6

La. Stat. Ann. § 14:134.1 (2010) ........................................................................ 6

Me. Stat. tit. 17-A, § 255-A (2011) ..................................................................... 6

Md. Code Ann., Crim. Law § 3-314 (West 2007) ............................................... 6

Mass. Gen. Laws Ann. ch. 268, § 21A (West 1999) ........................................... 6

Mich. Comp. Laws Ann. § 750.520c (West 2012) .............................................. 6

Minn. Stat. Ann. § 609.345 (West 2010) ............................................................. 6

Miss. Code Ann. § 97-3-104 (West 2010) ........................................................... 6

Mo. Ann. Stat. § 566.145 (West 2009) ................................................................ 6

Mont. Code Ann. § 45-5-502 (West 2011) .......................................................... 6

Neb. Rev. Stat. Ann. §§ 28-322 (West 2004), 28-322.01 (West 2004) .............. 6

Nev. Rev. Stat. Ann. § 212.187 (West 2013) ...................................................... 6

N.H. Rev. Stat. Ann. §§ 632-A:3 (West 2014), 632-A:4 (West 2014) ............... 6

N.J. Stat. Ann. §§ 2C:14-2 (West 2014), 2C:14-3 (West 1997) ........................ 6

N.M. Stat. Ann. § 30-9-11 (West 2009) .............................................................. 6

N.Y. Penal Law § 130.05(3) (McKinney 2012) .............................................. 1, 6

N.Y. Penal Law § 130.25(1) (McKinney 2000) .................................................. 1

N.Y. Penal Law § 130.40(1) (McKinney 2003) .................................................. 1

N.C. Gen. Stat. Ann. § 14-27.7 (West 2015) ...................................................... 6

N.D. Cent. Code Ann. § 12.1-20-07 (West 2001) ............................................... 6

Ohio Rev. Code Ann. § 2907.03 (West 2008) ..................................................... 6

Okla. Stat. Ann. tit. 21, § 1111(A)(7) (West 2006) ............................................ 6

Or. Rev. Stat. § 163.454 (West 2005) .................................................................. 6

S.C. Code Ann. § 44-23-1150(c)(2) (2001) ....................................................... 6

S.D. Codified Laws § 22-22-7.6 (2013) ............................................................ 6

Tenn. Code Ann. § 39-16-408 (West 2006) ...................................................... 6

Tex. Penal Code Ann. § 39.04 (West 2015) ...................................................... 6

Utah Code Ann. § 76-5-412 (West 2002) .......................................................... 6

Vt. Stat. Ann. tit. 13, § 3257 (West 2005) ........................................................ 6

Va. Code Ann. § 18.2-67.4 (West 2014) ........................................................... 6

Wash. Rev. Code Ann. § 9A.44.170 (West 1999)............................................. 6

W. Va. Code §§ 61-8B-2 (West 2012), 61-8B-7 (West 2006) .......................... 6

Wis. Stat. Ann. § 940.225 (West 2013) ............................................................ 6

Wyo. Stat. Ann. § 6-2-304 (West 2009) ........................................................... 6

**Other Authorities**

Allen J. Beck et al., U.S. Dep't of Justice, *Sexual Victimization in Prisons and Jails Reported by Inmates, 2011-12* (2013) .................................................. *passim*

Allen J. Beck et al., U.S. Dept. of Justice, *Sexual Victimization Reported by Adult Correctional Authorities, 2009-11* (2014) ............................................. 5, 8, 10

Allen J. Beck et al., U.S. Dep't of Justice, *Sexual Victimization Reported by Former State Prisoners, 2008* (2012) ......................................................... 8, 10

Andrew Mannix, *Prison sex-abuse cases grow, but prosecutions are rare*, Seattle Times (Aug. 1, 2015)............................................................................ 3, 10

Angela Browne et al., *Prevalence and Severity of Lifetime Physical and Sexual Victimization Among Incarcerated Women*, 22 Int'l J.L. & Psychiatry (1999)...... 5

Chandra Bozelko, *Why We Let Prison Rape Go On*, N.Y. Times (Apr. 17, 2015)............ 3, 5, 10

Cindy L. Rich et al., *From Child Sexual Abuse to Adult Sexual Risk: Trauma, Revictimization, and Intervention* (Linda J. Koenig et al. eds., 2004).................... 5

Cris Barrish, *Sex behind bars: Women violated in Delaware prison*, News Journal (Jul. 31, 2015) ............................................................................... 10

Directive, N.Y.C. Dep't of Corr., Preventing Inmate Sexual Abuse, Dec. 31, 2008 ........ 1, 6

Just Detention Int'l, *Sexual Abuse in Detention and the Law* (2013) ................................ 10

Kelly Riddell, *Shades of Shawshank: Guards, staff committed half of all prison sex assaults*, Washington Times (Jan. 23, 2014) ........................................... 5

Letitia James, N.Y.C. Pub. Advocate, *Petition to the NYC Board of Correction for Rulemaking Pursuant to City Administrative Procedure Act Concerning Sexual Abuse and Sexual Harassment in New York City Jails* (Apr. 8, 2015) ................... 4, 5

Letter from Dori Lewis, Legal Aid Soc'y, to Richard T. Wolf, Exec. Dir. N.Y.C. Board of Corr. (May 11, 2015) ......................................................... 3, 6, 9

N.Y.C. Dep't of Corr., *Annual Submission to Bureau of Justice Statistics: Prison Rape Elimination Act (PREA) Allegations, 2007-2013* ................................... 4

N.Y.C. Dep't of Health and Mental Hygiene, *Sexual Abuse Quarterly Report Summary: April – June 2015* (2015) ..................................................... 4

N.Y.C. Dep't of Health and Mental Hygiene, *Sexual Abuse Quarterly Report Summary: January – March 2015* (2015) ................................................ 4

N.Y.C. Dep't of Investigation, *Report on the Recruiting and Hiring Process for New York City Correction Officers* (2015) ..................................... 8, 9

*National Prison Rape Elimination Commission Report* (2009) ......................................... 5, 7

Michael J. Planty et al., U.S. Dep't of Justice, *Female Victims of Sexual Violence, 1994-2010* (2013). ................................................................ 5

*Our Editorial: Prison rape deserves more attention*, Detroit News (Aug. 7, 2015) .......... 10

Ramona R. Rantala et al., U.S. Dep't of Justice, *Survey of Sexual Violence in Adult Correctional Facilities, 2009–11 - Statistical Tables* (2014) ............................... 7

Robert W. Dumond, Senior Program Dir., Just Detention Int'l, Testimony at the U.S. Dep't of Justice Review Panel on Prison Rape (Jan. 8, 2014) ............................... 7

U.S. Attorney's Office for the S.D.N.Y., *CRIPA Investigation of the New York Department of Correction Jails on Rikers Island* (Aug. 4, 2014) ......................... 5

U.S. Dep't of Justice, *Prison Rape Elimination Act Regulatory Impact Assessment: United States Department of Justice Final Rule* (May 17, 2012) ......................... 1, 5, 6

Plaintiff Jane Doe 1 submits this memorandum of law in support of her motion for class certification.  The Public Advocate for the City of New York, Letitia James, supports the certification of the class here, and has submitted a declaration in support.  *See* James Decl.

