Index No. 15-CV-3849 (AKH)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE 1 and JANE DOE 2, on behalf of themselves
and all similarly situated women,

Plaintiffs,

-against-

THE CITY OF NEW YORK and BENNY SANTIAGO,

Defendants.

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for defendant City of New York*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Kimberly M. Joyce*
*Tel: (212) 356-2650*
*Matter #: 2015-026853*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

PRELIMINARY STATEMENT ...................................................................... 1

ARGUMENT

    POINT I

        PLAINTIFF'S MOTION FOR CLASS CERTIFICATION IS OVERBROAD ....................................................... 5

    POINT II

        PLAINTIFF CANNOT MEET THE REQUIREMENTS OF RULE 23 FOR CERTIFICATION ...................................................................... 8

        A.  Requirements For Class Certification .................................. 8

        B.  Plaintiffs Cannot Meet the Numerosity Prong of Rule 23(A)(1) ................................................................. 10

        C.  Plaintiff Cannot Meet the Commonality and Typicality Requirements of Rule 23(A)(2) and (3) ...................................................................................... 12

    POINT III

        PLAINTIFF FAILS TO MEET THE RULE 23(B)(2) REQUIREMENTS FOR CLASS CERTIFICATION ...................................................................... 13

    POINT IV

        PLAINTIFF FAILS TO MEET THE RULE 23(B)(1) REQUIREMENTS FOR CLASS CERTIFICATION ...................................................................... 21

    POINT V

        PLAINTIFF CANNOT MEET THE DEFINITENESS REQUIREMENT ...................................................... 22

        A.  Generally Applicable Principles ....................................... 22

**Page**

  B. Application to Plaintiff's Proposed Class ......................................... 25

CONCLUSION ............................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                     <u>Pages</u>

<u>Alabama v. Blue Body Co.</u>,
 573 F.2d 309 (5th Cir. 1978) ....................................................................24

<u>Bakalar v. Vavra</u>,
 237 F.R.D. 59 (S.D.N.Y. 2006) ..........................................................10, 22

<u>Burley v. City of New York</u>,
 03 Civ. 0735 (WHP), 2005 U.S. Dist. LEXIS 4439
 (S.D.N.Y. Mar. 23, 2005) ...........................................................10, 22, 24

<u>Califano v. Yamasaki</u>,
 442 U.S. 682 (1979)...................................................................................12

<u>Catanzano by Catanzano v. Dowling</u>,
 847 F. Supp. 1070 (W.D.N.Y. 1994)........................................................22

<u>In Re: Chrysler Corporation</u>,
 MDL No. 1239, 2000 U.S. Dist. LEXIS 2332 (E.D. Pa. Mar. 2, 2000).................23

<u>City of Los Angeles v. Lyons</u>,
 461 U.S. 95 (1983)...............................................................................17, 19

<u>Daniels v.  City of New York</u>,
 198 F.R.D. 409 (S.D.N.Y. 2001) .................................................10, 20, 22

<u>DeMarco v. Edens</u>,
 390 F.2d 836 (2d Cir. 1968)......................................................................10

<u>Deposit Guaranty National Bank v. Roper</u>,
 445 U.S. 326 (1980)...................................................................................11

<u>Deshawn E. by Charlotte E. v. Safir</u>,
 156 F.3d 340 (2d Cir. 1998).......................................................................17

<u>Dunn v. Midwest Buslines, Inc.</u>,
 94 F.R.D. 170 (E.D. Ark. 1982).................................................................23

<u>Eisen v. Carlisle & Jacqueline, DeCoppet & Doremus</u>,
 391 F.2d 555 (2d Cir. 1968).......................................................................15

<u>Floyd v. City of New York</u>,
 283 F.R.D. 153 (S.D.N.Y. 2012) ...............................................................24

<u>Fogarazzo v. Lehman Bros.</u>,
 232 F.R.D. 176 (S.D.N.Y. 2005) ...............................................................24

Forman v. Data Transfer,
    164 F.R.D. 400 (E.D. Pa. 1995)......................................................................5

Galvan v. Levine,
    490 F.2d 1255 (2d Cir. 1973).......................................................................20

General Telephone of the Southwest v. Falcon,
    457 U.S. 147 (1982)............................................................................ 9, 12-13

Hagen v. City of Winnemucca,
    108 F.R.D. 61 (D. Nev. 1985)....................................................................23

Haitian Ctrs. Council v. McNary,
    969 F.2d 1326 (2d Cir. 1992)
    vacated as moot sub nom, Sale v. Haitian Ctrs. Counsel, 509 U.S. 918 (1993)......................5

Harris v. Initial Security, Inc.,
    05 Civ. 3873 (GBD), 2007 U.S. Dist. LEXIS 18397
    (S.D.N.Y. Mar. 7, 2007) ...........................................................................16

Haus v. City of New York,
    03 Civ. 4915, 2011 U.S. Dist. LEXIS 155735 (S.D.N.Y. Aug. 31, 2011) ....................8, 9, 21

Hnot v. Willis Group Holdings Ltd.,
    228 F.R.D. 476 (S.D.N.Y. 2005) .................................................................24

Hodgers-Durgin v. De La Vina,
    199 F.3d 1037 (9th Cir. 1999) ....................................................................18

In Re: IPO Securities Litigation v. Merrill Lynch & Co., Inc.,
    471 F.3d 24 (2d Cir. 2006)......................................................................4, 5, 9

Kaczmarek v. International Business Machines Corp.,
    186 F.R.D. 307 (S.D.N.Y. 1999) .................................................................15

Lewis v. Casey,
    518 U.S. 343 (1996).................................................................................18

Luedke v. Delta Airlines,
    155 B.R. 327 (S.D.N.Y. 1993)................................................................22, 24

MacNamara v. City of New York,
    2011 U.S. Dist. LEXIS 53829 (S.D.N.Y. May 19, 2011) ...............................14, 17

Marisol A. v. Giuliani,
    126 F.3d 372 (2d Cir. 1997)........................................................................9, 12

M.B.K. v. Eggleston,
  445 F. Supp. 2d 400 (S.D.N.Y. 2006)....................................................................................8

McCarthy v. Kleindeinst,
  741 F.2d 1406 (D.C. Cir. 1984) .........................................................................................9

Mike v. Safeco Insurance Company of America,
  223 F.R.D. 50 (D. Conn. 2004)........................................................................................23

In Re: Nigeria Charter Flights Contract Litigation,
  233 F.R.D. 297 (E.D.N.Y. 2006) .....................................................................................16

O'Shea v. Littleton,
  414 U.S. 488 (1974)..........................................................................................................19

