

199 WATER STREET  NEW YORK, NY 10038  TEL: 212-577-3300  FAX: 212-509-8481  www.legal-aid.org

**Blaine (Fin) V. Fogg**
*President*

**Seymour W. James, Jr.**
*Attorney-in-Chief*

January 29, 2016

**By Electronic Filing on ECF**

The Honorable Alvin K. Hellerstein
United States District Court
for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

    *Jane Doe 1., et al. v. The City of New York, et al.*, 15 Civ. 3849 (AKH)

Dear Judge Hellerstein,

    I write on behalf of the parties in the above captioned matter, and respectfully submit this joint letter concerning certain discovery disputes, as directed by the Court during the conference on January 15, 2016.

    The parties' dispute concerns Plaintiffs' Requests for Production Nos. 3 and 12. Request for Production No. 3 seeks, "[a]ll documents, including, but not limited to, bank records or receipts, concerning any transfers of money or other assets or items between You and any Incarcerated Woman at RMSC (whether directly or through an intermediary)." Request For Production No. 12 seeks "[a]ll documents, including, but not limited to medical records, concerning [Santiago's] diagnosis with any sexually transmitted disease or infection." On July 10, 2015, Plaintiffs served defendant Santiago with these and other discovery requests, in response to which Santiago served responses and objections, after which the parties met and conferred.

    Plaintiffs' position is that the bank and medical records are relevant evidence that should be produced. With respect to the bank records, Plaintiffs have agreed to narrow their request to the period September 2011 through December 2012 as well as the month of February 2013, to the extent those records reflect cash withdrawals, or transfers of funds to Jane Doe 1, Jane Doe 2, or Betty Wilson. Plaintiffs have narrowed their request for medical records to the 2013 to 2015 period. Plaintiffs seek an order compelling Santiago to produce these records.

1

Santiago's position is that the bank and medical records are not relevant and he will not provide them without a court order.

**PLAINTIFFS' POSITION**

To date, Santiago has not produced a single document in response to this litigation, and specifically, to Plaintiffs' requests. Despite repeated communications amongst the parties to resolve these discovery issues, the parties are now at an impasse.

On October 16, 2015, at Plaintiffs' counsel request, the parties held a meet and confer about discovery issues and Santiago's counsel agreed to obtain Santiago's medical and bank records not then in his possession to determine if they were responsive to Plaintiffs' document requests. The parties further conferred by email on October 19, 20, 21, and 22. On November 12, 2015, in response to Plaintiffs' counsel's status inquiry, Defendant's counsel replied she was still trying to obtain the documents from her client and would notify counsel when she had received the records. On December 15, Plaintiffs' counsel again wrote to Defendant's counsel for updates on her progress obtaining the requested documents. Defendant's counsel replied that she had just finished reviewing the medical records, but had not received the requested bank records. Defendant's counsel indicated that the medical records that she was provided do not reflect any testing of Santiago for sexually transmitted diseases during the time period in question, and Santiago's position is accordingly that the medical records are non-responsive. On January 7, 2016, Plaintiffs' counsel contacted Defendant's counsel to inquire about the outstanding bank records, and requested confirmation that Defendant's counsel would produce any responsive records by January 15, 2016 or otherwise request to further meet and confer to resolve any remaining issues, absent which, Plaintiffs would seek relief from the Court. Plaintiffs' counsel also informed Defendant's counsel that Plaintiffs were requesting production of the medical records that Defendant's counsel had in her possession. On that date, Defendant's counsel informed Plaintiffs that she had received the bank records, though had not yet reviewed them, but in any event, objected to their production, as well as to the production of the medical records. When asked by Plaintiffs' counsel to reconsider production of the bank and medical records, Defendant's counsel refused to provide the records and also noted that she would not engage in any further discussion on the matter.