## PRELIMINARY STATEMENT

On any given night of the year, there are approximately 1,000 women incarcerated in the women's only jail at Rikers Island.  Statistics show that about sixty of these women have been—or will be—raped or sexually abused by correctional staff during the period of their incarceration.  Despite New York's absolute bar against any sexual contact between incarcerated individuals and correction officers,[1] rape and other sexual abuse of women at Rikers Island is a pervasive, deeply-entrenched problem that has reached record proportions.  While 1.8% of jail inmates nationwide reported experiencing sexual victimization *by correctional staff*, the rate at the women's only jail on Rikers Island is 5.9%, triple the national rate.[2]  That there is a systemic culture of sexual abuse in the women's jail is clear.  Yet the scale of the problem is much larger than suggested by these already alarming statistics, because the infliction of rape and other sexual abuse by jail and prison staff is a vastly underreported crime.[3]  Victims rarely report the abuse they suffer—let alone seek legal remedies.  Those who do report are ignored, treated as adversaries by New York City Department of Correction ("DOC")  staff, and are subject to further degradation within the facility through retaliation by their abusers, other staff and fellow

---

[1] *See* N.Y. Penal Law § 130.05(3)(f) (McKinney 2012), N.Y. Penal Law § 130.25(1) (McKinney 2000), and N.Y. Penal Law § 130.40(1) (McKinney 2003); *see also* Directive, N.Y.C. Dep't of Corr., Preventing Inmate Sexual Abuse, Dec. 31, 2008 (Mindlin Decl. Ex. 6) [hereinafter N.Y.C. DOC Directive].

[2] Allen J. Beck et al., U.S. Dep't of Justice, *Sexual Victimization in Prisons and Jails Reported by Inmates, 2011-12* 8, 13 tbl. 4 (2013), http://www.bjs.gov/content/pub/pdf/svpjri1112.pdf [hereinafter U.S. DOJ, *Sexual Victimization in Prisons and Jails Reported by Inmates*].

[3] *See* James Decl. ¶¶ 42-49; U.S. Dep't of Justice, *Prison Rape Elimination Act Regulatory Impact Assessment: United States Department of Justice Final Rule* 17-18 (May 17, 2012), http://www.ojp.usdoj.gov/programs/pdfs/prea_ria.pdf [hereinafter U.S. DOJ, *Regulatory Impact Assessment for PREA Final Rule*] (concluding, based upon the Bureau of Justice Statistics' survey, *Sexual Victimization in Prisons and Jails Reported by Inmates, 2008-09,* that between 69% and 82% of inmates who reported sexual abuse in response to the survey stated that they had never reported an incident to corrections staff).

inmates.[4]  That is the reason for this lawsuit: to speak for the many women who each year are subjected to the pervasive sexual violence at RMSC, by putting an end to the scourge of sexual abuse at RMSC.

Named Plaintiff Jane Doe 1,[5] who was confined at RMSC at the time of the filing of the Complaint, seeks to represent a class established under Rule 23(b)(2) of the Federal Rules of Civil Procedure, consisting of all women who are presently incarcerated and will be incarcerated at RMSC, and who have been or will be raped or sexually abused by staff while incarcerated there.  The proposed class seeks declaratory and injunctive relief to remedy the widespread incidence of rape and sexual abuse described here and in the Complaint.

Class certification is a standard and well-established means of efficiently addressing civil rights violations—and system-wide jail reform litigation in particular—where injunctive and declaratory relief is necessary to prevent the high likelihood of ongoing and future harm.  Courts routinely grant class certification in matters like this one, because certification under Rule 23(b)(2) is an effective mechanism for asserting rights of a class of individuals whose constitutional rights are being violated.  Furthermore, the requirements of class certification are met by this proposed class, which involves many women subject to the same systemic pattern of rape and sexual abuse by correctional staff as a result of the City's uniform failure to protect them.

The alternative to class certification—independent litigation of each victim's claims— would waste judicial resources and risk varying and potentially conflicting results.  In addition, given the extremely limited resources of the putative class members, many of whom were indigent even before they were incarcerated, absent class certification, the vast majority of class

---

[4] *See, e.g.*, Compl. ¶¶ 111-20.
[5] Jane Doe 2 was not confined at RMSC when the Complaint was filed.

members would endure violations of their constitutional rights but never have an opportunity to obtain redress.

Accordingly, Jane Doe 1 respectfully requests that this Court grant her motion for class certification.

## STATEMENT OF FACTS

Staff-on-inmate sexual abuse at RMSC is widespread: an "open secret" that seriously harms many women who suffer in silence, rightly fearful of retaliation.  The abuse ranges from forced, non-consensual acts and unwanted, sexually abusive touching to voyeurism and verbal harassment, often accompanied by threats of retaliation designed to deter women from reporting the abuse.[6]  The abuse causes the spread of sexually transmitted diseases, enables the smuggling of contraband, and has even resulted in attempted suicide.[7]  The rate of staff-on-inmate sexual misconduct at RMSC has made RMSC one of the twelve jails with the highest rates of staff sexual misconduct nationwide.[8]  In the period from February 2011 to May 2012, 8.6% of inmates at RMSC reported experiencing sexual victimization.[9]  This is nearly triple the national rate for jail inmates—3.2%.[10]  When considering solely incidents of staff-on-inmate sexual misconduct, RMSC's rate—5.9%—is *more* than triple the national rate—1.8%.[11]  Within the same time frame, RMSC also had the nation's highest rate of non-violent staff sexual coercion—5.6% of

---

[6] *See, e.g.*, Compl. ¶¶ 111-20; Letter from Dori Lewis, Legal Aid Soc'y, to Richard T. Wolf, Exec. Dir. N.Y.C. Board of Corr. 2-4 (May 11, 2015),
http://www.nyc.gov/html/boc/downloads/pdf/BOC%20PREA%20comments%20final.pdf [hereinafter Letter from Dori Lewis]; Chandra Bozelko, *Why We Let Prison Rape Go On*, N.Y. Times (Apr. 17, 2015),
http://www.nytimes.com/2015/04/18/opinion/why-we-let-prison-rape-go-on.html?_r=0; Andrew Mannix, *Prison sex-abuse cases grow, but prosecutions are rare*, Seattle Times (Aug. 1, 2015), http://www.seattletimes.com/seattle-news/prison-sex-abuse-cases-grow-but-prosecutions-are-rare/.
[7] *See* Letter from Dori Lewis, *supra* note 6, at 2-4; Bozelko, *supra* note 6.
[8] U.S. DOJ, *Sexual Victimization in Prisons and Jails Reported by Inmates*, *supra* note 2, at 13 tbl. 4.  Sexual victimization is defined as "all types of sexual activity, e.g., oral, anal, or vaginal penetration; hand jobs; touching of the inmate's buttocks, thighs, penis, breasts, or vagina in a sexual way; abusive sexual contacts; and both willing and unwilling sexual activity with staff."  *See id.* at 9.
[9] *Id.* at 71 app. tbl. 5.
[10] *Id.* at 9 tbl. 1.
[11] *Id.* at 13 tbl. 4.

women at RMSC were pressured by staff into engaging in sexual activity.[12]  This is more than *quadruple* the national average: 1.2% of jail inmates nationwide reported experiencing such pressure.[13]

Nor is the culture of sexual abuse, coercion and harassment at RMSC confined to that one facility on Rikers Island.  For even as rates of sexual victimization, staff sexual misconduct, and non-violent staff sexual coercion are higher at RMSC  than those at other surveyed detention centers on Rikers, those other facilities *all* had rates of sexual abuse higher than the national average.[14]  And while rates of sexual abuse at RMSC and Rikers are grim, they reflect the growing epidemic of sexual misconduct in prisons and jails across DOC facilities, as well as nationwide.  In 2013, DOC reported ***88 acts*** of staff-on-inmate sexual misconduct and harassment in DOC facilities.[15]  In the first half of 2015, The New York City Department of Health and Mental Hygiene reported 39 incidents of staff sexual abuse in New York City jails.[16] In 2014, 116 allegations of sexual abuse were made to medical providers of New York City jails.[17]

The Department of Justice has estimated—based on its survey of inmates—that 80,600 prison and jail inmates experienced sexual victimization between February 2011 and May 2012.[18]  Further, nearly half of substantiated incidents of sexual victimization reported

---

[12] *Id.* at 14, 87 app. tbl. 7.

[13] *Id.* at 14.

[14] *Id.* at 71 app. tbl. 5, 79 app. tbl. 6, 87 app. tbl. 7.  Another facility on Rikers Island also numbers among the twelve jails nationwide with the highest rates of staff sexual misconduct.  *Id.* at 87 app. tbl. 7.