Parker v. Time Warner Entertainment Company, L.P.,
  239 F.R.D. 318 (E.D.N.Y. 2007) .....................................................................................16

Primavera Familienstiftung v. Askin,
  178 F.R.D. 405 (S.D.N.Y. 1998) .....................................................................................11

Rappaport v. Katz,
  62 F.R.D. 512 (S.D.N.Y. 1974) .......................................................................................22

Reynolds v. Giuliani,
  506 F.3d 183 (2d Cir. 2007).............................................................................................21

Robidoux v. Celani,
  987 F.2d 931 (2d Cir. 1993)..............................................................................9-10, 11, 13

Robinson v. Metro-North Commuter Railroad Co.,
  267 F.3d 147 (2d Cir. 2001)..................................................................................... 14, 15-16

Sanneman v. Chrysler Corp.
  n/k/a DaimlerChrysler Corp., 191 F.R.D. 441 (E.D. Pa. 2000)................................................6

Schering Corp. v. Pfizer, Inc.,
  189 F.3d 218 (2d Cir. 1999)...........................................................................................6, 7

Shain v. Ellison,
  356 F.3d 211 (2d Cir. 2004).................................................................................17, 18, 19

Simer v. Rios,
  661 F.2d 655 (7th Cir. 1981) .......................................................................................10, 22

Stinson v. City of New York,
    282 F.R.D. 360 (S.D.N.Y. 2012) ..................................................................8

Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.,
    546 F.3d 196 (2d Cir. 2008)........................................................................4

Universal Calvary Church v. City of New York,
    177 F.R.D. 181 (S.D.N.Y. 1998) ..........................................................11, 12

In Re: Visa Check/MasterMoney Antitrust Litigation,
    280 F.3d 124 (2d Cir. 2001)...................................................................9, 10

Wal-Mart Stores, Inc. v. Dukes,
    131 S. Ct. 2541 (U.S. 2011) ................................................................13, 14

Williams v. Glickman,
    Civil Action No. 95-1149 (TAF), 1997 U.S. Dist.
    LEXIS 1683 (D.D.C. Feb. 14, 1997) .........................................................22

**Statutes**                                                                    **Pages**

28 C.F.R. Part 115..................................................................................1, 2

Fed.R.Civ.P. 23 ........................................................1, 4, 5, 9, 10, 22, 25

Fed. R. Civ. P. 23(a) ...................................................1, 8, 9, 11, 13

Fed. R. Civ. P. 23(b) ...................................................................1, 10

Fed. R. Civ. P. 23(b)(1).......................................................................21

Fed. R. Civ. P. 23(b)(2)..................................13, 14, 15, 16, 17, 20, 21

Fed. R. Civ. P. 23(A)(1)......................................................................10

Fed. R. Civ. P. 23(a)(2) and (3) .................................................9, 12, 22

Fed. R. Evid. 807 ............................................................................6, 7

**Other Authorities**

5 Moore's Federal Practice, § 23.24[4] (1999)..........................................13

7 Wright and Miller, Federal Practice and Procedure § 1760 (1972)............22

7A Wright, Miller & Kane, Federal Practice and Procedure § 1760 (1986) ..................................5

National Standards to Prevent, Detect, and Respond to Prison Rape Under the
    Prison Rape Elimination Act ................................................................1, 2

Defendant City hereby respectfully submits its Memorandum of Law, and the accompanying declaration of Kimberly M. Joyce ("Joyce Decl."), in opposition to plaintiff's motion for class certification pursuant to Rule 23, Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Long before plaintiff Jane Doe 1 ("JD 1") filed this lawsuit (in May, 2015), the Department of Correction ("DOC") was already pursuing comprehensive department-wide reforms to address the important nationally recognized goal of preventing inmate sexual abuse in correctional facilities in all its forms. The current reforms already underway at DOC, plus the myriad individualized issues and failures of proof by plaintiff, preclude class certification, because plaintiff cannot meet the requirements of Rule 23(a), 23(b), or the implicit requirements of "definiteness" and "ascertainability."

In 2012 the U.S. Department of Justice ("DOJ") published the National Standards to Prevent, Detect, and Respond to Prison Rape Under the Prison Rape Elimination Act (PREA). (See 28 C.F.R. Part 115 (2012), annexed to Joyce Decl. as Exh. "A".)  That same year, under its own initiative, the DOC applied for, and received, a $1.2 million grant from the Justice Department to conduct an assessment of DOC's compliance with PREA.  In 2014, the DOC hired the Moss Group ("Moss"), one of the leading national experts in the implementation of PREA in correctional settings, to conduct this assessment.  Moss' services include conducting PREA assessments; developing prevention and intervention strategies; policy review and development; cultural assessments; developing an effective investigation protocol; curriculum development; providing training to staff; systemic planning; and developing guidance in appropriate sanctions when prison rape occurs.  Moss typically conducts its assessment using focus groups, surveys, interviews, and facility PREA operational audits to develop

recommendations to enhance sexual safety for all - inmates and staff alike - including the female inmates at the Rose M. Singer Center ("RMSC").

Moss's assessment of DOC took place between Fall 2014 and Spring 2015.  By June 2015 DOC Commissioner Ponte, jointly with Moss head Andie Moss, reported to the NYC Board of Correction ("BOC") that Moss had concluded its assessment, that it had provided its findings and recommendations to the DOC, and that DOC and Moss were jointly engaged in strategic planning to move the DOC into PREA compliance.  (See NYC BOC June 9, 2015 Hearing Minutes, annexed to Joyce Decl. as Exh. "B".)

This process includes a multi-agency group, with member(s) each from the BOC, the Department of Investigation ("DOI"), and the Health and Hospitals Corporation ("HHC"), which is responsible for providing healthcare to inmates at DOC, as well as members of the stakeholder community. This multi-agency group will work to implement changes to bring DOC and its partners into compliance with the extremely robust national PREA standards. (See 28 C.F.R. Part 115) The PREA standards address topics such as prevention planning; responsive planning; training and education, for staff, volunteers, clinicians, contractors, and investigators; screening for risk of sexual victimization and abusiveness; reporting; official response following an inmate report; investigations; discipline; medical and mental care; data collection and review; audit standards; and state compliance.  (Id.)