Under the Federal Rules of Civil Procedure, parties are permitted to obtain discovery, so long as the items requested are "relevant to any party's claim or defense and proportional to the needs of the case" and are non-privileged. Fed. R.Civ. P. 26(b). Information "need not be admissible in evidence to be discoverable." *Id.* Courts have construed relevance "broadly to encompass any matter that bears on or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Cohen v. Cohen*, No. 09 Civ. 10230(LAP), 2015 WL 4469704, at *3 (S.D.N.Y. June 29, 2015) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also* Fed. R.Civ. P. 26(b); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 756F.2d 230, 236 (2d Cir. 1985) (rules governing discovery should be interpreted broadly to achieve the purposes of "avoiding surprise, fully disclosing the nature and scope of the controversy, narrowing, simplifying, and framing the issues involved, and enabling parties to obtain the factual information needed to prepare for trial"). Plaintiffs bears "a relatively low" burden in establishing relevance on a motion to compel and are required "to

demonstrate only 'any possibility of relevance.'" *Cohen*, 2015 WL 4469704, at *3 (citation omitted). Once this minimal burden has been satisfied, "the party resisting discovery has the burden of showing undue burden or expense." *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14 CIV 9792 WHP(JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015). This Court has the authority to compel discovery from Santiago for failing to produce documents requested under Rule 34. Fed. R. Civ. P. 37(a).

Here, Santiago must be compelled to produce the bank and medical records because they are relevant to the action at hand and production is not unduly burdensome. Plaintiffs' Complaint alleges that defendant Santiago provided money to Jane Doe 1's mother after coercing Jane Doe 1 to provide her home address. (Compl. ¶¶ 43, 44). The Complaint also alleges that Santiago gave money to Jane Doe 2. (*Id.* ¶ 54). The bank records requested by Plaintiffs are targeted to the time periods in which they understand these transfers were made. The Complaint also alleges that Jane Doe 2 contracted a sexually transmitted disease from defendant Santiago. (*Id.* ¶ 94). While Plaintiffs do not question Defendant's counsel's representation that Santiago's medical records do not indicate that he was tested for STDs, Plaintiffs are entitled to review the records themselves to assess whether Santiago exhibited any symptoms of an STD and whether any additional records should be requested. Therefore, the bank and medical records are relevant evidence or are reasonably likely to lead to the discovery of other relevant evidence and have a direct impact on the merits of both Plaintiffs' claims in this case. Moreover, Defendant's counsel already has the records in her possession and it is therefore not burdensome to provide them. Accordingly, Defendant's counsel has not cited any valid objection to their production and defendant Santiago's obligation to produce discovery items responsive to Plaintiffs' Requests for Production No. 3 and No. 12.[1]

For these reasons, Plaintiffs request that the Court enter an order requiring defendant Santiago to immediately produce the bank and medical records requested by Plaintiffs.

**DEFENDANT'S POSITION**

Contrary to Plaintiffs' counsel's allegations, Defendant Santiago is not in possession of any documents (with the exception to the objected ones below). It is set forth that any business records or documents related to this matter is in the sole possession, custody and control of the Defendant City and the same have been produced to all parties on a rolling basis.

*Background*

Defendant served his response to plaintiffs' demands in August 2015. Plaintiffs' counsel voiced objection to the responses in September 2015. At the meet and confer held on or about October 16, 2015, defense counsel vehemently objected to the relevancy and the production of the Defendant's medical and bank records. Plaintiffs' counsel alleges, and defense counsel disputes, that the Defendant provided money to both Jane Doe 1 and Jane Doe 2 during their

---

1   To the extent Santiago asserts that certain facts should be taken as established at this stage of discovery, Plaintiffs disagree. Plaintiffs dispute Santiago's interpretation of certain discovery materials, and the inferences he draws from others. Regardless, the role of discovery role is to obtain all relevant facts, and it is not proper to foreclose avenues of discovery based on an incomplete collection of evidence, as Santiago seems to suggest.

incarceration at the Rose M. Singer Center ("RSMC" or "Rosie's"). Plaintiffs' counsel also alleges the Defendant passed along Trichomoniasis to Jane Doe 2 on May 2, 2013. As a compromise, defense counsel agreed to review the records *in camera* and advise whether there was any information potentially relevant to the claims. Plaintiffs' counsel at that time indicated they would take defense counsel's representation at face value if it is found there was no relevant information in the records.