[15] N.Y.C. Dep't of Corr., *Annual Submission to Bureau of Justice Statistics: Prison Rape Elimination Act (PREA) Allegations, 2007-2013* 1 (James Decl. Ex. 4).

[16] N.Y.C. Dep't of Health and Mental Hygiene, *Sexual Abuse Quarterly Report Summary: January – March 2015* (2015) (James Decl. Ex. 2); N.Y.C. Dep't of Health and Mental Hygiene, *Sexual Abuse Quarterly Report Summary: April – June 2015* (2015) (James Decl. Ex. 2).

[17] Letitia James, N.Y.C. Pub. Advocate, *Petition to the NYC Board of Correction for Rulemaking Pursuant to City Administrative Procedure Act Concerning Sexual Abuse and Sexual Harassment in New York City Jails* 21 (Apr. 8, 2015) (James Decl. Ex. 5) [hereinafter *Petition to the NYC Board of Correction*].

[18] U.S. DOJ, *Sexual Victimization in Prisons and Jails Reported by Inmates*, *supra* note 2, at 8.

nationwide involve staff—and overwhelmingly, correction officers.[19]  And when correction

officers perpetrate sexual abuse, women are disproportionately targeted.[20]  While women made

up just 7% of state and federal inmates from 2009-2011, 33% of staff-on-inmate assaults

involved female inmates.[21]  In jails, the disproportionality is even starker: females represent only

13% of inmates in local jails, but 67% of all victims of staff-on-inmate victimization.[22]

Moreover, the actual number of incidents and victims of sexual abuse is far greater than

the significant number reported, because sexual abuse in jail and prison is vastly underreported.[23]

Studies show that many incidents of rape, sexual abuse and sexual harassment are never

reported, and this is even more true for incarcerated individuals.[24]  Often, women in prison have

a history of prior sexual abuse and have learned to fear the consequences of reporting.[25]  And

federal government analyses note that these statistics are skewed because inmates who

---

[19] Allen J. Beck et al., U.S. Dept. of Justice, *Sexual Victimization Reported by Adult Correctional Authorities, 2009-11*, 1, 13 (2014), http://www.bjs.gov/content/pub/pdf/svraca0911.pdf [hereinafter U.S. DOJ, *Sexual Victimization Reported by Adult Correctional Authorities*]; *see also* Kelly Riddell, *Shades of Shawshank: Guards, staff committed half of all prison sex assaults*, Washington Times (Jan. 23, 2014),
http://www.washingtontimes.com/news/2014/jan/23/staff-members-committed-half-sexual-assaults-priso/?page=all.
[20] *See National Prison Rape Elimination Commission Report* 71 (2009), https://www.ncjrs.gov/pdffiles1/226680.pdf.
[21] U.S. DOJ, *Sexual Victimization Reported by Adult Correctional Authorities, supra* note 19, at 1.
[22] *Id.* at 12.
[23] *See* James Decl. ¶¶ 42-49; U.S. DOJ, *Regulatory Impact Assessment for PREA Final Rule*, *supra* note 3, at 17-18 (concluding, based upon the Bureau of Justice Statistics' survey, *Sexual Victimization in Prisons and Jails Reported by Inmates, 2008-09*, that between 69% and 82% of inmates who reported sexual abuse in response to the survey stated that they had never reported an incident to corrections staff.).  *See also* U.S. Attorney's Office for the S.D.N.Y., *CRIPA Investigation of the New York Department of Correction Jails on Rikers Island* n.14 (Aug. 4, 2014), http://www.justice.gov/sites/default/files/usao-sdny/legacy/2015/03/25/SDNY%20Rikers%20Report.pdf (expressing concern that "DOC may be under-reporting sexual assault allegations"); *Petition to the NYC Board of Correction*, *supra* note 17, at 21 (James Decl. Ex. 5).
[24] *See* James Decl. ¶ 42; Bozelko, *supra* note 6; Michael J. Planty et al., U.S. Dep't of Justice, *Female Victims of Sexual Violence, 1994-2010* 1 (2013), http://www.bjs.gov/content/pub/pdf/fvsv9410.pdf.
[25] *See* James Decl. ¶ 46-47; *see also, e.g.*, Angela Browne et al., *Prevalence and Severity of Lifetime Physical and Sexual Victimization Among Incarcerated Women*, 22 Int'l J.L. & Psychiatry 301, 310-22 (1999) (Mindlin Decl. Ex. 7) (study of women in New York State's Bedford Hills Correctional Facility finding that a majority of the women studied had experienced physical or sexual abuse in their lifetime, 82% had been severely physically or sexually abused during childhood, and 75% had suffered serious physical violence by an intimate partner during adulthood); Cindy L. Rich et al., *From Child Sexual Abuse to Adult Sexual Risk: Trauma, Revictimization, and Intervention* 56 (Linda J. Koenig et al. eds., 2004) (Mindlin Decl. Ex. 8) (review of nine studies investigating the relationship between childhood sexual abuse and subsequent sexual assault revealed consistent support for phenomenon of revictimization, with each study finding women with a history of childhood abuse two to three times more likely to experience adult sexual abuse compare with women who did not experience earlier abuse).

mistakenly consider themselves complicit in their abuse do not report that abuse.[26]  Fear of

reporting abuse occurs not only when a correction officer promises some benefit in return for

sexual favors—as happened to Jane Doe 1, Jane Doe 2, and numerous other women at RMSC—

but also because inmates have no practical ability to refuse correction officers' propositions.[27]

Inmates often do not know that statutes exist to protect them against sexual advances from

correction officers, despite the growing consensus by prison officials,[28] legislatures, and courts

that any sexual contact between correction officers and inmates is unacceptable, at the least, or

criminal, as in New York and forty-seven other states.[29]  As the Second Circuit recently

proclaimed, "sexual abuse of prisoners, once passively accepted by society, deeply offends

today's standards of decency. . . . A corrections officer's intentional contact with an inmate's

genitalia or other intimate area, which serves no penological purpose and is undertaken with the

---

[26] *See* U.S. DOJ, *Regulatory Impact Assessment for PREA Final Rule*, *supra* note 3, at 24-25; Letter from Dori Lewis, *supra* note 6, at 4-5.

[27] *See* Compl. ¶¶ 43-44, 54, 61-62, 65, 70-72, 103, 107, 125.

[28] *See* N.Y.C. DOC Directive, *supra* note 1 (Mindlin Decl. Ex. 6).