In 2015, again under its own initiative, the DOC again applied for, and received, a PREA grant from the Bureau of Justice in the amount of $493,280.  (See BJA Grant Announcement and Application, annexed to Joyce Decl. as Exh. "C.")  This grant authorized DOC to use PREA funds "to continue its multi-agency, system-wide effort to institutionalize policies and practices that support and sustain compliance with PREA standards and the

prevention of inmate sexual abuse."  (See BJA NYC DOC PREA Grant 2015 award, annexed to Joyce Decl. as Exh. "D.")  The grant award further provides:

> The DOC will work in collaboration with a national expert to conduct an initial assessment of current policies, practices, training curricula, tools for monitoring and prevention, and organizational barriers for change; develop a strategic plan for leadership, organizational culture, operational practice, and performance enhancement; implement and support practices that prevent sexual abuse; and support the advancement of national best practices. With the support of a research partner, the DOC will conduct an evaluation to assess and learn from the implementation of these strategies.

Id.

Plaintiff proposes a class "consisting of all women who are presently incarcerated and will be incarcerated at RMSC, and who have been or will be raped or sexually abused by staff while incarcerated there," (Pl. memo 2) seeking declaratory and injunctive relief to "address the broad systemic failure by the City to take sexual abuse allegations seriously and investigate with care." (Pl. memo 10)  To support this proposed class plaintiff presents class representative JD 1, along with non-class representative Jane Doe 2 ("JD 2"), both bringing individual claims against the same officer, defendant Benny Santiago, as well as allegations by an unknowable amount of unidentified non-party inmates against seven unidentified officers, none of whom are parties.  (See Compl. ¶¶ 110-120)[1]  These allegations do not identify any women who allegedly were abused.  Rather, the allegations appear to be second- or third-hand accounts of alleged unlawful behavior by correction officers.  (See, e.g., id., ¶ 113 "Upon information and belief, Correction Officer 3 abused numerous women by subjecting them to unwelcome sexual touching"); 114 ("Upon information and belief, Correction Officer 4 abused women through

---

[1] To the extent the allegations in paragraphs 110-120 allege that inmates may have been impregnated by staff, upon information and belief, no female inmate has been impregnated in DOC custody by staff during the time frame of this lawsuit, from January 1, 2011 to the present.

unwanted sexual touching"); 116 ("Upon information and belief, Correction Officer 6 has

sexually abused several women"))

Aside from JD 1 and 2, plaintiff does not identify or describe any other inmates

who claim to have been sexually abused by DOC staff at any time.  Instead, plaintiff attempts to

support its class by relying on statistics from a DOJ survey conducted by the Bureau of Justice

Statistics pursuant to PREA.  The authors of the survey include the following cautionary note:

> As in the [prior surveys] (conducted 2007 [and 2008-9]) … the NIS-3 [i.e., the
> current survey] collected only allegations of sexual victimization. Since
> participation in the survey is anonymous and reports are confidential, the survey
> does not permit any follow-up investigation or substantiation of reported incidents
> through review. Some allegations in the NIS-3 may be untrue. At the same time,
> some inmates may not report sexual victimization experienced in the facility,
> despite efforts of survey staff to assure inmates that their responses would be kept
> confidential. Although the effects may be offsetting, the relative extent of under
> reporting and false reporting in the NIS-3 is unknown.

 (See U.S. DOJ Bureau of Justice Statistics ("DOJ Survey") Sexual Victimization in Prisons and

Jails Reported by Inmates, 2011-12, p. 8, annexed to Joyce Decl. as Exh "E.")

Clearly, the DOC is independently engaged in comprehensive reforms, as outlined

above, which will do more to address conditions throughout the DOC than a court can, while still

allowing the identified plaintiffs to pursue any individualized claims for damages.  The actions

already underway, independent of this lawsuit, will ensure comprehensive and effective reforms

that address the security and safety concerns of all DOC facilities and the people held or working

there, of which the plaintiff's purported class would be a relatively small subset.

## ARGUMENT

To certify a class, plaintiff must prove each prerequisite under F.R.C.P. 23 by a

preponderance of the evidence.  Teamsters Local 445 Freight Div. Pension Fund v. Bombardier,

Inc., 546 F.3d 196, 202 (2d Cir. 2008); In Re: IPO Securities Litigation v. Merrill Lynch & Co.,

Inc. ("IPO"), 471 F.3d 24, 26 (2d Cir. 2006).  In determining class certification, district courts

are not constrained by the allegations in the pleadings, and should instead "receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met" by a preponderance of the evidence.  Bombardier, 546 F.3d at 202, 204.  A court can weigh conflicting evidence even if such evidence overlaps with merits issues.  IPO, 471 F.3d at 41, 42.

**POINT I**

**PLAINTIFF'S      MOTION      FOR      CLASS      CERTIFICATION IS OVERBROAD**

That the class be ascertainable is an implicit requirement of Fed.R.Civ.P. 23. IPO, 471 F.3d at 45.  Thus, a court must determine, as a threshold matter, whether a class definition is workable.  See 7A Wright, Miller & Kane, Federal Practice and Procedure § 1760 at 115-132 (1986).  A court should not certify an overbroad class.  See Haitian Ctrs. Council v. McNary, 969 F.2d 1326, 1337-38 (2d Cir. 1992), vacated as moot sub nom., Sale v. Haitian Ctrs. Counsel, 509 U.S. 918 (1993).  The description of the class must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."  7A Wright, Miller & Kane, Federal Practice and Procedure § 1760 at 121.

Courts reject class definitions that "require addressing the central issue of liability" in a case to determine membership since the membership inquiry "essentially require[s] a mini-hearing on the merits of each [plaintiff's] case."  Forman v. Data Transfer, 164 F.R.D. 400, 403 (E.D. Pa. 1995); see also e.g. Haus v. City of New York, 03 Civ. 4915, at 279-280, (S.D.N.Y. Aug. 31, 2011) (proposed false arrest class not ascertainable where the court would have to inquire into the justification for each separate arrest).  Furthermore, the need to hold mini-hearings defeats the economic-savings that is a principle justification for the use of a class

action.  See Sanneman v. Chrysler Corp. n/k/a DaimlerChrysler Corp., 191 F.R.D. 441, 446 & 454-57 (E.D. Pa. 2000).

Here, plaintiff defines the class as "consisting of all women who are presently incarcerated and will be incarcerated at RMSC, and who have been or will be raped or sexually abused by staff while incarcerated there."  Pl. Memo at 2.  Aware of the unwieldy onerous burden inherent in their definition, plaintiff tries to determine class membership by arguing that every unverifiable and anonymous allegation of sexual abuse included in the DOJ Survey is presumptive evidence of actual sexual abuse, and therefore represents the universe of putative class members.  This is just too large a leap to make and is not supported by the evidence proffered by plaintiff.