Shortly after the meet and confer, there was an email exchange between defense counsel and plaintiffs' counsel regarding the parameters for the records to be obtained. Plaintiffs' counsel indicated they sought to obtain bank records from September 2011 through December 2012 for Jane Doe 1 and February 2013 for Jane Doe 2. In their email, they indicated that they "believed" the Defendant made "multiple $50 to $100 transfers to Jane Doe 1 and her mother Betty Wilson" and at least "one" transfer of "$50 to $100" to Jane Doe 2. Defense counsel asked plaintiffs' counsel several times to clarify the nature of the "transfer" (i.e. electronic, check, etc.). Defense counsel also sought clarification as to whether the amounts to be reviewed in the bank records were for specific withdrawals of $50 or $100. Plaintiffs' counsel indicated they would "not make any further representation" and advised "any withdrawal", despite its denomination, during the 15 month time period was relevant to their claims. In addition, plaintiffs' counsel sought Defendant's medical records for the period of January 2013 through present despite the claim that the alleged transmission of Trichomoniasis to Jane Doe 2 occurred at their last sexual encounter on May 2, 2013.

While it is conceded the attempt to obtain the records for an *in camera* review did in fact take some time, it should be noted that the Defendant initially objected to producing such records to defense counsel. After several attempts by defense counsel, the Defendant finally produced the medical records in or about the second week of December. By email dated December 15, 2015, plaintiffs' counsel inquired as to the status and defense counsel responded she was in receipt of the medical records and, upon review, there was no information responsive to their request. In that same email, defense counsel advised that while the banking records were anticipated to be received shortly, she was going to be out of the office and out of the state from December 21, 2015 through January 4, 2016 for the Christmas Holiday.

Upon return from vacation, defense counsel received an email from plaintiffs' counsel, dated January 7, 2016, requesting production of the medical records despite defense counsel's representation there was nothing responsive and plaintiffs' counsel's previous representation at the October 2015 meet and confer of accepting defense counsel's word at face value. As it was apparent during the course of the email exchange that any further discussion, absent judicial intervention, would be an exercise in futility, defense counsel indicated the same should be discussed at the status conference scheduled before Your Honor on January 15, 2016. Defense counsel indicated that she would not continue with the back and forth disagreement and the same could be brought up at the conference. This is vastly different than plaintiffs' implication that defense counsel simply and unreasonably chose to shut down the lines of communication.

*Medical Records*

In the complaint, Jane Doe 2 indicates she contracted Trichomoniasis during an alleged

sexual encounter with the Defendant on May 2, 2013. The discovery already exchanged between the parties shows that such encounter did not happen. A review of the Defendant's attendance records, which is in the possession of all parties, shows the Defendant was **not** physically in the facility on May 1 or May 2, 2013. (Bate Stamped Def. 1141).

According to the statement made by Jane Doe 2 to the Department of Investigations ("DOI"), as well as what is alleged in the Complaint, the last date of the alleged sexual encounter was on May 2, 2013. In her interview with DOI, Jane Doe 2 claimed she had the Defendant's semen on her jeans as "proof" of the May 2, 2013 sexual encounter. The jeans were provided to DOI so they could perform a forensic analysis as part of their investigation. The forensic analysis of the jeans tested **negative** for any presence of semen. (Bate Stamped Def. 1756-1758; 1824-1827).

In addition to the lack of evidence to support a sexual encounter occurred on May 2, 2013, plaintiffs have not produced any medical records to support that Jane Doe 2 did not have Trichomoniasis prior to May 2, 2013 and she, in fact, had it at some point after May 2, 2013. Prior to the incarceration at issue, Jane Doe 2 had been incarcerated several times on charges of prostitution. The lack of medical records prior to or subsequent to the incarceration of Rikers, the fact the Defendant was not physically present in the facility at the time she alleges and the fact there was lack of semen as "proof" of such encounter, clearly questions the credibility of the claim.

The Defendant's medical records are privileged and he has done nothing to imply that such privilege is waived. He has not put his medical condition at issue and the plaintiffs have not cited to any legal authority to support how the production of the records is relevant and reasonably calculated to lead to admissible evidence. Assuming *arguendo* such records are found to be relevant, it is not clear as to how any records from 2014, 2015 or presently are relevant as the alleged transmission occurred at the last sexual encounter in May 2013. In light of the lack of evidence to support that any such encounter occurred on May 2, 2013, and the lack of any records to support the contracting of Trichomoniasis, it is the Defendant's position that such records are not relevant and are not subject to discovery.