[29] Today, in addition to the District of Columbia, all but two states criminalize sexual contact between correction officers and inmates. *See* Ala. Code § 14-11-31 (2004); Alaska Stat. Ann. § 11.41.427 (West 2013); Ariz. Rev. Stat. Ann. § 13-1419 (2011); Ark. Code Ann. § 5-14-127(a)(2) (West 2009); Cal. Penal Code Ann. § 289.6 (West 2014); Colo. Rev. Stat. Ann. § 18-7-701 (West 2010); Conn. Gen. Stat. Ann. § 53a-73a (West 2013); D.C. Code Ann. § 22-3014 (West 2013); Fla. Stat. Ann. § 794.011 (West 2014); Ga. Code Ann. § 16-6-5.1 (West 2015); Haw. Rev. Stat. Ann. § 707-732(e) (West 2008); Idaho Code Ann. § 18-6110 (West 2009); 720 Ill. Comp. Stat. Ann. 5/11-9.2 (West 2014); Ind. Code Ann. § 35-44.1-3-10 (West 2014); Iowa Code Ann. § 709.16 (West 2015); Kan. Stat. Ann. § 21-5512 (West 2014); Ky. Rev. Stat. Ann. § 510.120 (West 2012); La. Stat. Ann. § 14:134.1 (2010); Me. Rev. Stat. tit. 17-A, § 255-A (2011); Md. Code Ann., Crim. Law § 3-314 (West 2007); Mass. Gen. Laws Ann. ch. 268, § 21A (West 1999); Mich. Comp. Laws Ann. § 750.520c (West 2012) (criminalizing sexual contact where the actor has authority over the victim); Minn. Stat. Ann. § 609.345 (West 2010); Miss. Code Ann. § 97-3-104 (West 2010); Mo. Ann. Stat. § 566.145 (West 2009); Mont. Code Ann. § 45-5-502 (West 2011); Neb. Rev. Stat. Ann. §§ 28-322 (West 2004), 28-322.01 (West 2004); Nev. Rev. Stat. Ann. § 212.187 (West 2013); N.H. Rev. Stat. Ann. §§ 632-A:3 (West 2014), 632- A:4 (West 2014); N.J. Stat. Ann. §§ 2C:14-2 (West 2014), 2C:14-3 (West 1997); N.M. Stat. Ann. § 30-9-11 (West 2009); N.Y. Penal Law § 130.05(3) (McKinney 2012); N.C. Gen. Stat. Ann. § 14-27.7 (West 2015) (criminalizing sexual contact where the actor has custody over the victim); N.D. Cent. Code Ann. § 12.1-20-07 (West 2001); Ohio Rev. Code Ann. § 2907.03 (West 2008); Or. Rev. Stat. § 163.454 (West 2005); 18 Pa. Stat. and Cons. Stat. Ann. § 3124.2 (West 2011); 11 R.I. Gen. Laws Ann. § 11-25-24 (West 1995); S.C. Code Ann. § 44-23-1150(c)(2) (2001); S.D. Codified Laws § 22-22-7.6 (2013); Tenn. Code Ann. § 39-16-408 (West 2006); Tex. Penal Code Ann. § 39.04 (West 2015); Utah Code Ann. § 76-5-412 (West 2002); Vt. Stat. Ann. tit. 13, § 3257 (West 2005); Va. Code Ann. § 18.2-67.4 (West 2014); Wash. Rev. Code Ann. § 9A.44.170 (West 1999); W. Va. Code §§ 61-8B-2 (West 2012), 61-8B-7 (West 2006); Wis. Stat. Ann. § 940.225 (West 2013); Wyo. Stat. Ann. § 6-2-304 (West 2009).  Delaware and Oklahoma only criminalize sexual intercourse or penetration, rather than sexual contact more broadly.  *See* Del. Code Ann. tit. 11, § 1259 (West 2010); Okla. Stat. Ann. tit. 21, § 1111(A)(7) (West 2006).

intent to gratify the officer's sexual desire or humiliate the inmate, violates the [U.S. Constitution]." *Crawford v. Cuomo*, 796 F.3d. 252, 254 (2d Cir. 2015).

Nevertheless, bars against sexual contact are still selectively enforced, including at RMSC. Not only are correction officials reluctant to recognize prison rape and may even underrepresent the occurrence of rape in facilities,[30] the word of a correction officer is invariably granted more weight than that of a victimized inmate. Thus, correction officers routinely target particularly vulnerable inmates—those with a prior history of abuse, mental illnesses or intellectual disability—to minimize the likelihood that the victims will report the abuse.[31] *See*, *e.g.*, Compl. ¶ 20 (detailing how abuse of Jane Doe 1 took advantage of her intellectual disability). In 2014, the New York City Department of Health and Mental Hygiene reported that only 6% of inmates reporting sexual abuse had no history of mental illness.[32]

Victims, in turn, fear the futility and repercussions of reporting abuse. To illustrate, in New York State prisons, there were 184 allegations of staff sexual misconduct in 2011, but only *four* of these were substantiated.[33] For the vast majority of inmate complaints of sexual abuse, investigations stall at early stages, or worse, the complaints go unanswered, with no investigation at all. Even physical proof (as difficult as it is to obtain) is sometimes bafflingly held insufficient.[34]

---

[30] *See* James Decl. ¶¶ 43-44.
[31] *See National Prison Rape Elimination Commission Report*, *supra* note 20, at 71-73; U.S. DOJ, *Sexual Victimization in Prisons and Jails Reported by Inmates*, *supra* note 2, at 25-28; Robert W. Dumond, Senior Program Dir., Just Detention Int'l, Testimony at the U.S. Dep't of Justice Review Panel on Prison Rape 5-6 (Jan. 8, 2014), http://ojp.gov/reviewpanel/pdfs/WrittenTestimonyofRobertDumond.pdf.
[32] *See* James Decl. ¶ 47.
[33] Ramona R. Rantala et al., U.S. Dep't of Justice, *Survey of Sexual Violence in Adult Correctional Facilities, 2009–11 - Statistical Tables* 7 tbl. 1 (2014), http://www.bjs.gov/content/pub/pdf/ssvacf0911st.pdf. In New York City, the substantiation rate by DOC for sexual misconduct was a mere 2.5% in 2013; 2% in 2012; and 2.7% in 2011. James Decl. ¶ 38. Compare this to a nationwide substantiation rate of 10% in 2011. *Id* ¶ 39.
[34] *See* Compl. ¶¶ 133-37.

Worse still, even in *substantiated* cases of staff-on-inmate sexual misconduct in jails, fully half of the abusers faced no legal repercussion.[35]  And of those that do face legal action, very few (0.3%) are convicted.[36]  Nor do the vast majority of victims—even in substantiated incidents—receive any medical or mental health care follow-up.  Indeed, many are punished and placed in solitary confinement as a result of their complaints.[37]  The reality is that on a nationwide basis, almost a quarter of confirmed perpetrators were allowed to remain at their job—despite unfailingly clear criminalization of any sexual contact between staff and inmates.[38]  Based on plaintiffs' investigations to date, the same is true at RMSC.

Given these statistics, the accounts of abuse detailed in the Complaint are hardly surprising.  Apart from the abuse suffered by the named plaintiffs, the Complaint describes at least seven separate incidents at RMSC involving correction officers who raped, sexually assaulted, harassed or coerced women inmates.[39]  These officers impregnated women, groped and sexually harassed others, masturbated openly in front of female inmates, and routinely failed to take any action while watching or overhearing ongoing rape.[40]  Not a single correction officer was disciplined for his abuse.[41]  Nor are incidents limited to these seven officers, or to the rape suffered by named plaintiffs.  Since the Complaint was filed, multiple additional women have come forward to report their own and others' victimization while at RMSC, reinforcing the fact

---

[35] U.S. DOJ, *Sexual Victimization Reported by Adult Correctional Authorities*, *supra* note 19, at 16 tbl. 12; *see also* James Decl. ¶¶ 45-46, 49.

[36] U.S. DOJ, *Sexual Victimization Reported by Adult Correctional Authorities*, *supra* note 19, at 16 tbl. 12.

[37] *Id.*; Allen J. Beck et al., U.S. Dep't of Justice, *Sexual Victimization Reported by Former State Prisoners, 2008* 31 tbl. 19 (2012), http://www.bjs.gov/content/pub/pdf/svrfsp08.pdf [hereinafter U.S. DOJ, *Sexual Victimization Reported by Former State Prisoners*].

[38] U.S. DOJ, *Sexual Victimization Reported by Adult Correctional Authorities*, *supra* note 19, at 16 tbl. 12.  This is especially problematic considering the failures in DOC hiring practices.  *See*  N.Y.C. Dep't of Investigation, *Report on the Recruiting and Hiring Process for New York City Correction Officers* 6 (2015), http://www.nyc.gov/html/doi/downloads/pdf/2015/jan15/pr01rikers_aiu_011515.pdf [hereinafter N.Y.C. DOI, *Report on the Recruiting and Hiring Process*].

[39] *See* Compl. ¶¶ 111-20.

[40] *Id.*

[41] *Id.*

8

that the City has allowed an open culture of sexual violence to persist at the jail.[42]  Their stories mirror those detailed in the Complaint: correctional staff and other officers at RMSC force, pressure and coerce women into non-consensual sexual acts, routinely invade their privacy, and grope and harass them.  Furthermore, retaliation against inmates who report sexual abuse deters other inmates from reporting.  Correction officers whose sexual abuse is reported, or who are denied sex by women they target, strike back.  They deny the women food and other basic needs, file false disciplinary charges, place inmates in punitive segregation, press other inmates to physically abuse the women, and threaten their families. And as a result of the abuse, women inmates who are victims of abuse have contracted diseases, and experienced physical, mental and emotional trauma, but are refused any meaningful remedy.