The survey to which plaintiff refers extensively was not intended to be used as evidence in any civil lawsuit (See DOJ Survey, at 8).  The authors took pains to state that, because "participation … is anonymous and reports are confidential, the survey does not permit any follow-up investigation or substantiation of reported incidents through review." Furthermore, "[s]ome allegations in the [survey] may be untrue."  While the authors note the familiar problem of underreporting in this area, they also state that "the relative extent of under reporting and false reporting in the [survey] is *unknown*."  (Id.; emphasis added).

Moreover, the survey is hearsay, and plaintiff – who bears the burden of establishing class certification with evidence – does not cite any applicable exception to the hearsay rule.  In this circuit, surveys may be admitted into evidence under the residual exception, Fed. R. Evid. 807, but the test for admission is difficult to meet.  See Schering Corp. v. Pfizer, Inc., 189 F.3d 218, 231 (2d Cir. 1999).  In order to be admissible, the survey must have "equivalent circumstantial guarantees of trustworthiness" to those of the other hearsay

exceptions, *and* the plaintiff must establish that "(A) the [survey] is offered as evidence of a material fact; (B) the [survey] is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the [survey] into evidence."  Id. at 231; see Fed. R. Evid. 807.  In light of the authors' cautionary notes, the DOJ survey lacks "circumstantial guarantees of trustworthiness" sufficient to allow admission under Rule 807.

Plaintiff points out that "the anonymous federal survey yielded much higher numbers than have been reported by city agencies" (see Dkt. 32 [Decl. of Letitia James], ¶ 28), but this fact undermines its reliability as evidence.  Data collected by city agencies, including the Department of Health and Mental Hygiene ("DOHMH"), HHC, and DOI apparently reflects a lower level of alleged sexual abuse by officers than does the DOJ Survey.  (Id., ¶¶ 25-33)  The City agencies' data is based on direct reports by identified, affected persons, not an anonymous survey with a limited response rate and at least some "untrue" responses.  Cf. Schering, 189 F.3d at 233-34 (where survey methodology minimized "risk of insincerity," survey was admissible).

The decisions on which plaintiff relies in which  courts have accepted statistical evidence to support class certification (see Dkt. 28, at 13 n.50), involve much more rigorous, probative statistical analyses or data than that reflected in the DOJ Survey.  In Floyd v. City of New York, 283 F.R.D. 153 (S.D.N.Y. 2012), Judge Scheindlin considered the opinions of plaintiffs' expert, which reflected "an extensive statistical analysis" of the NYPD's data concerning stop-and-frisk – an analysis that the Court had previously found admissible under Daubert and the Rules of Evidence, after a hearing.  Id. at 166-7.  Here, in contrast, plaintiff does not offer up an expert analysis of data; rather, she relies on an anonymous survey that, the

authors caution, may contain "untrue" allegations and "false responses."   <u>Floyd</u> is materially distinguishable.

Similarly, in <u>Stinson v. City of New York</u>, 282 F.R.D. 360 (S.D.N.Y. 2012), the court considered documented proof of the number of summonses issued by the NYPD in support of its conclusion that the numerosity requirement was satisfied.   <u>Id</u>. at 369.   The data was generated by the Office of Court Administration based on NYPD records; it was not generated through an anonymous survey.   And in <u>M.B.K. v. Eggleston</u>, 445 F. Supp. 2d 400 (S.D.N.Y. 2006), the court considered data strongly supporting the inference that 90 percent of applicants for lawful immigration status filed by the battered spouses of residents were indigent, and therefore entitled to public assistance.   <u>Id</u>. at 440-41.   Although the data in <u>M.B.K</u>. was self-reported, it was not anonymous, and false reporting of information on the applications would likely have constituted a crime.   <u>Id</u>.   The DOJ Survey lacks similar guarantees of reliability.

If plaintiff's class definition is accepted the Court will have to engage in mini-trials of each putative class member's allegations and those individuals who don't fall within plaintiff's current class definition must be excluded from the class.   (<u>See Haus</u>, 03 Civ. 4915, at 245)   This process would undermine the very purpose of proceeding as a class.

## POINT II

**PLAINTIFF CANNOT MEET THE REQUIREMENTS OF RULE 23 FOR CERTIFICATION**

### A.   Requirements For Class Certification

In order to certify a class, the party seeking class certification must first demonstrate that the proposed class meets the four requirements of F.R.C.P. 23(a):   "(1) the class is so numerous that joinder of all members is impracticable;   (2)   there are questions of law or fact common to the class;   (3)   the claims or defenses of the representatives are typical of the

claims or defenses of the class;  and (4)  the representative parties will fairly and adequately protect the interests of the class."  F.R.C.P. 23(a);  In re Visa Check/MasterMoney Antitrust Litigation, 280 F.3d 124, 132-133 (2d Cir. 2001).  "Rule 23(a)'s interrelated prerequisites serve as 'guideposts' for determining whether the respective claims are sufficiently similar that a class action will serve as an efficient litigation control device."  McCarthy v. Kleindeinst, 741 F.2d 1406, 1410 (D.C. Cir. 1984) (citing General Telephone of the Southwest v. Falcon, 457 U.S. 147, 157 n.13 (1982)).

A district judge may certify a class only (1) after making determinations that each of the F.R.C.P. 23 requirements has been met, even if such determinations overlap with decisions on the merits; (2) after determining that facts relevant to each particular Rule 23 requirement have been established; and (3) if the court is persuaded to rule that each of the Rule 23 requirements has been met based on the facts and applicable legal standard.  IPO, 471 F.3d at 41. The District Court must conduct a rigorous analysis of the Rule 23 requirements.  General Tel., 457 U.S. at160-61.

While commonality and typicality are two separate requirements, they "tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)."  Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997).  The purpose of both requirements is to ensure that the class action is economical and that the named plaintiffs' claims and the class claims "are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  General Tel., 457 U.S. at 158 n.13.  Commonality is satisfied when plaintiffs' claims share a common question of law or fact.  Id.  Typicality "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  Robidoux v. Celani,

987 F.2d 931, 936 (2d Cir. 1993).  Neither commonality nor typicality will be satisfied if the court must engage in a "case-by-case evaluation of each encounter" in order to establish liability. Haus, 2011 U.S. Dist. LEXIS 155735, *317.

      Second, the party seeking class certification must demonstrate that the proposed class action meets at least one of the following requirements:  (1) that prosecution of separate actions by individual parties would create a risk of inconsistent adjudications or would be dispositive of the interests of those members not parties to the adjudication;  (2)  defendants have acted or refused to act on grounds generally applicable to the class; or (3) questions of law or fact common to members of the class predominate, and that a class action is superior to other available methods for adjudication.  Fed. R. Civ. P. 23(b);  In re Visa, 280 F.3d at 133.