*Bank Records*

*a) Jane Doe 1*

Plaintiffs' counsel seeks Defendant's bank records for the period of September 2011 through December 2012. In the email exchange shortly conducted after the meet and confer, defense counsel asked for clarification on the parameters as they were seeking "any transaction" between the Defendant, Jane Doe 1 and Ms. Wilson; especially in light of the fact that no banking or account information was provided for either Jane Doe 1, Jane Doe 2 or Ms. Wilson. When asked several times to describe the nature of the transactions (i.e. electronic or cash), plaintiffs' counsel advised they would "not be making further factual representations concerning the money transfer allegations." They also indicated that "any ATM or cash withdrawals during the relevant period, regardless of transaction size" was responsive to their request.

It is claimed by plaintiffs' counsel that Defendant gave her and her mother Betty Wilson "$50 to $100" several times during an unspecified period of time. During the course of

5

discovery, Ms. Wilson submitted a brief six (6) paragraph sworn affidavit which broadly states she received "somewhere between $50 and $100" by an individual she described as "fair skinned, stocky and balding" on an unspecified date. (Bate Stamped JD251). She claims she "later learned" this individual was the Defendant but stated she did not "recall what name she was given" at the time of the alleged transaction. Ms. Wilson also claims she took the money and placed it in her daughter's commissary.

It is not clear how fifteen (15) months' worth of financial records reflecting "any" ATM or cash withdrawal in "any amount" is reasonably calculated to lead to the discovery of admissible evidence or lend an inference that there may have been an exchange between the Defendant and Jane Doe 1 or Ms. Wilson. This is especially true as the Complaint (paragraph 41) and Ms. Wilson's sworn affidavit dated February 25, 2015 only allege one transaction, at most. It is also not clear as to how the ambiguous individual Ms. Wilson references in her affidavit is now identified as the Defendant and how Ms. Wilson "came to learn" his real identity. Telephone conversations recorded of Jane Doe 1 during her incarceration reveals she would contact different people, via three-way calling with Ms. Wilson, and asked them for money; none of whom were the Defendant. Furthermore, plaintiffs' commenced the within action on May 19, 2015. As the statute of limitations for the underlying causes of action is three (3) years, and there is no legal authority cited to or existing which supports that a tolling or extension of the same exists, it is argued by the Defendant that any of Jane Doe 1's claims from alleged encounters in 2011 are time barred thus, negating any arguments that such records are relevant.

*b) Jane Doe 2*

Plaintiffs' counsel seeks to obtain a copy of the Defendant's bank records, again for any and all ATM transactions, for the month of February 2013 as it relates to their claim that Jane Doe 2 received money from the Defendant. Defendant objects to this production as well.

In her Complaint and in her statements made during the course of the DOI investigation, Jane Doe 2 alleges she first "started talking to" and commenced a sexual relationship with the Defendant during the week of February 18, 2013. Once again, a review of the Defendant's attendance records, which was provided to all parties, shows he was not physically in the facility, or in the country, from February 16, 2013 through February 29, 2013. (Bate Stamped Def. 1141). It is not clear how the Defendant would have been able to provide any in hand or otherwise cash transactions to Jane Doe 2 in the month of February 2013; especially since he was in the Dominican Republic during this time frame.

The requests for the Defendant's bank records overall is not reasonably calculated to lead to admissible evidence. It is not out of the realm of possibility that the Defendant may have made an ATM withdrawal or two during the period of September 2011 through February 2013 in any denomination. No reasonable inference, on any level, can be made that any and all ATM or cash withdrawals made by the Defendant, in "any" amount, during this time span was or could have been earmarked and transferred, in whole or part, to either Ms. Wilson, Jane Doe 1 or Jane Doe 2. As such, it is the Defendant's position that the plaintiffs' request be denied in its entirety as it is evident that it is nothing more than a fishing expedition.

Respectfully submitted,

*[signature]*

Barbara P. Hamilton

cc:   All Counsel of Record (By Electronic Filing on ECF)