        The City has failed to take action, and continues to hire and promote correction officers with significant warning signs in their backgrounds, including criminal convictions for domestic violence, felony convictions, and improper relationships with inmates, even after the City's Department of Investigation drew a link between prior criminal history of correctional staff and their propensity for inappropriate contact with inmates.[43]  Moreover, in violation of State law, the City assigns male correction officers to guard women without adequate safeguards to prevent rape and other sexual abuse, permits correction officers virtually unfettered access to unmonitored areas such as kitchen store rooms, storage closets, and pantries where they can rape and sexually abuse women with minimal risk of detection, and has failed to ensure that security cameras are installed in these high risk areas and, where cameras are installed, has failed to ensure that they are functional.[44]

---

[42] *See* Letter from Dori Lewis, *supra* note 6, at 3-4.
[43] N.Y.C. DOI, *Report on the Recruiting and Hiring Process*, *supra* note 38, at 2-6.
[44] *See* 9 N.Y.C. R. & Regs. § 7504.1 (requiring a female officer or matron to be present when male officers enter or bear keys to female inmate housing areas); *see also* Compl. ¶¶ 121-28.

On behalf of the putative class of many women who are and will be incarcerated at RMSC, plaintiffs seek injunctive relief to address the broad systemic failure by the City to take sexual abuse allegations seriously and investigate with care.[45]  Given the many women who have reported sexual abuse by correction officers and other staff at RMSC, and the dozens more women who each year suffer abuse at the hands of correction officers and other staff there, the "open secret" of sexual violence at RMSC must come to an end.

## ARGUMENT

The Court should certify, solely for the purposes of the claim for declaratory and injunctive relief, a class of all women who are presently incarcerated and will be incarcerated at RMSC, and who have been or will be raped or sexually abused by staff while incarcerated there. Absent class certification, the vast majority of class members would endure violations of their constitutional rights with little practical ability to challenge the City's deliberate indifference.

## I.   CLAIMS FOR SYSTEM-WIDE JAIL REFORM ARE PARTICULARLY APPROPRIATE FOR CLASS TREATMENT.

Class certification "is an especially appropriate vehicle for actions" such as this one, which seeks jail reform to prevent incidents of rape and sexual abuse perpetrated by correction officers or other staff from occurring as a result of policies and practices violating the constitutional rights of all incarcerated women at RMSC.  *See Hassine v. Jeffes*, 846 F.2d 169, 180 (3d Cir. 1988).  With regard to Rule 23(b)(2), it has been said that "[w]hen a suit seeks to define the relationship between the defendant(s) and the world at large, . . . [Rule 23](b)(2) certification is appropriate," particularly where a plaintiff seeks injunctive relief against

---

[45] U.S. DOJ, *Sexual Victimization Reported by Adult Correctional Authorities*, *supra* note 19, at 16 tbl. 12; U.S. DOJ, *Sexual Victimization Reported by Former State Prisoners*, *supra* note 37, at 31 tbl. 19; *see also, e.g.*, Cris Barrish, *Sex behind bars: Women violated in Delaware prison*, News Journal (Jul. 31, 2015), http://www.delawareonline.com/story/news/local/2015/07/31/sex-abuse-behind-bars-women-violated-prison-delaware/30944001/;  Mannix, *supra* note 6; *Our Editorial: Prison rape deserves more attention*, Detroit News (Aug. 7, 2015), http://detne.ws/1 NdJ4gy; Bozelko, *supra* note 6; Just Detention Int'l, *Sexual Abuse in Detention and the Law* 1 (2013), http://www.justdetention.org/en/factsheets/Legal_Fact_Sheet_FINAL.pdf.

discriminatory practices by a defendant.  *Weiss v. York Hosp.*, 745 F.2d 786, 811 (3d Cir. 1984).[46]

The proposed class is defined properly.  All present and future female inmates at RMSC—not just those who have already been raped or sexually abused—are subject to the risk of rape and sexual abuse by correction officers or other staff as a result of the City's failure to protect them, and they have a powerful common interest in preventing the recurrence of such abuse.[47]  Because Plaintiffs are subject to the constant threat of rape and sexual abuse, they are entitled to preventive relief and need not wait to be raped or sexually abused before seeking relief.  Accordingly, the instant motion for class certification should be granted.

## II.   RULE 23 CLASS CERTIFICATION STANDARD

Certification should be granted if the proposed class meets the requirements of Rule 23(a) and at least one of the three criteria set forth in Rule 23(b) of the Federal Rules of Civil Procedure.  *See Marisol A. ex rel. Forbes v. Giuliani*, 126 F.3d 372, 375-76 (2d Cir. 1997).

Under Rule 23(a), class certification is warranted if:  "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

---

[46] *See also Marisol A. ex rel. Forbes v. Giuliani*, 929 F. Supp. 662, 692 (S.D.N.Y. 1996) ("Rule 23(b)(2) is designed to assist and is most commonly relied upon by litigants seeking institutional reform in the form of injunctive relief."), *aff'd*, 126 F.3d 372 (2d Cir. 1997); *Butler v. Suffolk Cty.*, 289 F.R.D. 80, 103 (E.D.N.Y. 2013) (certifying class of detainees of certain Suffolk County correctional facilities seeking injunctive and declaratory relief based on unsanitary conditions in those facilities); *Ingles v. City of New York*, No. 01 Civ. 8279(DC), 2003 WL 402565, at *1 (S.D.N.Y. Feb. 20, 2003) (certifying class of current and former inmates incarcerated in certain facilities operated by the New York City Department of Corrections seeking injunctive relief from a pattern and practice of excessive force by correctional staff).

[47] *See Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (class members may assert "a single common complaint even if they have not all suffered actual injury; demonstrating that all class members are *subject* to the same harm will suffice"); *Inmates of Attica Corr. Facility v. Rockefeller*, 453 F.2d 12, 24 (2d Cir. 1971) (certifying class consisting of inmates at Attica prison, recognizing that all inmates "have a common interest in preventing the recurrence of the objectionable conduct").

Under Rule 23(b)(1), a class should be certified if "prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."  And Rule 23(b)(2) permits class certification if defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

District courts have broad discretion in certifying a class, and should construe Rule 23 liberally when considering whether to certify a proposed class.  *See Marisol A.*, 126 F.3d at 377; *Butler*, 289 F.R.D. at 96.  Rule 23's "inherent flexibility, and the district court's ability to manage the litigation as it develops, counsel against decertification."  *Marisol A.*, 126 F.3d at 377.

## III.   THIS ACTION SHOULD BE MAINTAINED AS A CLASS ACTION.

### A.  The Proposed Class Satisfies the Prerequisites of Rule 23(a).

#### 1.  Numerosity - Rule 23(a)(1)

Rule 23(a) is satisfied where the class is so numerous that joinder is impracticable.  Fed. R. Civ. P. 23(a)(1).  "Impracticable does not mean impossible."  *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).  Numerosity is presumed when the class has more than forty members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citing 1 *Newberg on Class Actions* § 3.05 (2d ed. 1985)); *Butler*, 289 F.R.D. at 97.  The instant case involves an ever-changing population of present and potential future class members numbering in the hundreds, easily numerous enough to meet the requirement of Rule 23(a)(1).

The class is sufficiently numerous to satisfy Rule 23(a)(1) based on statistical surveys concerning the rate of sexual victimization at RMSC.  Given that 5.9% of RMSC inmates reported being victimized by RMSC staff, and the population of RMSC is at least 800 inmates at any time, this translates into approximately 50 women abused during the one-year period of that recent survey.[48]  This figure almost certainly understates the annual number of victims because the DOJ survey only collected data from then-incarcerated detainees; women who were victimized during the survey period but left RMSC before the survey was taken would not have been captured in the results.  Since the vast majority of inmates at RMSC are pretrial detainees who remain in City custody for an average of just fifty four days, Compl. ¶ 100, the number of unrecorded victims is likely to be significant.[49]  Based on these statistical extrapolations, the number of class members who are currently incarcerated and have been raped or sexually abused by staff easily surpasses the 40 class member level at which numerosity is presumed.[50]  This conclusion is all the more supported by the fact that the proposed class also includes future detainees at RMSC who will be raped or sexually assaulted and abused; when added to the estimated number of class members who are current detainees, the class size easily numbers in the hundreds.  *See Robidoux*, 987 F.2d at 935 (courts do not require "evidence of exact class size or identity of class members to satisfy the numerosity requirement").