      In addition to the express requirements for class certification set forth above, Rule 23 contains an implicit requirement that the proposed class be "precise, objective and presently ascertainable."  Bakalar v. Vavra, 237 F.R.D. 59, 64 (S.D.N.Y. 2006); Burley v. City of New York, 03 Civ. 0735 (WHP), 2005 U.S. Dist. LEXIS 4439, at *25 (S.D.N.Y. Mar. 23, 2005) (citing Simer v. Rios, 661 F.2d 655, 669 (7th Cir. 1981)).  In this regard, "a proposed class must be clearly defined so that it is 'administratively feasible for a court to determine whether a particular individual is a member.'"  Burley, 2005 U.S. Dist. LEXIS, at *25 (quoting Daniels v. City of New York, 198 F.R.D. 409, 414 (S.D.N.Y. 2001)).

## B.   Plaintiff Cannot Meet the Numerosity Prong of Rule 23(A)(1)

      Plaintiff bears the burden of establishing that the proposed class is so numerous that joinder of all members is impracticable.  Robidoux, 987 F.2d at 935.  "Courts should not be so rigid as to depend on mere numbers as a guideline on the practicability of joinder; a determination of practicability should depend on all circumstances surrounding the case." DeMarco v. Edens, 390 F.2d 836, 845 (2d Cir. 1968).

In determining whether a proposed class "is so numerous that joinder of all members is impracticable, courts look at a number of factors, including "(1) judicial economy arising from the avoidance of a multiplicity of actions; (2) the geographic dispersion of class members; (3) the financial resources of class members; (4) the ability of claimants to institute individual lawsuits; (5) the amount of each member's individual claim; (6) knowledge of the names and existence of the potential class members; and (7) whether potential class members have already joined other actions." Primavera Familienstiftung v. Askin, 178 F.R.D. 405, 410 (S.D.N.Y. 1998) (citing Robidoux, 987 F.2d at 936).   The class action device is typically reserved for those situations "where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of…individual lawsuits." Deposit Guaranty National Bank v. Roper, 445 U.S. 326, 339 (1980).

In Universal Calvary Church v. City of New York, 177 F.R.D. 181 (S.D.N.Y. 1998), the court held that, in a case involving 217 putative class members that the numerosity requirement of Rule 23(a) had not been met.   The plaintiffs in that case attempted to certify a class of plaintiffs who sought redress for police actions at their Church following an alleged robbery.   Claims of false arrest, malicious prosecution and state law claims arising out of allegations of deprivations of constitutional rights were made by those plaintiffs.   The Court stated:

> Plaintiffs' counsel has stated that it knows the identity of every potential plaintiff and is willing to join them…. Plaintiffs will be equally able to pursue their suits if their claims are joined as if they would be if a class was certified…. Judicial economy would not be better served by a class action than by joinder of all plaintiffs.   In either case, there will have to be subclasses of the various plaintiffs whose claims fall into distinct categories and raise different issues. Thus, no saving of judicial effort will be realized if there is class certification and judicial control of the proceeding will be better served if all the plaintiffs are joined.

Universal Calvary Church, at 183.

In the instant case, as in Universal, individual plaintiffs will be able to pursue their suits if their claims are joined, as if they would be if a class was certified.  Plaintiff has identified just two (2) individuals who were allegedly subject to sexual abuse inside RMSC; if others are later identified, those plaintiffs can pursue any remedy to which they may be entitled.  Otherwise, plaintiff has set forth allegations of anonymous individuals in the complaint (Compl. ¶¶110-120), and relies heavily on the DOJ Survey – which, we submit, is inadmissible and not probative (see Point I, above).  Plaintiff's allegations fall far short of meeting the numerosity requirement.

## C.  Plaintiff Cannot Meet the Commonality and Typicality Requirements of Rule 23(A)(2) and (3)

The United States Supreme Court has stated that "the class action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named plaintiffs only.'"  General Tel, 457 U.S. at 155  (quoting Califano v. Yamasaki, 442 U.S. 682, 700-701 (1979)).  "Class relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'  For in such cases, 'the class action device saves the resources of the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.'"  General Tel., 457 U.S. at 155 (quoting Califano, 442 U.S. at 700-701)).

"The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)."  Marisol A., 126 F.3d at 376.  "These requirements ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'"  Id. (quoting Gen. Tel. Co. v.

<u>Falcon</u>, 457 U.S. at 157 n.13).   "The typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability…."   <u>Robidoux</u>, 987 F.2d at 936.  "If a court must make a highly fact-specific or individualized determination in order to establish a defendant's liability to each class member, typicality will not be met."  5  <u>Moore's Federal Practice</u>, § 23.24[4] at 23-96 (1999).

It is clear that each individual plaintiff has her own set of issues and damages that she will be litigating with respect to alleged unconstitutional sexual misconduct.  (<u>See</u> Compl.¶¶ 110-120)   Plaintiff's broad, vague allegations do not suggest officer misconduct that is "common" to all of the class members; nor do the facts pleaded by JD 1 and 2 suggest any common thread between them, or any other alleged class member, except that both women allege that the same officer sexually assaulted them.  The claims of the class representative therefore cannot be said to even be typical of unidentified, unknown, potential class members.  All of the circumstances surrounding the conditions that each person was subjected to, if true, were unique, not "common" as defined in Rule 23(a).   Simply, the commonality and typicality prongs of Rule 23(a) have not been met by plaintiff and certification must be denied for this reason alone.

**POINT III**

**PLAINTIFF FAILS TO MEET THE RULE 23(B)(2) REQUIREMENTS FOR CLASS CERTIFICATION**

To certify a class seeking prospective injunctive relief, plaintiff must show that defendants "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Fed.R.Civ.P. 23(b)(2).  In <u>Wal-Mart Stores, Inc., v. Dukes</u> a unanimous Supreme Court held that Rule 23(b)(2) does not authorize class certification when each class member would be

13

entitled to an individualized award of monetary damages.  131 S. Ct. 2541, 2557 (U.S. 2011) (claims for monetary relief may not be certified under (b)(2) "at least where (as here) the monetary relief is not incidental to the injunctive or declaratory relief; back pay awards are not incidental); see also  Fed. R. Civ. P. 23(b)(2) Advisory Committee's Note (1966) ((b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages.").  JD 1 is not currently detained at DOC, nor does she have plans to be detained at DOC in the future, therefore her primary relief sought is monetary damages.