---

[48] U.S. DOJ, *Sexual Victimization in Prisons and Jails Reported by Inmates, supra* note 2; *see also* James Decl. ¶¶ 23-24.

[49] *See* James Decl. ¶ 24.

[50] A number of courts in this district have relied on statistical evidence in certifying class actions.  *See, e.g., Floyd v. City of New York*, 283 F.R.D. 153, 167-170, 172 (S.D.N.Y. 2012) (considering statistical evidence of unlawful stops in certifying class challenging City's stop and frisk practices); *Stinson v. City of New York*, 282 F.R.D. 360, 369 (S.D.N.Y. 2012) (relying on data provided by the City's Office of Court Administration in certifying class of persons who were issued summonses that were subsequently dismissed); *M.K.B. v. Eggleston*, 445 F. Supp. 2d 400, 440-441 (S.D.N.Y. 2006) (in certifying class of battered immigrant spouses and children who were unlawfully denied public assistance, relying on the statistic that 90% of applications for immigration relief for battery are submitted with a fee waiver, demonstrating their indigence and eligibility for public assistance).

This rate of victimization is corroborated by the Complaint's allegations concerning the number of correction officers who have committed prior sexual misconduct.  The Complaint includes allegations of sexual abuse by eight correction officers at RMSC (including Santiago) involving multiple victims.  *See* Compl. ¶¶ 111-17.  And these are not only the incidents of which Plaintiff is aware.[51]  In light of the findings of a January 2015 report by the Department of Investigation that one-third of recently hired correction officers had significant warning signs in their background, Compl. ¶ 122, the number of correction officers and other staff who pose an ongoing risk to current and future detainees at RMSC is likely even greater.  *See Nicholson v. Williams*, 205 F.R.D. 92, 98 (E.D.N.Y. 2001) ("Courts are empowered to make common sense assumptions to support a finding of numerosity.") (citation omitted).

The fact that the proposed class includes future detainees is also significant because future class members cannot now be identified or joined.  *See Boucher v. Syracuse Univ.*, 164 F.3d 113, 119 n.11 (2d Cir. 1999) (explaining that class including future students would satisfy numerosity requirement because joinder would be "clearly impracticable"); *Robidoux*, 987 F.2d at 936 ("Relevant considerations [under Rule 23(a)(1)] include . . . requests for prospective injunctive relief which would involve future class members.").  "The fluid composition of a prison population is particularly well-suited for class status, because, although the identity of the individuals involved may change, the nature of the wrong and the basic parameters of the group affected remains constant."  *Dean v. Coughlin,* 107 F.R.D. 331, 332-33 (S.D.N.Y. 1985) (certifying class to include current and future inmates in action challenging dental care in

---

[51] Plaintiff expects ongoing class discovery will provide further evidence of specific incidents of sexual abuse by RMSC correction officers.  *See Ventura v. N.Y.C. Health & Hosps. Corp.*, 125 F.R.D. 595, 599 (S.D.N.Y. 1989) (plaintiff's inability to identify precise number of class members does not bar class certification when defendants possess means to identify those persons).  Identification of those who have suffered rape and sexual abuse by correction officers is information that is, at least in part, in the City's control.  Plaintiffs expect to supplement this motion as necessary as more victims of rape and sexual abuse by staff at RMSC are identified.

prisons).[52]  This reasoning has particular application to RMSC, a pre-trial detention center, which has a transient population where the average stay in City custody is only fifty four days.  Compl. ¶ 100.[53]

Joinder is also impracticable because of the significant barriers confronting any class member in bringing an individual action.  Prospective class members are very unlikely to bring their own suits because of limited access to resources and legal representation.  *See Robidoux*, 987 F.2d at 936 (factors in determining whether joinder is impracticable include "financial resources of class members" and "the ability of claimants to institute individual suits").  Most inmates at RMSC are only incarcerated there because they are indigent and cannot afford modest or low bail.  Compl. ¶ 100.[54]  In addition, for the very reasons that rape is underreported, *see supra* at 5-6, class members are unlikely to bring individual actions given the psychological consequences of sexual abuse (including the shame associated with reporting such abuse) and the fear of retaliation by RMSC staff.  *See Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 204-05 (E.D.N.Y. 2005) (considering class members' fear of retaliation, mental disabilities, and lack of resources to institute their own suits in certifying class).  The facts show that RMSC inmates are sexually abused in significant numbers, and a class action would permit them to overcome significant hurdles to taking legal action challenging the conditions and practices that permit their abuse.

---

[52] *See also Butler*, 289 F.R.D. at 103 (certifying class including future detainees challenging conditions at New York county correctional facilities); *Clarkson v. Coughlin*, 145 F.R.D. 339, 346-47 (S.D.N.Y. 1993) (class to include present and future inmates, noting "prisoners frequently come and go from institutions for a variety of reasons. Veteran prisoners are released or transferred, while new prisoners arrive every day.  Nevertheless, the underlying claims tend to remain.  Class actions therefore generally tend to be the norm in actions [brought by incarcerated persons]") (citation omitted).
[53] *See also* James Decl. ¶ 24
[54] *See also* James Decl. ¶ 17.

2.   Common Question of Law or Fact - Rule 23(a)(2)

This action raises numerous questions of law and fact that are common to all class

members, easily demonstrating commonality under Rule 23(a)(2).  Commonality is satisfied

where the class claim "depend[s] upon a common contention of such a nature that it is capable of

class wide resolution—which means that the determination of its truth or falsity will resolve an

issue that is central to the validity" of the class claim.  *Butler*, 289 F.R.D. at 98 (ellipsis omitted)

(citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)).  "The requirement that

there be common questions of law and fact is satisfied in an action by prison inmates when

inmates have a common interest in preventing the recurrence of the objectionable conduct."

*Jones v. Goord*, 190 F.R.D. 103, 112 (S.D.N.Y. 1999) (citation omitted) (certifying class of

detainees incarcerated in double cells at certain New York correctional facilities); *Inmates of*

*Attica Corr. Facility*, 453 F.2d at 24.  Indeed, "[t]here is an assumption of commonality" where,

as here, plaintiffs seek certification to right alleged constitutional wrongs.  *Nicholson*, 205 F.R.D.

at 98; *Juana D. ex rel. Ray M. v. Bd. of Educ.*, 884 F. Supp. 696, 699 (E.D.N.Y. 1995)

(commonality is satisfied when plaintiffs "are challenging a *practice* of defendants," rather than

"conduct with respect to the individual plaintiff[s]") (brackets omitted).  A single common issue

will satisfy the commonality requirement if it is "at the core of the cause of action alleged."

*MacNamara v. City of New York*, 275 F.R.D. 125, 138 (S.D.N.Y. 2011) (citation omitted).

Where all class members face injury as a result of the same systemic failures, minor

factual differences among the class members do not preclude a determination of commonality.

Rule 23(b)(2) "classes have been certified in a legion of civil rights cases where commonality

findings were based primarily on the fact that defendant's conduct is central to the claims of all

class members irrespective of their individual circumstances and the disparate effects of their

conduct."  *Daniels v. City of New York*, 198 F.R.D. 409, 416-18 (S.D.N.Y. 2001) (quoting *Baby*

*Neal*, 43 F.3d at 57) ("While . . . the individual circumstances of class members may differ," commonality was satisfied as injuries resulted from same "unconstitutional pattern, practice or policy."); *Dean*, 107 F.R.D. at 333 ("[C]laims of each class member need not be identical to raise common factual and legal questions regarding the adequacy of an entire system.").  Here, all class members share the same interest in being free from rape and sexual abuse at RMSC and the burdens imposed to report this abuse.