To the extent that Wal-Mart does not automatically bar (b)(2) certification, certification should still be denied because plaintiff's individualized compensatory damages are the predominant form of relief sought.  "Insignificant … requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery."  Robinson v. Metro-North Commuter Railroad Co., 267 F.3d 147, 164 (2d Cir. 2001). To determine whether damages are predominant or incidental, courts balance whether "(1) reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought even in the absence of possible monetary recovery; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits."  MacNamara v. City of New York, 2011 U.S. Dist. LEXIS 53829, *31-*32 (S.D.N.Y. May 19, 2011).

Plaintiff readily admits that she is seeking both compensatory and punitive damages.  (Ps. Memo at 38)  It is evident that plaintiff is seeking more than incidental monetary damages and but for these alleged damages she would not bring suit.  Therefore, injunctive relief would not be appropriate, and any damage award would sufficiently address any alleged past wrongdoing.

It is long established that certification under Rule 23(b)(2) is appropriate only when the relief sought is exclusively or predominately injunctive or declaratory or otherwise equitable.  Eisen v. Carlisle & Jacqueline, DeCoppet & Doremus, 391 F.2d 555, 564 (2d Cir. 1968); Kaczmarek v. International Business Machines Corp., 186 F.R.D. 307, 313 (S.D.N.Y. 1999).  The Second Circuit in Robinson, set forth the standard by which a court may determine whether a class may be certified under Rule 23(b)(2) if the plaintiffs also seek monetary damages:

> We hold that when presented with a motion for (b)(2) class certification of a claim seeking both injunctive relief and non-incidental monetary damages, a district court must 'consider the evidence presented at a class certification hearing and the arguments of counsel,' and then assess whether (b)(2) certification is appropriate in light of 'the relative importance of the remedies sought, given all of the facts and circumstances of the case.' [citation omitted]  The district court may allow (b)(2) certification if it finds in its 'informed sound judicial discretion' that (1) 'the positive weight or value [to the plaintiffs] of the injunctive or declaratory relief sought is predominant even though compensatory or punitive damages are also claimed,' [case omitted], and (2) class treatment would be efficient and manageable, thereby achieving an appreciable measure of judicial economy.

Robinson, 267 F.3d at 164.  In order to determine whether the injunctive/declaratory relief "predominates," the Robinson court held that the district court is to undertake an ad hoc balancing test consisting of the following:

> Before allowing (b)(2) certification a district court should, at a minimum, satisfy itself of the following: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits.  Insignificant…. requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery.

Robinson, 267 F.3d at 164 (Emphasis supplied).

Subsequent Courts in this Circuit utilizing the Robinson criteria have declined to certify classes under Rule 23(b)(2) where the facts are analogous to those of this case.  See e.g. Harris v. Initial Security, Inc., 05 Civ. 3873 (GBD), 2007 U.S. Dist. LEXIS 18397, at *23-24 (S.D.N.Y. Mar. 7, 2007) (where plaintiffs alleged, inter alia, discriminatory termination by the defendant and extreme mental distress and humiliation and sought compensatory damages, as well as punitive damages, court declined to certify class under Rule 23(b)(2): "Mere injunctive relief would not compensate Plaintiffs for that mental distress and humiliation."); Parker v. Time Warner Entertainment Company, L.P., 239 F.R.D. 318, 332 (E.D.N.Y. 2007) (court found that requests for equitable relief did not predominate in large part because complaint made only broad requests for injunctive and declaratory relief, and because relief would not provide remedy for prior violations); In re Nigeria Charter Flights Contract Litigation, 233 F.R.D. 297, 304 (E.D.N.Y. 2006) (certification under 23(b)(2) denied because declaratory relief sought would merely establish a basis for money-damages claims).

Applying the criteria set forth in Robinson to the plaintiff's motion in this case, the Court should deny certification under Rule 23(b)(2).  First, the equitable relief sought by the plaintiff does not predominate over claims for compensatory and punitive damages.  The plaintiff alleges she suffered significant emotional and physical damages as a result of repeated sexual misconduct at RMSC by *one* correction officer, and is seeking both compensatory and punitive monetary damages.  Injunctive relief would not offer the plaintiff redress for alleged damages arising from the alleged sexual misconduct by the one officer whom she alleges abused her.  Put another way, it is unlikely that the plaintiff would not have brought this action seeking equitable relief if there was no possibility of obtaining monetary damages.

Plaintiff also cannot maintain a Rule 23(b)(2) class because defendants have not "acted or refused to act on grounds generally applicable to the class."  As stated above, the class members in plaintiff's proposed class appear to have been subject to constitutional violations in a variety of factual circumstances (assuming <u>arguendo</u> that the allegations are true). The diverse circumstances surrounding the alleged sexual misconduct cannot be the basis for uniform conduct on the defendants' part to act or refuse to act on grounds generally applicable to the class.

Further, plaintiff lacks standing to seek injunctive relief:

> "In order to meet the constitutional minimum of standing to seek injunctive relief, [a plaintiff] must carry the burden of establishing that 'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'" <u>Shain v. Ellison</u>, 356 F.3d 211, 215 (2d Cir. 2004) (quoting <u>City of L.A. v. Lyons</u>, 461 U.S. 95, 101-02, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983)). In doing so, he "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he . . . will be injured in the future." <u>Deshawn E. by Charlotte E. v. Safir</u>, 156 F.3d 340, 344 (2d Cir. 1998). Accordingly, "a plaintiff seeking injunctive relief must demonstrate both a likelihood of future harm and the existence of an official policy or its equivalent." Shain, 356 F.3d at 216."

<u>MacNamara</u>, 2011 U.S. Dist. LEXIS 53829 at *36-*37.  <u>MacNamara</u> refused to certify certain (b)(2) classes where plaintiffs, individuals arrested during the Republican National Convention, sought declaratory and injunctive relief relating to alleged NYPD policies and/or practices of detaining and/or arresting protestors.  <u>Id.</u> at *38.  There the court found that plaintiffs' alleged future harm – that they faced potential arrest since several class representatives "plan to attend demonstrations in New York in the future" – was "too speculative and conjectural to supply a predicate for prospective injunctive relief."  <u>Id.</u> at *37-*38.  (internal citations and quotations omitted).