All class members assert claims against the City for its policies and practices enabling correction officers and other staff to rape and sexually abuse female inmates at RMSC with impunity.  The questions of law common to the class include constitutional claims against the City, such as claims challenging the City's policies, practices, acts and omissions that cause women in its custody to be subject to a substantial and unreasonable risk and experience of rape and other sexual abuse by correctional facility staff; claims challenging the City's failure to take action sufficient to protect the women in its custody from recurrent and ongoing acts of rape and other sexual abuse by correction officers and other staff, despite knowledge that correction officers routinely rape and sexually abuse women in the City's custody; claims challenging the City's failure to employ sufficient measures and safeguards to reduce the risk of rape and other sexual abuse of women in its custody by correction officers and other staff; and claims challenging the City's failure to implement an adequate system for the reporting and investigation of rape and sexual abuse that protects those who report rape and other sexual abuse by correction officers from retaliation.

Questions of fact are similarly common to all named plaintiffs and class members, because the conditions in RMSC and the City's failure adequately to supervise correction officers and the staff in the jail create a perilous environment for women incarcerated at RMSC.

In particular, common factual circumstances facing any class member include the implementation of safeguards to prevent correction officers from having inappropriate access to unmonitored areas in jails, taking action to protect the women in custody from physical and verbal intimidation by staff that deters these women from reporting sexual abuse, hiring and disciplinary practices, installing and maintaining video surveillance, maintaining an adequate system for the reporting and investigation of rape and sexual abuse, the City's failure to consistently and adequately investigate reports of rape or sexual abuse in a prompt or thorough manner, and the failure to protect those who report rape and other sexual abuse by correction officers or other staff from retaliation by correction officers and other inmates.

The City's failures apply to the entire class of women inmates and call for the same injunctive relief applicable to all.  Indeed, all members of the proposed class have the same rights under the Fourteenth Amendment to the U.S. Constitution to be free from rape and other sexual abuse.  The specific instances of rape and sexual abuse suffered by the named plaintiffs and described in the Complaint only underscore the need to redress the City's violations against the class of women inmates as a whole.  *See Baby Neal*, 43 F.3d at 57.

> 3.   Typicality - Rule 23(a)(3)

Jane Doe 1's claims are "typical of the claims . . . of the class" and satisfy Rule 23(a)(3).  A class representative's claims are deemed typical if they arise from the same general "course of events" as the claims of the class and depend on "similar legal arguments."  *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001) (citation omitted), *abrogated on other grounds by Wal-Mart Stores*, 131 S. Ct. at 2551.  And when the same course of conduct affects

the named plaintiff as well as the class, typicality is met even if the specific facts underlying the named plaintiff's claim varies from the claims of the other class members.[55]

Here, Jane Doe 1's claims all arise out of the same systemic pattern of rape and sexual abuse by correctional staff at RMSC, which resulted from the City's policies, practices, acts, and omissions. She, and all class members, seek relief for "injuries arising out of the same allegedly unconstitutional conditions." *Butler*, 289 F.R.D. at 99. The possibilities that class representatives may have been raped by different correction officers, or that they were sexually abused in different ways, are irrelevant to the typicality inquiry where named plaintiffs assert the same theories of liability on behalf of the class. *See id.* (typicality met even though "the extent of [the class members'] exposure to" unconstitutional conditions and "the exact nature of their injuries will necessarily differ").

Finally, as a practical matter, "typicality is present when all members of the putative class would benefit by the success of the named plaintiff." *Cutler v. Perales*, 128 F.R.D. 39, 45 (S.D.N.Y. 1989) (citing *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968)). The declaratory and injunctive relief sought by Jane Doe 1 to remedy the rape and sexual abuse she has suffered plainly will benefit the class as a whole. In pursuing her own claims, Jane Doe 1 will thus clearly advance the interests of and benefit the other class members, satisfying the typicality requirement.

---

[55] *See Robidoux*, 987 F.2d at 936-37 ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."); *Jones*, 190 F.R.D. at 112 (certifying class of detainees incarcerated in double cells at certain New York correctional facilities, noting that "[a]lthough the injuries allegedly suffered or threatening each class member may not be identical, typicality does not require identity"); *Dean*, 107 F.R.D. at 334 (in action challenging constitutional adequacy of dental care in prison, finding that class representatives claims were typical because, notwithstanding "slight factual differences . . . each [class representative] has been subjected to some or all of the general, institution-wide deprivations alleged on behalf of the class").

4.  <u>Adequacy of Representation **-** Rule 23(a)(4)</u>

Jane Doe 1 and her attorneys will adequately and fairly represent the class, as required by Rule 23(a)(4).  Rule 23(a)(4) has two prongs.  The first considers whether the proposed class representative has "an interest in vigorously pursuing the claims of the class" and whether she has "interests antagonistic to the interests of other class members."  *Butler* 289 F.R.D. at 99 (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).  In addition, plaintiff's attorneys must be "qualified, experienced and able to conduct the litigation."  *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).  In order to defeat a motion for certification, conflicts between the class representative and proposed class members must be "fundamental."  *Betances v. Fischer*, 304 F.R.D. 416, 426 (S.D.N.Y. 2015) (quoting *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009)).

On the first prong of Rule 23(a)(4), there is no conflict of interest—let alone a "fundamental" one—between the proposed class representative and the class members.  Jane Doe 1, like all class members, has a strong interest in ending the systemic rape and sexual abuse by correctional staff suffered by women inmates at RMSC.   Because Jane Doe 1 has suffered the injury sought to be remedied by the class relief and has shown her commitment to the class, she is an adequate class representative.

It is entirely appropriate for named plaintiffs to seek damages for themselves while also pursuing declaratory and injunctive relief on behalf of the proposed class.  *See, e.g., Ingles*, 2003 WL 402565, at *6 (noting that any settlement of the class claims would have to be approved by the court and to the extent a conflict arises, the court can adjust the definition of the class at that time).  Pursuing individual damages in no way renders Jane Doe 1 an inadequate class representative.  Indeed, the Complaint details Jane Doe 1's sexual abuse by Defendant Santiago during two separate periods of incarceration.  *See* Compl. ¶¶ 19-33.  Had institutional reform

been implemented to stem sexual abuse during the intervening years, Jane Doe 1 would in all likelihood not have suffered the second episode of rape and sexual abuse.  While Jane Doe 1 seeks damages to compensate her for the harm she suffered, she has a vested personal interest in stopping rape at RMSC through institutional reform.

Regarding the second prong of Rule 23(a)(4)—concerning class counsel—plaintiff is represented by the Legal Aid Society ("Legal Aid") and Cleary Gottlieb Steen & Hamilton LLP ("Cleary Gottlieb"); both are qualified to litigate this matter.  Legal Aid is a legal services organization experienced in class action and civil rights litigation, and has also on multiple occasions secured court-ordered institutional prison reform in New York.  Bodden Decl. ¶ 4. Legal Aid also regularly provides legal services at RMSC and therefore has unique subject matter expertise and regularly interacts with potential class members.  *Id.* ¶ 3.  Cleary Gottlieb is an international law firm with deep experience in complex federal litigation and class actions, including civil rights work.  *Id.* ¶ 5.  Cleary Gottlieb attorneys, who are serving as counsel on a pro bono basis, have already invested hundreds of hours into this representation, identifying and investigating potential claims.  *Id.* ¶ 7.  Both Cleary Gottlieb and Legal Aid are knowledgeable of the facts and applicable law and will commit substantial resources to diligently and vigorously pursuing all rights and interests of the class.  *Id.* ¶ 8.[56]

**B.  This Suit Qualifies as a Class Action Under Rule 23(b)(2).**

Under Rule 23(b)(2), class actions are appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief

---

[56] For these same reasons, Cleary Gottlieb and Legal Aid respectfully request that the Court appoint them as class counsel pursuant to Federal Rule of Civil Procedure 23(g).  In appointing class counsel, courts consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g).  A court may appoint an entire firm or numerous attorneys as class counsel.  *See* Fed. R. Civ. P. 23(g) advisory committee's note to 2003 amendment.

or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2) provides an ideal basis for class certification in actions such as this one, where plaintiffs are challenging a pattern and practice of constitutional violations with respect to women inmates.[57]

Plaintiffs challenge the City's policies, practices, acts, and omissions that resulted in their rape and sexual abuse; these same failings by the City are applicable to all class members, who have suffered or will suffer identical violations of their constitutional rights.  Jane Doe 1 seeks injunctive remedies that would be applicable to the entire class (*i.e.*, an injunction requiring the City and its agents and employees to take all steps necessary to prevent women in its custody at RMSC from being unlawfully subjected to rape and sexual abuse and requiring the City to formulate a comprehensive plan to remedy the pattern of sexual abuse at RMSC).  *See Robinson*, 267 F.3d at 162 (certification under Rule 23(b)(2) "is intended for cases where broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury").  Injunctive and declaratory relief is particularly necessary here given the high likelihood of ongoing and future harm, and thus, certification under Rule 23(b)(2) is the most effective way to protect the rights of all current and future inmates subject to sexual abuse and rape at RMSC.

**C.  This Suit Qualifies as a Class Action under Rule 23(b)(1).**

Class actions are to be maintained if "prosecuting separate actions by . . . individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."  Fed. R. Civ. P. 23(b)(1)(A).

---

[57] *See Baby Neal*, 43 F.3d at 58 (Rule 23(b)(2) "is almost automatically satisfied in actions seeking primarily injunctive relief"); *Marisol A.*, 929 F. Supp. at 692 ("Rule 23(b)(2) is designed to assist and is most commonly relied upon by litigants seeking institutional reform in the form of injunctive relief."); *Dean*, 107 F.R.D. at 335 ("It is well established that civil rights actions are the paradigmatic 23(b)(2) class suits.") (citation omitted).

Bringing class members' individual claims for system-wide injunctive relief as multiple individual suits would be both inefficient and risk varying and potentially conflicting results.  As a practical matter, correction officers and other staff may rotate between facilities, and pretrial detainees come and go in as short a time period as a few days.  This means that differing decisions in individual actions would prevent the City as a defendant from "pursu[ing] a uniform continuing course of conduct where pragmatic considerations require that the defendants act in the same manner to all members of the class."  *Robertson v. NBA*, 389 F. Supp. 867, 901 (S.D.N.Y. 1975) (citation omitted).[58]  Proceeding as a class will thus permit implementation of a uniform course of conduct—remedying the City's policies and practices that allow correction officers and other staff to rape and sexually abuse female inmates at RMSC—in a consistent manner benefiting the entire class.

For substantially similar reasons, certification is appropriate under Rule 23(b)(1)(B), as "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications."  Fed. R. Civ. P. 23(b)(1)(B).  An adjudication as to the liability of the City, and any injunction requiring systematic reform, would as a practical matter affect the ability of remaining class members to prosecute injunctive claims seeking separate relief.  *See Ingles*, 2003 WL 402565, at *7 ("Should [the court] grant—or deny—injunctive relief against the use of excessive force, the rights of absent class members would be determined.").  Consequently, certification under Rule 23(b)(1)(B) is also justified.

---

[58] *See also In re J.P. Morgan Chase Cash Balance Litig.*, 242 F.R.D. 265, 275 (S.D.N.Y. 2007) (individual suits might result in varying adjudications that "would result in [the bank], as the sole administrator, managing some plans under one set of standards and the others under a different standard"); *Ingles*, 2003 WL 402565, at *7 (certifying Rule 23(b)(1)(A) class of present and future inmates challenging pattern of excessive force by prison officials because "consistency in the adjudication of these claims is important").

IV.     CLASS STANDING REQUIREMENTS ARE MET.

While neither Jane Doe 1 nor Jane Doe 2 is now at RMSC,[59] Jane Doe 1 has standing to

seek injunctive and declaratory relief on behalf of the class.  An individual plaintiff has standing

to seek injunctive and declaratory relief if, at the time the complaint is filed, the defendant was

engaging in the unlawful practice against which the plaintiff complains.  *See Robidoux*, 987 F.2d

at 938.  Jane Doe 1 was detained at RMSC at the time the Complaint was filed, and has been

incarcerated there during several different periods of time during the years 2006-2015.  Compl.

¶ 14.  Jane Doe 1 was raped and sexually abused by Santiago during this period of detention as a

result of the unconstitutional practices against which she seeks relief on behalf of the class.

Compl. ¶¶ 33-46, 96-138.

Jane Doe 1's transfer from RMSC does not moot the claims of the unnamed class

members or disqualify Jane Doe 1 as a class representative.  The "application of . . . mootness

doctrines depends in part on whether the court is presented with a class action."  *Comer v.

Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994).  "Where class claims are inherently transitory, 'the

termination of a class representative's claim does not moot the claims of the unnamed members

of the class.'"  *Robidoux*, 987 F.2d at 938-39 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11

(1975)).  Even if the individual plaintiff's claim becomes moot prior to class certification,

"certification may be deemed to relate back to the filing of the complaint in order to avoid

mooting the entire controversy."  *Id.* at 939; *Amador v. Andrews*, 655 F.3d 89, 100 (2d Cir. 2011)

("The relation-back doctrine, however, has unique application in the class action context,

preserving the claims of some named plaintiffs for class certification purposes that might well be

moot if asserted only as individual claims.").[60]  Class claims are inherently transitory when they

---

[59] Since filing the Complaint, Jane Doe 1 has been transferred to Bedford Hills Correctional Facility.

[60] For the same reason, even if Jane Doe 1 were to settle her individual damages claim, this would not moot the class

are "unlikely to be resolved" before the plaintiff's individual interest in obtaining injunctive relief ends.  *Amador*, 655 F.3d at 100.  "Pretrial detention is by nature temporary."  *Gerstein*, 420 U.S. at 110 n.11.  Here, the claims of the proposed class members are inherently transitory because, like Jane Doe 1 and Jane Doe 2, most of the incarcerated women at RMSC are pre-trial detainees.  Compl. ¶¶ 14-15, 100.

Because Jane Doe 1 had standing at the time the Complaint was filed, and the class members' claims are inherently transitory, the Court has subject-matter jurisdiction over the class claim.  Jane Doe 1 has standing to represent the class of all women who are presently incarcerated and will be incarcerated at RMSC, and who have been or will be raped or sexually abused by staff while incarcerated there, who seek injunctive relief to stop rape and sexual abuse of inmates by correctional staff at RMSC.

## CONCLUSION

The proposed class meets the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, and qualifies for certification under Rules 23(b)(2) and 23(b)(1).  For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion for class certification.

---

claim.  "Class certification will preserve an otherwise moot claim."  *Comer*, 37 F.3d at 798; s*ee also Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339-40 (1980) (holding that the district court's entry of judgment in favor of named plaintiffs on individual claims did not moot their appeal of adverse class certification ruling because "[r]equiring multiple plaintiffs to bring separate actions, which effectively could be 'picked off' by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions" and "invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement").

Dated: New York, New York
      October 9, 2015

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____
     Mitchell A. Lowenthal
     *mlowenthal@cgsh.com*

One Liberty Plaza
New York, New York 10006
T: 212-225-2000
F: 212-225-3999

Of Counsel:
  Danielle P. Mindlin
  *dmindlin@cgsh.com*
  Josh E. Anderson
  *jeanderson@cgsh.com*

THE LEGAL AID SOCIETY
William D. Gibney
*wdgibney@legal-aid.org*
Marlen S. Bodden
*mbodden@legal-aid.org*
Barbara P. Hamilton
*bphamilton@legal-aid.org*
199 Water Street, 6th Floor
New York, New York 10038
Tel: (212) 577-3300

*Attorneys for Plaintiffs*

26