As in <u>MacNamara</u>, plaintiff cannot establish that there is an imminent fear of future injury.  Plaintiff is not currently incarcerated at RMSC, nor is it likely she will return there in the near future.  "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  <u>Lewis v. Casey</u>, 518 U.S. 343, 357 (1996) (internal quotation marks and citations omitted)); <u>see</u> <u>also</u> <u>Hodgers-Durgin v. De La Vina</u>, 199 F.3d 1037, 1045 (9th Cir. 1999) (<u>en</u> <u>banc</u>) (holding that class representatives could not rely on the risk of future harm to other class members to justify injunctive relief: "Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief.  Any injury [that] unnamed members of this proposed class may have suffered is simply irrelevant to the question [of] whether the named plaintiffs are entitled to the injunctive relief they seek.")  Any alleged future harm is speculative at best.  Because the named plaintiff- class representative cannot satisfy the standing requirements with regard to injunctive relief, her motion for class certification should be denied.

In <u>Shain II</u>, the Second Circuit held that the plaintiff, who had been strip searched while in custody for a misdemeanor, lacked standing to seek injunctive relief because he "had not established – or even alleged before this appeal – the likelihood of a future encounter with the Nassau County police likely to result in a subsequent unconstitutional strip search." <u>Shain II</u>, 356 F.3d 211, 215. (2d Cir. 2001) Where, as here, plaintiff has not even alleged a factual basis for the likelihood of future harm, she "cannot rely on past injury to satisfy the injury requirement but must show a likelihood" that she "will be injured in the future." <u>Shain II</u>, 356 F.3d at 215. Past injury provides a predicate for compensatory damages but not for prospective equitable

relief "since the fact that such practices had been used in the past did not translate into a real and immediate threat of future injury…." Shain II, 356 F.3d at 215 (citing City of Los Angeles v. Lyons, 461 U.S. 95, 105-106 (1983)). Invoking the Supreme Court's standing analysis in Lyons, the Second Circuit in Shain II held that the plaintiff Shain II could establish a sufficient likelihood of a future unconstitutional practice only by showing that "*if* he is arrested in Nassau County and *if* the arrest is for a misdemeanor and *if* he is not released on bail and *if* he is remanded to NCCC and *if* there is no particularized reasonable suspicion that he is concealing contraband, he will again be strip searched. Such an accumulation of inferences is simply too speculative and conjectural to supply a predicate for prospective injunctive relief." Shain II, 356 F.3d at 215-16 (citing O'Shea v. Littleton, 414 U.S. 488, 497 (1974)).

However, under Shain II and Lyons, this is a chain of inferences too speculative and conjectural on which to base prospective injunctive or declaratory relief. As the Shain court noted, since the Supreme Court's ruling in Lyons, this conjecture has simply not been enough to confer standing for injunctive relief:

> Absent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement are unconstitutional.

Shain, 356 F.3d at 215 (quoting Lyons, 461 U.S. at 111).

Plaintiff JD 1 is not currently in DOC custody. In fact, upon information in belief, plaintiff is in New York State custody until 2022 at the earliest. That is long after the DOJ promulgated PREA standards are expected to be implemented at DOC, including RMSC. Therefore, plaintiff cannot claim that it is likely she will be injured in the future. That would assume that once plaintiff is released from state custody she is rearrested, arraigned, given bail, is

unable to make bail, and is returned to DOC custody at RMSC, in 2022 at the earliest.  That is too speculative on which to base prospective injunctive or declaratory relief.

Further, under Galvan v. Levine, 490 F.2d 1255 (2d Cir. 1973), (b)(2) certification of a plaintiff class is unnecessary because the DOC is working to bring itself into compliance with the nationally recognized PREA standards to prevent inmate sexual abuse.[2] "What matters is whether class members will automatically benefit without any additional action on their part. Thus, the more important inquiry is the level of commitment expressed by the defendants." Daniels v. City of New York, 198 F.R.D. 409, 421 (S.D.N.Y. 2001).  Plaintiff cannot hope to achieve more via a (b)(2) class or have a higher level of commitment from the DOC.  The DOC has on its own initiative undertaken reforms which will continue whether plaintiff's proposed class is certified or not.  It is DOC's intention to become PREA complaint. The DOC employs a PREA Coordinator whose job is to assist DOC in implementing the PREA standards and Moss recommendations.  DOC has publically stated numerous times that it has a zero tolerance policy for sexual harassment or violence of any kind towards inmates.  Plaintiff will not obtain relief broader in scope than that required by PREA and soon-to-be implemented by DOC.   Certification of a (b)(2) class is unnecessary given the posture of this case and the actions being undertaken by DOC to comply with PREA and therefore certification on this basis should be denied.

Finally, class certification under Rule 23(b)(2) should be denied because plaintiff fails to identify an official policy, or its equivalent.  Like damages, prospective injunctive relief

---

[2]Considerations that dictate against class certification under Galvan include: (1) an affirmative statement from the government defendant that it will apply any relief across the board; (2) withdrawal of the challenged action or non-enforcement of the challenged statute; (3) whether the relief sought is merely a declaration that a statute or policy is unconstitutional rather than more complex, affirmative relief; and (4) whether plaintiffs' claims are likely to become moot.  Daniels v. City of New York, Daniels, 198 F.R.D. 409, 421 (S.D.N.Y. 2001) (Scheindlin, J.) (noting that the difference between prohibitory and affirmative relief is somewhat illusory).

against a municipality cannot be awarded unless there is municipal policy or custom attributable for the alleged misconduct.  See Reynolds v. Giuliani, 506 F.3d 183, 191 (2d Cir. 2007); see also Haus, supra, at 324 (recommending denial of a (b)(2) class since "there would seem to be little or no rationale for a suit designed to enjoin false arrests" absent evidence of a NYPD policy/practice).  Here, it cannot be said that there exists a current municipal policy or practice as the driving force behind the alleged sexual misconduct.  (Again, both named plaintiffs allege misconduct by the same, single officer.)  In the absence of the basis for Monell liability, no prospective relief can be awarded and there can be no basis for Fed.R.Civ.P. 23(b)(2) class.

### POINT IV

### PLAINTIFF FAILS TO MEET THE RULE 23(B)(1) REQUIREMENTS FOR CLASS CERTIFICATION

A class action may be maintained pursuant to F.R.C.P. 23(b)(1) if

"prosecuting separate actions by or against individual class members would create a risk of (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."

Plaintiff has not established that prosecuting separate actions would create a risk of inconsistent or varying adjudications, or that separate actions would somehow be dispositive of the interests of non-parties or would substantially impair or impede non-parties' ability to protect their interests.  The current reforms independently being undertaken by DOC will equally impact all inmates at DOC, including the purported members of the class, whether there is a class here or not.  Resolution of the named plaintiffs' claims for money damages alone will not in any way affect the rights of non-parties to pursue any remedy they wish.  The individual plaintiffs will

still be able to bring claims for individual damages against individual officers even if there is no

class.  Their rights will not be affected.

## POINT V

### PLAINTIFF CANNOT MEET THE DEFINITENESS REQUIREMENT

**A.     Generally Applicable Principles**

In addition to the requirements of Rules 23(a) and (b), in order to be certified, the

proposed class must be "precise, objective and presently ascertainable."  Bakalar, 237 F.R.D. at

64; Burley, 2005 U.S. Dist. LEXIS 4439, at *28.  The class must be so clearly and adequately

defined that it is "administratively feasible to determine whether a particular individual is a

member."  Id. (quoting Daniels, 198 F.R.D. at 414; Rappaport v. Katz, 62 F.R.D. 512, 513-14

(S.D.N.Y. 1974) (quoting 7 Wright and Miller, Federal Practice and Procedure § 1760 at 581

(1972).  "Plaintiffs may not be permitted to represent a class which is 'too amorphous and

imprecise' [citation omitted], [or] 'neither distinguishable nor definable' [citation omitted]."

Rappaport, 62 F.R.D. at 513-14.  This implicit requirement of Rule 23 "is often referred to as the

"definiteness requirement."  Burley, 2005 U.S. Dist. LEXIS 4439, at *28.  If the "definiteness

requirement" is not met, it cannot be said that a class exists at all.  Id. (citing Simer, 661 F.2d at

669).

A class must not be certified where the District Court has to perform

individualized fact specific inquiries to determine class membership.  Luedke v. Delta Airlines,

155 B.R. 327, 329-32 (S.D.N.Y. 1993); Williams v. Glickman, Civil Action No. 95-1149 (TAF),

1997 U.S. Dist. LEXIS 1683, at *12-14 (D.D.C. Feb. 14, 1997) (court must be able to make class

membership determination without having to answer numerous fact-intensive questions);

Catanzano by Catanzano v. Dowling, 847 F. Supp. 1070, 1079 (W.D.N.Y. 1994) ("A class

definition is too general when 'it would require the court to determine whether a person's constitutional rights had actually been violated in order to determine whether that person was a class member.'") (quoting Hagen v. City of Winnemucca, 108 F.R.D. 61, 63 (D. Nev. 1985)); Mike v. Safeco Insurance Company of America, 223 F.R.D. 50, 53-54 (D. Conn. 2004) ("The proposed class is untenable because the Court would have to conduct an individual inquiry regarding the merits of each proposed plaintiff's claim in order to determine class membership…. By defining the class as persons whose rights have been violated, a plaintiff necessarily creates a threshold inquiry that defines class membership:  determining whether each plaintiff's rights were violated…. Where a threshold inquiry is necessary to determine class membership, the benefits to proceeding as a class action are eviscerated."); In re Chrysler Corporation, MDL No. 1239, 2000 U.S. Dist. LEXIS 2332, at *12 (E.D. Pa. Mar. 2, 2000) ("the practical issue of actually identifying class members is indeed problematic, as it presents serious administrative burdens that are incongruous with the efficiencies of a class action.  Determining membership in the class would essentially require a mini-hearing on the merits of each class member's case, which in itself renders a class action inappropriate for addressing the claims at issue"); see also Dunn v. Midwest Buslines, Inc., 94 F.R.D. 170, 172 (E.D. Ark. 1982) (Where court declined to certify class: "First, however, is the matter that these definitions depend on a finding of discrimination in order to define the class.  A class of 'those who have been actually discriminated against' has no limits until conclusion of the trial on the merits.  A finding of no discrimination on the part of the defendant would logically mean the class had been improperly certified in the beginning.")

In this regard, it is also well established that "[i]f the effect of class certification is to bring in thousands of possible claimants whose presence will in actuality require a multitude

of mini-trials (a procedure which will be tremendously time consuming and costly), then the justification for class certification is absent." Alabama v. Blue Body Co., 573 F.2d 309, 328 (5th Cir. 1978) (quoted in Luedke, 155 B.R at 330-331) (where court rejected certification because it would have to perform "at least some individualized, fact-specific inquiries to determine class membership" and the potential class included over 10,000 people, which rendered identifying the class unfeasible).

A class must also only be certified where the Court can look to objective criteria to make its determination.  See, e.g., Fogarazzo v. Lehman Bros., 232 F.R.D. 176, 181 (S.D.N.Y. 2005) ("An identifiable class exists if its members can be ascertained by reference to objective criteria."); Hnot v. Willis Group Holdings Ltd., 228 F.R.D. 476, 481 (S.D.N.Y. 2005) ("A class is ascertainable when defined by objective criteria that are administratively feasible, without a subjective determination.").

Judge Pauley's decision in Burley with respect to those plaintiffs' attempt to certify a handcuffing class is instructive on the "definiteness" issue.  The Burley plaintiffs attempted to certify a handcuffing class as to the approximately 200 persons arrested during the 2002 World Economic Forum demonstrations.  Plaintiffs' counsel submitted in Burley that the test to determine whether an individual was a member of the "unreasonable" handcuffing class was a "function of time and tightness."  The Burley court held that said proposed class did not meet the "definiteness" requirement because it "requires this Court to delve into the specific conditions" under which handcuffs were affixed to the putative class members.  Burley, 2005 U.S. Dist. LEXS 4439 at *27.

**B.      Application to Plaintiff's Proposed Class**

        The proposed class in this case runs afoul of the "definiteness" requirement.  In order to determine who is a member of a class, this Court would have to make individual determinations of whether each inmate was subjected to sexual abuse, if an individual is to be properly in the class.  This Court would have to hold full-blown trials to make individual findings.  Clearly, as seen, the plaintiff's and proposed class members' claims are all vastly different, alleged against different individuals.  As such, their claims cannot be tried as a class.

        Additionally, it would be completely unfair to defendants for such claims to be tried by representation without determinations being made on whether each individual claimant was subjected to unconstitutional conduct, when many, if not all, of the individuals' claims, are so different.  Given the differing nature of the conduct they were subjected to, the claims do not rise and fall as a class, but rather as individuals.  Simply, under the foregoing authorities, having to make these fact-intensive determinations clearly leads to the conclusion that plaintiff's proposed class runs afoul of the implicit "definiteness" requirement of Rule 23.

## <u>CONCLUSION</u>

        For the foregoing reasons, plaintiff's motion for class certification must be denied in its entirety.

Dated:       New York, New York
             November 23, 2015

                                     Respectfully submitted,

                                     ZACHARY W. CARTER
                                     Corporation Counsel of the City of New York
                                     100 Church Street
                                     New York, New York 10007
                                     (212) 356-2650

                               By:      __/s/_____
                                       Kimberly M. Joyce
                                       Senior Counsel