# EXHIBIT 1
# REDACTED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JANE DOE 1 and JANE DOE 2, on behalf of
themselves and all similarly situated women,

                    Plaintiffs,

          -against-

THE CITY OF NEW YORK and BENNY
SANTIAGO,

                    Defendants.

---

15 Civ. 3849 (AKH)

---

### PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT THE CITY OF NEW YORK RELATING TO MERITS DISCOVERY

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Rule 26.3 of the Local Civil Rules of the United States District Court for the Southern District of New York, plaintiffs Jane Doe 1 and Jane Doe 2 ("Plaintiffs") request that defendant the City of New York produce for examination, inspection, and copying, within thirty (30) days of the service hereof, all documents described below at the offices of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006.

<u>DEFINITIONS</u>

1.      Plaintiffs incorporate by reference herein the Uniform Definitions in Discovery Requests set out in Rule 26.3(c) of the Local Civil Rules of the United States District Court for the Southern District of New York (the "Local Civil Rules").

2.      "DOC" means the City of New York Department of Correction.

3.      "DOI" means the City of New York Department of Investigation.

4.      The term "Incarcerated Woman" means an individual incarcerated in Rose M. Singer Center.

5.      "Law Enforcement Agency" means the Bureau of Criminal Investigation of the State Police, a county sheriff's office, a city police department, a district attorney's office, the Federal Bureau of Investigation, or a United States Attorney's Office.

6.      "Policies" means documents that are policies, procedures, Institutional Orders, Departmental Orders, directives, memoranda, rules, or guidance, in effect at RMSC, or any other document that dictates, prohibits, or guides the conduct of RMSC Staff.

7.      "RMSC" means Rose M. Singer Center.

8.      "RMSC Staff" means correctional staff members, including line and supervisory staff, medical personnel and other civilian staff members at RMSC, and any other DOC staff member or contractor who performed duties at RMSC.

9.      "Sanction" means any form of discipline imposed on RMSC Staff, whether formal or informal, including reprimands; counseling; loss of vacation time; limitations on inmate contact, access to certain areas of a facility, or removal of rights to certain keys; enhanced supervision; transfers from bid positions, away from female housing units, away from women's facilities, or other reassignments or changes in duties; referrals to the Office of Labor Relations or to any Law Enforcement Agency; suspensions and terminations.

10.     "Sexual Misconduct" means any of the following directed towards an Incarcerated Woman by RMSC Staff, with or without the consent of the Incarcerated Woman: acts or attempts to commit acts of rape; sexual intercourse; anal intercourse; oral sex; sodomy; sexual assault; sexual abuse; sexual harassment; sexual contact; sexual touching, including physical contact in a sexual manner, either directly or through clothing, of the genitalia, anus, groin, breasts, inner thighs, or buttocks; indecent exposure; voyeurism; sexual comments; and the unreasonable invasion of privacy.

11.     "Special Housing Unit" means the place of confinement of any Incarcerated Woman, while in DOC custody, in any housing other than the general population of RMSC, where such confinement is done for reason of disciplinary (punitive) segregation, administrative segregation, protective custody, involuntary protective custody, mental observation, or where the place of confinement is the mental health satellite unit.

12.     "You" means the City of New York, and all persons acting or purporting to act on its behalf, whether or not authorized to do so.

<u>INSTRUCTIONS</u>

1.      In addition to following the rules of construction in Rule 26.3(d) of the Local Civil Rules, whenever necessary to bring within the scope of this Request documents that might otherwise be construed to be outside its scope:  (a) the use of a verb in any tense shall be construed as the use of that verb in all other tenses; and (b) the use of the feminine, masculine or neuter genders shall include all genders.

2.      No Request herein shall be construed with reference to any other Request herein for the purpose of limitation.

3.      Unless otherwise indicated, the relevant time period for purposes of these Requests is between January 1, 2011 and the date on which You produce documents in response to this Request.

4.      These Requests include all documents in Your possession, custody or control, regardless of location, including but not limited to all documents in the possession of family members, agents, employers, representatives, attorneys or other persons.

5.      All documents shall be produced in the manner in which they are maintained in the usual course of business.  A request for a document shall be deemed to include a request for any and all file folders or binders within which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document in addition to the document itself.

6.      All documents requested herein shall be produced in their entirety, along with any attachments, drafts, and non-identical copies, including copies that differ due to handwritten notes or other notes or markings.

7.     Provide all Electronically Stored Information ("ESI") in standard single-page Group IV TIFF format, with Bates numbers applied to each page, except provide in native format all Microsoft Excel files and other spreadsheets and any other files that are not reasonably usable in TIFF format.  For each document, provide a file containing extracted or otherwise searchable text.  Include in the production a Concordance-compatible image load file and a data file containing all reasonably available metadata for all documents in the production, including the following fields as appropriate for the file type:  author(s), recipient(s), blind copy recipient(s), subject, document type, custodian, file creation date, file modification date, access date, last saved by, file path and folder information.  Provide each document with all of its attachments, with family relationships among the documents indicated as metadata fields in the data file.  Produce audio, audiovisual, and video files in their native formats.

8.     In the event You withhold any document called for by this Request on the basis of a claim of privilege, You shall provide the information required by Rule 26.2 of the Local Civil Rules.

9.     In the event that any document called for by this Request has been destroyed or discarded, You shall provide a written document identifying the documents so lost, discarded, or destroyed as completely as possible, providing at least the following information: (i) the type of document; (ii) any addressor and addressee; (iii) any indicated or blind copy recipients; (iv) the document's date, subject matter, number of pages, and attachments or appendices; (v) all persons to whom the document was distributed, shown, or explained; (vi) the document's date of destruction or discard, manner of destruction or discard, and reason for destruction or discard; and (vii) the persons authorizing and carrying out such destruction or discard.

10.     If the response to any Request consists in whole or in part of an objection based upon undue burden, then with respect to such response: (a) produce such documents as can be provided without undue burden; and (b) state with particularity the basis for such objection, including a description of the process or method required to obtain documents responsive to the Request and the estimated cost and time required to obtain documents responsive to the Request.

11.     If objection is made to any of the Requests, the response shall state whether documents are being withheld from inspection and production on the basis of such objection, or whether inspection and production of the responsive documents will occur notwithstanding such objection.

12.     If there are no documents responsive to any particular request, the response shall state so in writing.

13.     These Requests are continuing in nature.  In accordance with Rule 26(e) of the Federal Rules of Civil Procedure, You are required promptly to serve supplementary responses and produce additional documents if You obtain further or different information.

<u>DOCUMENTS REQUESTED</u>

**REQUEST FOR PRODUCTION NO. 1**

The personnel file, duty history (including documents sufficient to show the date, time, location, duties and supervisors for all shifts worked at RMSC from December 2012 to the present), documents sufficient to show all transfers, demotions and promotions, and all documents concerning investigations of, or Sanctions imposed against (i) RMSC Staff member Benny Santiago; and (ii) any RMSC Staff with the following phonetic surnames:  Harris; Rodriguez; Murdoch; Phillips; Viola; Samms; Sabio; Muhammad; and Rogers.

**REQUEST FOR PRODUCTION NO. 2**

All documents concerning hearings held before Adjudication Captains or other DOC personnel in connection with disciplinary tickets given to Incarcerated Women by Benny Santiago or disciplinary charges brought against Incarcerated Women based upon allegations made Benny Santiago.

**REQUEST FOR PRODUCTION NO. 3**

All documents concerning DOC disciplinary proceedings at RMSC involving ███████████████, a former Incarcerated Woman with NYSID number █████████, including but not limited to Reports and Notices of Infractions, Captain's Investigation Reports, staff and inmate witness statements relevant to any initial disciplinary investigations or disciplinary hearings, any Disciplinary Hearing Report or Notices of Dispositions, and audio recordings or transcripts of proceedings.

**REQUEST FOR PRODUCTION NO. 4**

All Policies and collective bargaining contracts concerning requirements for, or restrictions or limitations on, any of the following:  (i) the assignment of male RMSC Staff to supervise female housing areas; and (ii) work assignments for male RMSC Staff, including Policies governing locations to which male RMSC Staff may or may not be assigned.

**REQUEST FOR PRODUCTION NO. 5**

All Policies concerning the privacy of Incarcerated Women at RMSC, including but not limited to Policies governing privacy when changing, undressing, showering, bathing, using toilets, sleeping, and receiving medical care.

**REQUEST FOR PRODUCTION NO. 6**

All Policies concerning the screening, hiring, promoting, and other decisions about continued employment of current and prospective RMSC Staff for prior allegations or

findings of Sexual Misconduct or domestic violence, including but not limited to psychological evaluations, criminal background checks, and prior employment checks.

**REQUEST FOR PRODUCTION NO. 7**

All Policies concerning the process for determining and imposing Sanctions against RMSC Staff against whom findings of Sexual Misconduct are made, including, but not limited to, the Rikers' employee handbook.

**REQUEST FOR PRODUCTION NO. 8**

All documents of which You are aware concerning the resignation, termination, or transfer of an RMSC Staff member after an allegation of Sexual Misconduct was made against such person.

**REQUEST FOR PRODUCTION NO. 9**

All documents concerning the training, both pre-service and in-service, of RMSC Staff concerning Sexual Misconduct, including trainings concerning the prohibition on, and detection and reporting of, Sexual Misconduct, documents sufficient to evidence the frequency and duration of such trainings, whether such trainings are mandatory, and the process for tracking and enforcing attendance at such trainings.

**REQUEST FOR PRODUCTION NO. 10**

All documents concerning methods and practices of supervision at RMSC intended to reduce or eliminate Sexual Misconduct, including, but not limited to, documents concerning supervision of RMSC Staff against whom there have been allegations or findings of Sexual Misconduct.

**REQUEST FOR PRODUCTION NO. 11**

All documents, including Policies and post orders, concerning the use of unannounced supervisory rounds at RMSC, including but not limited to their frequency, timing

and location, the personnel who conduct such rounds, any Policies concerning preserving the unannounced nature of such rounds, and any Policies for disciplining RMSC Staff who disclose unannounced rounds before such rounds occur.

**REQUEST FOR PRODUCTION NO. 12**

All documents concerning the supervision and treatment of Incarcerated Women who have made allegations of Sexual Misconduct against RMSC Staff, including whether they were moved, either within RMSC or to another facility, within one month of making the allegations.

**REQUEST FOR PRODUCTION NO. 13**

All documents concerning information provided to Incarcerated Women about Sexual Misconduct at RMSC, including but not limited to (i) documents concerning the process for reporting Sexual Misconduct and (ii) documents provided to Incarcerated Women concerning resources for victims of Sexual Misconduct at RMSC.

**REQUEST FOR PRODUCTION NO. 14**

All documents (excluding individual medical records) concerning the distribution of birth control to Incarcerated Women, including but not limited to documents concerning requests for birth control and Policies concerning the distribution of birth control.

**REQUEST FOR PRODUCTION NO. 15**

All documents (excluding individual medical records) concerning the diagnosis of sexually transmitted disease among Incarcerated Women.

**REQUEST FOR PRODUCTION NO. 16**

Documents sufficient to show which individuals within the Inspector General's office, the Board of Correction, the DOI, the Investigative Division of DOC, or anywhere else in DOC, were or are responsible for investigating allegations of Sexual Misconduct at RMSC.

9

**REQUEST FOR PRODUCTION NO. 17**

All documents provided to the individuals identified in response to Request No. 18 concerning Policies for investigating Sexual Misconduct, and all documents concerning pre-service or in-service training provided to such individuals concerning the investigation of Sexual Misconduct.

**REQUEST FOR PRODUCTION NO. 18**

Blueprints, or other documents, sufficient to evidence the physical layout of RMSC as of (a) December 2012; (b) March-May 2013; and (c) the date of this Request.

**REQUEST FOR PRODUCTION NO. 19**

Log books, or other documents, sufficient to show the RMSC Staff (including supervisors) on duty, as well as any supervisory rounds conducted, in Buildings 9 and 11 from December 1, 2012 to May 15, 2013.

**REQUEST FOR PRODUCTION NO. 20**

Documents sufficient to show the location and type of all video cameras in RMSC as of:  (a) December 2012; (b) March-May 2013; and (c) the date of Your response to this Request, and Documents sufficient to show whether each video camera was operable as of the same dates.

**REQUEST FOR PRODUCTION NO. 21**

All Policies concerning the use of video cameras in RMSC, whether for surveillance or investigative purposes, including but not limited to (i) Policies concerning the placement and monitoring of video cameras; (ii) the detection, servicing, and replacement of non-functional video cameras; and (iii) Policies concerning the retention of video footage.

**REQUEST FOR PRODUCTION NO. 22**

All documents concerning punishment of Incarcerated Women in connection with allegations, suspicions, or findings of Sexual Misconduct, including disciplinary infractions or security classifications given to Incarcerated Women or disciplinary charges brought against Incarcerated Women, or the placement (or continuation of the placement) of Incarcerated Women in Special Housing Units as a result of any such allegations, suspicions, or findings.

**REQUEST FOR PRODUCTION NO. 23**

All documents of which You are aware concerning or related to the report by the U.S. Department of Justice entitled "Sexual Victimization in Prisons and Jails Reported by Incarcerated Women, 2011-12," or concerning any other governmental report about Sexual Misconduct at RMSC or other DOC facilities.

**REQUEST FOR PRODUCTION NO. 24**

All documents concerning Your efforts to prevent the occurrence of Sexual Misconduct at RMSC, to the extent not produced in response to another Request.

**REQUEST FOR PRODUCTION NO. 25**

All documents concerning Sexual Misconduct or allegations of Sexual Misconduct, or the investigation thereof, to the extent not produced in response to another Request.

Dated: New York, New York
June 26, 2015

.

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By:  *Mitchell A. Lowenthal*      /JEA
Mitchell A. Lowenthal
*mlowenthal@cgsh.com*

One Liberty Plaza
New York, New York 10006
Tel: (212) 225-2000
Fax: (212) 225-3999

Of Counsel:

Josh E. Anderson
*jeanderson@cgsh.com*
Danielle P. Mindlin
*dmindlin@cgsh.com*
CLEARY GOTTLIEB STEEN & HAMILTON LLP

William D. Gibney
*wdgibey@legal-aid.org*
Marlen S. Bodden
*mbodden@legal-aid.org*
Barbara P. Hamilton
*bphamilton@legal-aid.org*
THE LEGAL AID SOCIETY
199 Water Street, 6th Floor
New York, New York 10038
Tel: (212) 577-3300

Attorney*s for Plaintiffs*

TO:    Kimberly M. Joyce
*kjoyce@law.nyc.gov*
City of New York Law Department
100 Church Street
New York, New York 10007
Tel: (212) 356-2650

*Attorneys for the City of New York*

# EXHIBIT 2

# REDACTED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

JANE DOE 1 and JANE DOE 2, on behalf of themselves
and all similarly situated women,

Plaintiffs,

-against-

THE CITY OF NEW YORK and BENNY SANTIAGO,

Defendants.

------------------------------------------------------------------------ x

**DEFENDANT'S
RESPONSES AND
OBJECTIONS TO
PLAINTIFFS' FIRST
SET OF  DOCUMENT
REQUESTS**

15 Civ. 3849 (AKH)

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, defendant City of New York responds and objects to Plaintiffs' First Set of Requests for Production of Documents to Defendant City of New York relating to Merits Discovery as follows:

<u>**GENERAL STATEMENT**</u>

1.     By responding to any request, defendant does not concede the materiality of the subject to which it refers.  Defendant's responses are made expressly subject to, and without waiving or intending to waive, any questions, or objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence or for any other purpose, of any of the documents or information produced, or of the subject matter thereof, in any proceeding including the trial of this action or any subsequent proceeding.

2.     Defendant objects to this Document Request to the extent that it demands documents and/or information which are protected by the attorney-client or work-product privilege, or which constitute material prepared for litigation purposes.  Defendant also objects in the entirety to any request for documents which is not limited in time.

3.      Inadvertent production of any document or information which is privileged, was prepared in anticipation of litigation, or is otherwise immune from discovery, shall not constitute a waiver of any privilege or of another ground for objecting to discovery with respect to that document or any other document, or its subject matter, or the information contained therein, or of defendants' right to object to the use of any such document or the information contained therein during any proceeding in this litigation or otherwise.

## DOCUMENT REQUESTS

### DOCUMENT REQUEST NO. 1:

The personnel file, duty history (including document sufficient to show the date, time, location, duties and supervisors for all shifts works at RMSC from December 2012 to the present), documents sufficient to show all transfer, demotion and promotion, and all documents concerning investigations of, or Sanctions imposed against (i) RMSC Staff member Benny Santiago; and (ii) any RMSC Staff with the following phonetic surnames: Harris; Rodriguez; Murdoch; Phillips; Viola; Samms; Sabio; Muhammad; and Rogers.

### OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 1:

Defendant objects to this Request on the grounds that it is vague, ambiguous and overbroad, unduly burdensome, and to the extent the information is not kept in the regular course of business or in the format sought.  Defendant City objects to the extent request (1)(ii) lacks specificity, and City defendant will need more information, above phonetic spellings of surnames, to identify alleged RMSC staff.  Subject to the foregoing, defendant will produce responsive documents, if any, to the extent they are kept in defendant Santiago's personnel folders, or to the extent such documents may be kept with others that are produced pursuant to other document requests, e.g., files concerning sexual misconduct or allegations.

**DOCUMENT REQUEST NO. 2:**

All documents concerning hearings held before Adjudication Captains or other DOC personnel in connection with disciplinary tickets given to Incarcerated Women by Benny Santiago or disciplinary charges brought against Incarcerated Women based upon allegations made Benny Santiago.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 2:**

Defendant objects to this Request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and to the extent this information is not maintained in the regular course of business, or in the format sought.  Subject to the foregoing, defendant refers plaintiffs to the documents annexed hereto bearing Bates Stamp Nos. NYC 40 – 382, NYC 383 – 543, NYC 575 – 594, and NYC 595 - 661, [████ Inmate Folders, Infraction History, Grievance History, & ████ Inmate Folders], for responsive information that is properly discoverable in this lawsuit.

**DOCUMENT REQUEST NO. 3:**

All documents concerning DOC disciplinary proceedings at RMSC involving ██████████████, a former Incarcerated Woman with NYSID number ████████, including but not limited to Reports and Notices of Infractions, Captain's Investigation Reports, staff and inmate witness statements relevant to any initial disciplinary investigations or disciplinary hearings, any Disciplinary Hearing Report or Notices of Dispositions, and audio recordings or transcripts of proceedings.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 3:**

Defendant objects to this Request on the grounds that it is vague, ambiguous and overbroad.  Subject to the foregoing, defendant will search for and produce responsive documents, if any, at a mutually agreeable time and place.

**DOCUMENT REQUEST NO. 4:**

All Policies and collective bargaining contracts concerning requirements for, or restrictions or limitations on, any of the following: (i) the assignment of male RMSC Staff to supervise female housing areas; and (ii) work assignments for male RMSC Staff, including Policies governing locations to which male RMSC Staff may or may not be assigned.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 4:**

Defendant objects to this Request on the grounds that it is vague, ambiguous and overbroad.   Subject to the foregoing, defendant will search for and produce responsive documents, if any, at a mutually agreeable time and place.

**DOCUMENT REQUEST NO. 5:**

All Policies concerning the privacy of Incarcerated Women at RMSC, including but not limited to Policies governing privacy when changing, undressing, showering, bathing, using toilets, sleeping, and receiving medical care.

**OBJECTION AND RESPONSE TO REQUEST NO. 5:**

Defendant objects to this Request on the grounds that it is vague, ambiguous and overbroad.   Subject to the foregoing, defendant will search for and produce responsive documents, if any, at a mutually agreeable time and place.

**DOCUMENT REQUEST NO. 6:**

All Policies concerning the screening, hiring, promoting, and other decisions about continued employment of current and prospective RMSC Staff for prior allegations or findings of Sexual Misconduct or domestic violence, including but not limited to psychological evaluations, criminal background checks, and prior employment checks.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 6:**

Defendant objects to this Request on the grounds that it is vague, ambiguous and overbroad.   Subject to the foregoing, defendant will search for and produce responsive documents, if any, at a mutually agreeable time and place.

**DOCUMENT REQUEST NO. 7:**

All Policies concerning the process for determining and imposing Sanctions against RMSC Staff against whom findings of Sexual Misconduct are made, including, but not limited to, the Rikers' employee handbook.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 7:**

Defendant objects to this Request on the grounds that it is vague, ambiguous and overbroad.   Subject to the foregoing, defendant will search for and produce responsive documents, if any, at a mutually agreeable time and place.

**DOCUMENT REQUEST NO. 8:**

All documents of which You are aware concerning the resignation, termination, or transfer of an RMSC Staff member after an allegation of Sexual Misconduct was made against such person.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 8:**

Defendant objects to this Request on the grounds that it is vague, ambiguous and overbroad.

**DOCUMENT REQUEST NO. 9:**

All documents concerning the training, both pre-service and in-service, of RMSC Staff concerning Sexual Misconduct, including trainings concerning the prohibition on, and detection and reporting of, Sexual Misconduct, documents sufficient to evidence the frequency

and duration of such trainings, whether such trainings are mandatory, and the process for tracking and enforcing attendance at such trainings.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 9:**

Defendant objects to this Request on the grounds that it is vague, ambiguous and overbroad.  Subject to the foregoing, defendant will search for and produce the training curricula and written materials concerning the content of the training.

**DOCUMENT REQUEST NO. 10:**

All documents concerning methods and practices of supervision at RMSC intended to reduce or eliminate Sexual Misconduct, including, but not limited to, documents concerning supervision of RMSC Staff against whom there have been allegations or findings of Sexual Misconduct.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 10:**

Defendant objects to this Request on the grounds that it is vague, ambiguous and overbroad, and to the extent it seeks production of documents other than Policies.  Subject to the foregoing, defendant will search for and produce responsive documents, if any, at a mutually agreeable time and place.

**DOCUMENT REQUEST NO. 11:**

All documents, including Policies and post orders, concerning the use of unannounced supervisory rounds at RMSC, including but not limited to their frequency, timing and location, the personnel who conduct such rounds, any Policies concerning preserving the unannounced nature of such rounds, and any Policies for disciplining RMSC Staff who disclose unannounced rounds before such rounds occur.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 11:**

        Defendant objects to this Request on the grounds that it is vague, ambiguous and overbroad, and to the extent it seeks production of documents other than Policies.  Subject to the foregoing, defendant will search for and produce responsive Policies only, at a mutually agreeable time and place.

**DOCUMENT REQUEST NO. 12:**

        All documents concerning the supervision and treatment of Incarcerated Women who have made allegations of Sexual Misconduct against RMSC Staff, including whether they were moved, either within RMSC or to another facility, within one month of making the allegations.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 12:**

        Defendant objects to this Request on the grounds that it is vague, ambiguous and overbroad, and to the extent it seeks production of documents other than Policies.  Subject to the foregoing, defendant refers plaintiffs to the documents annexed hereto bearing Bates Stamp Nos. NYC 1 - 21,  [Directive 5010R-A, Preventing Inmate Sexual Abuse, eff. 12/31/08, & Memo Re: Undue Familiarity and Prevention of Sexual Abuse of Inmates by Staff and Other Inmates, eff. 2/7/08].

**DOCUMENT REQUEST NO. 13:**

        All documents concerning information provided to Incarcerated Women about Sexual Misconduct at RMSC, including but not limited to (i) documents concerning the process for reporting Sexual Misconduct and (ii) documents provided to Incarcerated Women concerning resources for victims of Sexual Misconduct at RMSC.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 13:**

Defendant objects to this Request on the grounds that it is vague, ambiguous and overbroad.   Subject to the foregoing, defendant will search for and produce responsive documents, if any, at a mutually agreeable time and place.

**DOCUMENT REQUEST NO. 14:**

All documents (excluding individual medical records) concerning the distribution of birth control to Incarcerated Women, including but not limited to documents concerning requests for birth control and Policies concerning the distribution of birth control.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 14:**

Defendant objects to this Request on the grounds that it is vague, ambiguous and overbroad, and to the extent it seeks production of documents other than Policies.  Subject to the foregoing, defendant refers plaintiffs to the documents annexed hereto bearing Bates Stamp Nos. NYC 22 - 39,  [HHC Directives – Family Planning, & Emergency Contraception] for responsive information.

**DOCUMENT REQUEST NO. 15:**

All documents (excluding individual medical records) concerning the diagnosis of sexually transmitted disease among Incarcerated Women.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 15:**

Defendant objects to this Request on the grounds that it is vague, ambiguous and overbroad, and to the extent it seeks production of (i) documents other than Policies, and/or (ii) documents or other information protected from disclosure by HIPAA.  Subject to the foregoing, defendant refers plaintiffs to the documents annexed hereto bearing Bates Stamp Nos. NYC 22 - 39,  [HHC Directives – Chlamydia and Gonorrhea Testing and Treatment; Rapid HIV Testing; Family Planning; Emergency Contraception] for responsive information.

**DOCUMENT REQUEST NO. 16:**

Documents sufficient to show which individuals within the Inspector General's office, the Board of Correction, the DOI, the Investigative Division of DOC, or anywhere else in DOC, were or are responsible for investigating allegations of Sexual Misconduct at RMSC.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 16:**

Defendant objects to this Request on the grounds that it is vague, ambiguous, overbroad, and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing, defendant refers plaintiff to the Department of Investigation website[1] for responsive information, and to Chapter 34 of the New York City Charter, and Mayoral Executive Orders 16, 78, and 105, for further responsive information.

**DOCUMENT REQUEST NO. 17:**

All documents provided to the individuals identified in response to Request No. 18 concerning Policies for investigating Sexual Misconduct, and all documents concerning pre-service or in-service training provided to such individuals concerning the investigation of Sexual Misconduct.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 17:**

Defendant objects to this Request on the grounds that it is vague, ambiguous, overbroad, and unclear as to the correct request number being referenced.

**DOCUMENT REQUEST NO. 18:**

Blueprints, or other documents, sufficient to evidence the physical layout of RMSC as of (a) December 2012; (b) March-May 2013; and (c) the date of this Request.

---

[1] http://www.nyc.gov/html/doi/html/contact/inspectors.shtml#doc

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 18:**

Defendant objects to this Request on the grounds that it is vague, ambiguous, overbroad, and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to the extent this request implicates the safety and security concerns of the Department of Correction.

**DOCUMENT REQUEST NO. 19:**

Log books, or other documents, sufficient to show the RMSC Staff (including supervisors) on duty, as well as any supervisory rounds conducted, in Buildings 9 and 11 from December 1, 2012 to May 15, 2013.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 19:**

Defendants object to this Request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence.

**DOCUMENT REQUEST NO. 20:**

Documents sufficient to show the location and type of all video cameras in RMSC as of: (a) December 2012; (b) March-May 2013; and (c) the date of Your response to this Request, and Documents sufficient to show whether each video camera was operable as of the same dates.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 20:**

Defendant objects to this Request on the grounds that it is vague, ambiguous, overbroad, is not reasonably calculated to lead to the discovery of admissible evidence, and to the extent the information sought is not maintained in the regular course of business, or in the format sought. Defendant further objects to the extent this request implicates the safety and security concerns of the Department of Correction.

**DOCUMENT REQUEST NO. 21:**

All Policies concerning the use of video cameras in RMSC, whether for surveillance or investigative purposes, including but not limited to (i) Policies concerning the placement and monitoring of video cameras; (ii) the detection, servicing, and replacement of non-functional video cameras; and (iii) Policies concerning the retention of video footage.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 21:**

Defendant objects to this Request on the grounds that it is vague, ambiguous, overbroad, and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing, defendant will search for and produce responsive documents, if any, at a mutually agreeable time and place.

**DOCUMENT REQUEST NO. 22:**

All documents concerning punishment of Incarcerated Women in connection with allegations, suspicions, or findings of Sexual Misconduct, including disciplinary infractions or security classifications given to Incarcerated Women or disciplinary charges brought against Incarcerated Women, or the placement (or continuation of the placement) of Incarcerated Women in Special Housing Units as a result of any such allegations, suspicions, or findings.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 22:**

Defendant objects to this Request on the grounds that it is vague, ambiguous, overbroad, burdensome, assumes facts not established, and is not reasonably calculated to lead to the discovery of admissible evidence, and further objects to the extent it seeks production of (i) documents concerning unidentified Incarcerated Women, and/or (ii) documents other than Policies.  Subject to the foregoing, defendant refers plaintiffs to the documents annexed hereto bearing Bates Stamp Nos. NYC 40 – 382 and NYC 383 - 543, [■■■ & ■■■ Inmate Folders], for responsive information.

- 11 -

**DOCUMENT REQUEST NO. 23:**

All documents of which You are aware concerning or related to the report by the U.S. Department of Justice entitled "Sexual Victimization in Prisons and Jails Reported by Incarcerated Women, 2011-12," or concerning any other governmental report about Sexual Misconduct at RMSC or other DOC facilities.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 23:**

Defendant objects to this Request on the grounds that it is vague, ambiguous and overbroad, and to the extent the information sought is not in defendant's custody or control.

**DOCUMENT REQUEST NO. 24:**

All documents concerning Your efforts to prevent the occurrence of Sexual Misconduct at RMSC, to the extent not produced in response to another Request.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 24:**

Defendant objects to this Request on the grounds that it is vague, ambiguous and overbroad.  Defendant further objects to the extent this request seeks information protected by the Law Enforcement and Deliberative Process privileges, and seeks documents or information that is or may be pre-decisional.

**DOCUMENT REQUEST NO. 25:**

All documents concerning Sexual Misconduct or allegations of Sexual Misconduct, or the investigation thereof, to the extent not produced in response to another Request.

**OBJECTION AND RESPONSE TO DOCUMENT REQUEST NO. 25:**

Defendant objects to this Request on the grounds that it is vague, ambiguous and overbroad.

Dated:        New York, New York
              September 15, 2015


                              ZACHARY W. CARTER
                              Corporation Counsel of the
                               City of New York
                              Attorney for Defendant City of New York
                              100 Church Street, Room 3-227
                              New York, New York 10007
                              (212) 356-2650


                      By:    /s/
                              _____
                              KIMBERLY M. JOYCE
                              Assistant Corporation Counsel


TO:
Mitchell A. Lowenthal
*mlowenthal@cgsh.com*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Tel: (212) 225-2000
Fax: (212) 225-3999

Josh E. Anderson
*jeanderson@cgsh.com*
Danielle P. Mindlin
*dmindlin@cgsh.com*

THE LEGAL AID SOCIETY
William D. Gibney
*wdgibney@legal-aid.org*
Marlen S. Bodden
*mbodden@legal-aid.org*
Barbara P. Hamilton
*bphamilton@legal-aid.org*
199 Water Street, 6th Floor
New York, New York 10038
Tel: (212) 577-3300


*Attorneys for Plaintiffs*

Julie A. Ortiz
*jortiz@koehler-isaacs.com*
Koehler & Isaacs LLP
61 Broadway, 25th Floor
New York, New York 10006
Tel: (917) 551-1317

*Attorneys for Benny Santiago*

# EXHIBIT 3

*JANE DOE 1 and JANE DOE 2 VS.*
*THE CITY OF NEW YORK and BENNY SANTIAGO*

*SEAN CUSSEN*
*December 23, 2015*



**Ellen Grauer**
**COURT REPORTING** Co. LLC

126 East 56th Street, Fifth Floor New York, New York 10022
PHONE: (212) 750-6434   FAX: (212) 750-1097
www.ELLENGRAUER.com

*Original File 111511.TXT*
*Min-U-Script® with Word Index*

```
1                   CUSSEN - CONFIDENTIAL
2    really sure.
3        Q.    How often does the PREA working
4    group have meetings?
5        A.    Well, we have met in July.  As we're
6    moving forward, we met in November, we met in
7    December.  So it's on an ongoing basis.  It's
8    run with the Moss Group.
9              As we move towards completing our
10   standards and developing the necessary
11   infrastructure in our facilities to meet to
12   certain standards, to have people in place to
13   perform specific functions that are required to
14   be PREA compliant, so it takes probably two to
15   three years to become PREA compliant, where you
16   get ready for an audit.
17             So you can't be deemed PREA
18   compliant until you have an audit by a
19   certified PREA auditor and they determine that
20   you are compliant.
21       Q.    When was the Moss Group retained to
22   assist the City, if you know?
23       A.    I believe sometime in 2012,
24   initially.
25       Q.    So that was more than two or three
```

```
 1                  CUSSEN - CONFIDENTIAL
 2    years ago, correct?
 3         A.    Correct.
 4         Q.    Have you been involved with the Moss
 5    Group at any time between 2012 and when you
 6    joined the PREA working group earlier this
 7    year?
 8         A.    Yes.
 9         Q.    Okay.  What was your involvement
10    with them prior to you joining the PREA working
11    group?
12         A.    The Moss Group requested to see our
13    investigative processes, to review our
14    investigative processes, to make determinations
15    on how our investigations are conducted, are we
16    in compliance with our own rules and regs as we
17    know it, are we in compliance with PREA
18    standards and so forth.
19         Q.    Okay.  And have those discussions
20    been going on since 2012?
21              MS. JOYCE:  Objection.
22              You can answer.
23         A.    On and off.  I mean, I think there
24    was -- there was a lapse in it.  There's a
25    couple of grants that I'm not really privy to,
```

CUSSEN - CONFIDENTIAL

1
2  because it's above my pay grade, but there was
3  initial step where PREA came in.  Then there
4  was a large gap where -- where I think we were
5  waiting for -- I think we were waiting for
6  another grant to be approved.  So as different
7  things go on, very expensive.  So the funding
8  comes from the federal government.
9          So it's kind of, you know, on a
10  step-by-step basis.  So there was a lot of
11  contact in the beginning.  There was some
12  training provided by the Moss Group.  Then
13  there was a lapse, and now we are back in and
14  now we are moving forward.
15      Q.    Do you recall how long the lapse was
16  that you referred to?
17      A.    On my involvement, may have been --
18  if it was the end of 2012, let's say, sometime
19  in 2013 was a lapse.  And in 2014, went in.
20  That doesn't mean the department has not been
21  in contact with the Moss Group.  It just means
22  I didn't have contact with the Moss Group.
23      Q.    Is it your current understanding
24  that the Moss Group is assisting the City with
25  funding provided by a grant?

1              CUSSEN - CONFIDENTIAL

2        A.      I'm not really sure of that.  I'm

3    aware that there have been grants issued to the

4    Moss Group.  I'm not really -- not my concern.

5    So I don't really understand that, so.

6        Q.      Do you know why the PREA working

7    group was created?

8        A.      Speculation on my part.  We have a

9    PREA coordinator.  You need somebody to be the

10   overall PREA coordinator.  She's one person.

11   It's an agency-wide move to move from how you

12   do business in one way to how you do business

13   to be compliant.  So the entire department

14   needs to understand that we are changing in how

15   we do business.

16           So you need to bring in multiple

17   levels of people from different facilities to

18   get -- you need people to buy into the program.

19           It's a lot of work.  It's a lot of

20   documentation.  It's a different way of

21   thinking about how you do business.  So the

22   more people you bring in, the more -- the more

23   people understand, the more people who buy into

24   the program will affect other people and get

25   them to buy into the program.

# EXHIBIT 4

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

| | | |
|---|---|---|
| WASHINGTON, DC | ONE LIBERTY PLAZA | ROME |
| PARIS | NEW YORK, NY 10006-1470 | MILAN |
| BRUSSELS | (212) 225-2000 | HONG KONG |
| LONDON | FACSIMILE (212) 225-3999 | BEIJING |
| FRANKFURT | WWW.CLEARYGOTTLIEB.COM | BUENOS AIRES |
| COLOGNE | | SÃO PAULO |
| MOSCOW | Writer's Direct Dial:  +1 212-225-2013 | ABU DHABI |
| | E-Mail: dmindlin@cgsh.com | SEOUL |

January 16, 2016

<u>VIA EMAIL</u>

Arthur Larkin, Esq.
Kimberly Joyce, Esq.
New York City Law Department
100 Church Street
New York, NY 10007

   Re:  *Jane Doe 1., et al. v. The City of New York, et al.*, 15 Civ. 3849 (AKH)

Counsel:

   We write to memorialize our discussion during Thursday's meet-and-confer telephone conference and to confirm with you the agreements we reached with respect to discovery and other matters involving the litigation.

   *First*, we informed you that we plan to petition the Second Circuit pursuant to Rule 23(f) to appeal Judge Hellerstein's order denying Plaintiff's motion for class certification.  We asked whether the City would oppose our petition, and you stated that you would discuss the matter internally but may not have an answer before we file.

   *Second*, we inquired about the issue raised at the Jennifer Sculco deposition and in our December 28, 2015 letter, concerning all records from the DOI Case Management System that relate to allegations of staff-on-inmate sexual misconduct at RMSC for the years 2011 through the present.  Your position was that this request is unduly burdensome and would be duplicative of records already produced.  We asked you to confirm whether you had already produced all DOI and DOC files for every closed matter on the PREA spreadsheet, and you stated that you believed you had done so.  We asked whether you plan to supplement those productions going forward as investigations close, and you stated that you would do so at reasonable intervals.  We proposed monthly intervals, noting that the discovery period in this case is compressed and this information will be relevant for upcoming depositions.

Arthur Larkin, Esq.
Kimberly Joyce, Esq., p. 2

You then raised the issue of what types of staff-on-inmate allegations or incidents are relevant in this case.  You stated that you did not believe that allegations of inappropriate touching or other sexual misconduct that fell short of rape would be relevant for demonstrating a pattern or practice because they are very different from our clients' allegations. We disagreed, noting that our clients allege sexual abuse, which would encompass inappropriate touching and other similar allegations, and that these types of incidents are relevant to the culture of the institution and opportunities for staff sexual misconduct.  You further explained that you have already produced documents for all closed investigations of staff-on-inmate allegations, whether they involved rape or other less serious misconduct such as inappropriate touching, so your concern is limited to the scope of supplemental productions and the focus of upcoming depositions.  You said you would check with your client and let us know whether you agree to continue to produce documents related to all types of staff-on-inmate allegations of sexual misconduct.

Following the meet and confer, we cross-checked the investigative files we have received to date with the PREA spreadsheet.  We have identified many allegations of staff-on-inmate sexual misconduct that are listed as "closed," "unfounded," or "unsubstantiated" for which we have not received any investigative files.  This is troubling not only because we are missing records but also because it calls into question your assertion that it is unnecessary to search DOI's Case Management System for responsive documents.  Please promptly produce documents related to the following investigations, listed by the "CASE ID#" (or where unavailable, the "DOI#" or the "COD#") on the PREA spreadsheet:

1. ID141/15
2. ID148/15
3. ID202/15
4. N0095/15
5. N0097/15
6. N0129/15
7. N0131/15
8. N0133/15
9. N0136/15
10. N0140/15
11. N0141/15
12. N0142/15
13. N0143/15
14. N0169/15
15. N0174/15
16. N0185/15
17. N0197/15
18. N0273/15
19. U2018/15
20. 1446/15
21. N0047/14

Arthur Larkin, Esq.
Kimberly Joyce, Esq., p. 3

>    22. N0031/12
>    23. N0221/11
>    24. 201101153
>    25. 201111397

*Third*, we reiterated our request for an explanation for the redacted rows in the PREA spreadsheet.  You explained that of the 43 redacted rows, 30 are not related to allegations of staff-on-inmate sexual misconduct and 13 relate to incidents that did not take place at RMSC. We noted that we believe that incidents that take place offsite, such as on a transit bus, but involve RMSC staff and inmates in RMSC's custody are relevant and responsive.  We did not reach agreement on this point.

*Fourth*, we again requested that you produce the tangible evidence that belongs to Jane Doe 2, including her jeans, notebook, Bible, and InTouch magazine.  You stated that these items are at the Office of the Chief Medical Examiner, and you refused to return them to Jane Doe 2 unless she stipulates that she would not use the items as evidence in this lawsuit.  With respect to the jeans, you stated that it is possible that if we were to obtain an expert, you might agree to release the jeans to the expert for DNA testing.  However, you stated that you could not agree to do so until we told you the name of our expert and what types of tests the expert would run.  You added that additional conditions to a temporary release of the jeans might arise at a later date. With respect to the other tangible evidence that is not potential DNA evidence, you unconditionally refused to produce it.  We informed you that we cannot accept your refusal to produce the notebook, Bible, and magazine and that we would obtain an expert to test the jeans and notify you of that person's identity, but that you must then agree to release the jeans for testing.

*Fifth*, you proposed serving targeted interrogatories regarding the additional, unnamed corrections officers and female victims described in the complaint and asked that we respond to those interrogatories on an accelerated timeline, in two weeks' time.  We agreed to do so, reserving our rights to additional time if the requests as drafted are more expansive than as described.  We further agreed that our response would be designated as confidential material under the protective order.  You stated that you would send us the interrogatories on Tuesday, January 19.

*Finally*, we set up an additional call to discuss your responses to our merits request for next Wednesday, January 20, at 3 pm.

Please let us know if any of the above is inconsistent with your understanding.  We look forward to speaking with you again next week.

Sincerely,


_____/s/_____
Danielle P. Mindlin

# EXHIBIT 5
# REDACTED

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

WASHINGTON, DC

PARIS

BRUSSELS

LONDON

FRANKFURT

COLOGNE

MOSCOW

ONE LIBERTY PLAZA

NEW YORK, NY 10006-1470

(212) 225-2000

FACSIMILE (212) 225-3999

WWW.CLEARYGOTTLIEB.COM

Writer's Direct Dial: +1 212-225-2044
E-Mail: jeanderson@cgsh.com

ROME

MILAN

HONG KONG

BEIJING

BUENOS AIRES

SÃO PAULO

ABU DHABI

SEOUL

January 22, 2016

<u>VIA EMAIL</u>

Arthur Larkin, Esq.
Kimberly Joyce, Esq.
New York City Law Department
100 Church Street
New York, NY 10007

Re:  <u>*Jane Doe 1., et al. v. The City of New York, et al.*</u>, 15 Civ. 3849 (AKH)

Counsel:

We write to memorialize our discussion during this Wednesday's meet-and-confer telephone conference and to confirm with you the agreements we reached regarding various outstanding discovery requests.

First, with respect to the supplemental interrogatories you served on plaintiffs on Tuesday, January 19, we agreed to provide you with responses and objections within fourteen days of service.

Next, we inquired about the status of the 25 missing investigative files that we identified in our letter dated January 16.  You stated that once you had confirmed with your client that the files are outstanding, you would produce them within a reasonable timeframe.  We asked that you reconsider your position that searches of DOI's Case Management System are unnecessary in light of the gaps in production we have identified.

We then discussed plaintiffs' document requests relating to merits discovery.  You informed us that you have to follow up with your client regarding request numbers 4, 5, 6, 8, 9, 10, 11, and 13.  You said that you could not provide us with a timeline for those productions without consulting further with your client, but you agreed to promptly update us once you do so.

CLEARY GOTTLIEB STEEN & HAMILTON LLP OR AN AFFILIATED ENTITY HAS AN OFFICE IN EACH OF THE CITIES LISTED ABOVE.

Arthur Larkin, Esq.
Kimberly Joyce, Esq., p. 2

With respect to plaintiffs' request number 1, which seeks in part all documents concerning investigations of or sanctions imposed against Benny Santiago, we raised the need to conduct electronic discovery to locate responsive documents that were not included in the investigative files already produced.  You confirmed that you have not yet undertaken electronic discovery.  You stated that you were not prepared for a detailed discussion regarding electronic discovery, and we agreed to discuss that topic, including appropriate search terms and custodians, at a later date.

Request number 1 also seeks documents concerning investigations of or sanctions against several other RMSC staff members who are referenced in the Complaint.  As discussed, through our investigation, including of documents you have produced, we have discovered additional information regarding these staff members that should suffice to identify the individuals.  This information is provided below:

- Correction Officer Harris, employed at least in February 2013, assigned to supervise the Suicide Prevention Aids in Building 9;
- Correction Officer Rodriguez, employed at least in February 2013, assigned to supervise the Suicide Prevention Aids in Building 9;
- Correction Officer Tyron Murdaugh, employed at least in April 2011;
- Correction Officer Phillips, employed at least in 2009-2010;
- Correction Officer Viola, employed at least in 2009-2010;
- Captain Caswell Samms, #483;
- Correction Officer Mercilovidas Sabio, #14480;
- Correction Officer Ibrahim Mohammed, #7497;
- Correction Officer Rogers, employed at least in 2012.

Regarding request number 2, you stated that you had discussed the request with your client and were told that compliance would be unduly burdensome because there is no electronic method of searching which correction officer gave which disciplinary tickets.  In light of your explanation, we hope to discuss in the future alternative methods of identifying documents responsive to this request.  Separately, we noted that in your responses and objections to this request, you had referred us to the inmate folders for Jane Doe 1 and 2, and we asked you to provide a glossary or other document sufficient for us to decipher the contents of the inmate movement history logs, including the entries in the columns labeled "From," "To," "Reason Code," "Housing Facility," and "Housing Area."

Regarding request number 3, you agreed to inquire with your client whether there are any audio recordings of disciplinary hearings involving ████████████ and the burden of collecting any such recordings.

Regarding request number 7, we asked whether you had completed your productions. You stated that you believed you had but would confirm.

Arthur Larkin, Esq.
Kimberly Joyce, Esq., p. 3


Regarding request number 16, we asked that you produce a DOC ID organizational chart, and you agreed to search for one.

We did not reach an agreement with respect to request number 18, which asks for blueprints or other documents sufficient to evidence the physical layout of RMSC. To address your objection that producing such a document would compromise public safety, we suggested that you produce a not-to-scale diagram, for example used to depict fire evacuation routes, sufficient to evidence the physical layout of RMSC. You said you were not aware of any such document and refused to conduct any additional searches to ascertain whether such a document exists. We also suggested proposing an amended protective order to allow you to designate the blueprints as confidential materials, and you rejected that suggestion, stating that you would not do anything further in response to this request. We are prepared to raise this dispute with the Court.

Regarding request number 19, we noted that the documents produced thus far depict supervisors' schedules but not their actual rounds. You informed us that when supervisors conduct their rounds, they sign into the log book specific to the location they are supervising, so it would be necessary to produce each log book to comply with this request. We reserved our rights to follow up with additional, targeted requests for information regarding supervisory rounds, including log books.

Regarding request number 20, in response to which you had produced a camera list for RMSC as of 9/15/15, you stated that there are no camera lists for historical periods and that it is not possible to know where the specific cameras are pointing without going to the jail and visually examining the cameras. You suggested that it might be possible for the City to determine when certain cameras were installed if we followed up with a targeted request regarding specific areas within RMSC, and we reserved our right to do so in the future.

Finally, regarding request number 24, which seeks all documents concerning the City's efforts to prevent the occurrence of sexual misconduct at RMSC, you stated that many documents related to DOC's efforts to become PREA compliant would be privileged. However, you further stated that, at this point, you have not been provided by your client with any documents that you have withheld on the basis of privilege. We noted that if you were to withhold any documents, you would need to provide us with a privilege log. We expressed our view that based on our understanding from depositions, certain Moss Group materials were responsive to our request and were potentially not privileged. You asked us to confirm in writing what Moss Group materials we view as responsive. Our position is that any final reports by the Moss Group regarding the City's historical policies and practices concerning Sexual Misconduct that are in the City's possession, custody, or control are responsive to our requests and should be produced.

Arthur Larkin, Esq.
Kimberly Joyce, Esq., p. 4


Please let us know if any of the above is inconsistent with your understanding.


Sincerely,

_____/s/_____
Josh Anderson

# EXHIBIT 6
# REDACTED

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

WASHINGTON, DC

PARIS

BRUSSELS

LONDON

FRANKFURT

COLOGNE

MOSCOW

ONE LIBERTY PLAZA

NEW YORK, NY 10006-1470

(212) 225-2000

FACSIMILE (212) 225-3999

WWW.CLEARYGOTTLIEB.COM

Writer's Direct Dial: +1 (212) 225-2044
E-Mail: jeanderson@cgsh.com

ROME

MILAN

HONG KONG

BEIJING

BUENOS AIRES

SÃO PAULO

ABU DHABI

SEOUL

February 12, 2016

<u>VIA EMAIL</u>

Arthur Larkin, Esq.
Kimberly Joyce, Esq.
New York City Law Department
100 Church Street
New York, NY 10007

Re:  *Jane Doe 1, et al. v. The City of New York, et al., 15 Civ. 3849 (AKH)*

Counsel:

   I write on behalf of Plaintiffs in the above-captioned matter further to our meet and confers on January 14, 2016 and January 20, 2016, as well as our letters to you on December 28, 2015, January 16, 2016, and January 22, 2016.  In these meet and confers and letters, Plaintiffs have raised a number of discovery issues about which the City has, to date, failed to offer an adequate response.  In particular, the City has not met and conferred concerning electronic discovery, despite Plaintiffs' repeated requests to do so.  This letter memorializes and reiterates Plaintiffs' requests and positions in relation to certain open discovery issues, including electronic discovery.[1]  If the City fails to respond by one week from today, Friday, February 19, Plaintiffs will seek appropriate relief from the Court.

*Electronic Discovery*

   During our January 20, 2016 meet and confer, you confirmed that the City has not undertaken electronic discovery to identify documents responsive to Plaintiffs' documents requests, which were sent to the City on June 26, 2015.  You stated that you were not prepared to discuss electronic discovery at that time, and we agreed to discuss the topic, including appropriate search terms and custodians, at a later date.  We exchanged emails on January 25 and

---

[1]  For the avoidance of doubt, Plaintiffs do not waive their objection concerning any discovery issues that are not addressed in this letter.

Arthur Larkin, Esq.
Kimberly Joyce, Esq., p. 2


26, 2016 about scheduling a further meet and confer concerning electronic discovery.  Plaintiffs provided several options during the week of February 1, 2016 that they could be available to meet and confer.  Although Mr. Larkin said he would confirm the City's availability as soon as he could, to date, we have not heard from you.  Moreover, the City has ignored Plaintiffs' follow-up emails of January 28, February 1, and February 2, 2016.

In light of your continued failure to meet and confer on this issue, this letter sets out Plaintiffs' position on electronic discovery.  We request that you search all electronically stored information ("ESI") associated with the custodians identified in Appendix A to this letter for the search terms listed in Appendix B, and produce the results of these searches without further undue delay.  To the extent any document is withheld on the basis of a claim of privilege, a privilege log should be provided.

*Previously Identified Investigation Files*

In our letter, dated January 16, 2016, memorializing the January 14, 2016 meet and confer, we noted that following the meet and confer we identified twenty-five entries on the PREA spreadsheet for which we had not produced investigation files.  At our January 20, 2016 meet and confer, we inquired into the status of these twenty-five investigative files, and you stated that you would follow up with your client and produce any missing files in a reasonable timeframe.

It has now been more than three weeks since our January 20, 2016 meet and confer and we have not received any update from you.  We demand that you promptly provide us with a specific deadline by which you will produce any of the missing files that we identified to you nearly one month ago.

*Supplementing Production of Investigation Files*

At the January 14, 2016 meet and confer, you agreed to make regular supplementary productions of investigative files from newly-closed investigations.

We disagreed with your assertion that allegations of inappropriate touching or other sexual misconduct that fell short of rape would not be relevant to demonstrating a pattern or practice.  You indicated that you would follow up with your client and let us know whether you agree to continue to produce investigative records related to all types of staff-on-inmate sexual abuse allegations.  We have still not received a response from you.  We request that you provide a response and make any necessary supplementary productions.

Moreover, we ask you to confirm whether you have produced investigation files from all newly-closed investigations that do raise allegation of staff-on-inmate rape, and if not, the specific date by which you will do so.

Arthur Larkin, Esq.
Kimberly Joyce, Esq., p. 3

*Moss Group Materials*

At the January 20, 2016 meet and confer, we noted the City's failure to produce any Moss Group materials or provide a privilege log listing such materials.  You stated that many of these documents would likely be privileged, though your client has not provided you with any documents that you have withheld on the basis of privilege.  You requested that Plaintiffs put their position in writing.  We did so in our January 22, 2016 letter, in which we stated our position that any final reports by the Moss Group regarding the City's historical policies and practices concerning Sexual Misconduct that are in the City's possession, custody, or control are responsive to our requests and should be produced.  Please confirm that you will produce any such materials, or provide a privilege log concerning any assertion of privilege, and the specific date by which these steps will be completed.

*Investigations or Sanctions against Correction Officers*

Plaintiffs' document request number 1 relating to merits discovery seeks information related to certain correction officers, which we identified by phonetic last name. You objected to conducting searches for responsive information concerning these officers without additional information.  Following discussions at our January 20, 2016 meet and confer, we provided additional information in our January 22, 2016 letter.  Please confirm that you will undertake a search for responsive information, and the date by which you will produce any responsive records.

*Other Discovery Requests*

During our January 20, 2016 meet and confer, you agreed to investigate the availability of audio recordings of ████████████'s disciplinary hearings.  Please confirm whether such records have been found to exist, and if so, the date by which you plan to produce them.

In addition, you agreed to search for a DOC ID organizational chart in response to Plaintiffs' request number 16 relating to merits discovery.  Please confirm whether you have completed this search and whether any responsive documents were identified.

Arthur Larkin, Esq.
Kimberly Joyce, Esq., p. 4


Finally, during the January 20, 2016 meet and confer, you informed us that you would follow up with your client regarding Plaintiffs' request numbers 4, 5, 6, 8, 9, 10, 11, and 13 relating to merits discovery.  You agreed to promptly provide us with a timeline for these productions once you consulted with your client.  You also stated that you would confirm whether you have completed your productions in response to request number 7 relating to merits discovery.  It has now been over three weeks since you agreed to consult with your client concerning these requests, which were served on the City nearly 7 months ago.  Plaintiffs demand that you provide a timeline for completing production of these materials.

Sincerely,


_____/s/_____
Josh E. Anderson

cc:  counsel of record (via email)

Arthur Larkin, Esq.
Kimberly Joyce, Esq., p. 5

## APPENDIX A

**1. Proposed Custodians Known to be Involved With the Jane Doe 2 Investigation** (May 2013 to Present)

Department of Correction ID

- Investigator Alexandra Wityak

- Captain Lashawna Gordon

- Assistant Commissioner Gregory Kuczinski

- Deputy Commissioner Michael Blake

- AC Blake, as identified in the document produced by you as DEF_0002500

- Correction Officer Investigator Acosta

- Director Ruben Benitez

- Deputy Director of Investigations Sean Cussen

- Deputy Director of Investigations Steven Jones

- Florence Finkle, Deputy Commissioner for Integrity and Policy, Office of Excellence, DOC ID

Department of Investigation

- Inspector General Robert A. Gigante

- Investigator Torres, as identified in the document produced by you as DEF_0001825

- Investigator Ortiz

- Captain Vincent Valerio

- Chin Ho Cheng, First Deputy Inspector

- Investigator Kate Zdrojeski, Squad 1

- Maria Mostajo

- Rhonda Young, an On-Loan DOC Officer

Arthur Larkin, Esq.
Kimberly Joyce, Esq., p. 6

- Assistant Inspector General James Christo

<u>Other Employees</u>

- Captain Calise, as identified in the document produced by you as DEF_0002500

- All individuals who acted as Warden of Rose M. Singer Center

**2. Defendant Santiago** (June 2008 to Present)

- Defendant Bienvenido Santiago

**3. Custodians Involved in Disciplinary Proceedings Involving** ███████████ (July 2012 to Present).

- Each person who was involved in DOC disciplinary proceedings involving ███████ ███, NYSID number ██████████.

Arthur Larkin, Esq.
Kimberly Joyce, Esq., p. 7

<u>APPENDIX B</u>

**1. Search Terms for Custodians Known to be Involved With the Jane Doe 2 Investigation, Referenced in Appendix A** :

- Santiago

- 15713

- FB13-02020

- ███████████

- ██████ OR ██████

- ██████ OR ██████

- ████

- ██████

- ████

- ███████

- ████

- ██████ OR ████████ OR ██████ OR ██████

- ██████

- ██████████ OR ██████████

- ██████████ OR ██████ OR ██████

- ██████████ OR ██████ OR ██████

- 15-3849 OR 15-cv-3849

**2. Search Terms for Defendant Santiago**

- (██████ /2 ██████) OR (██████ /2 ██████) OR (inmate /2 ██████) OR ██████

- (██████ /2 ██████) OR (inmate /2 ██████) OR ██████

Arthur Larkin, Esq.
Kimberly Joyce, Esq., p. 8

- ███ /2 ███████ OR (inmate /2 ██████) OR ██████

**3. Search Terms for Custodians Involved in Disciplinary Proceedings Involving** 

- (███████ /2 █████) OR (█████ /2 █████) OR (inmate /2 █████)

- ██████

- ██████ /2 ██████ OR (inmate /2 ██████)

- ██████ /2 ███████ OR (inmate /2 ██████)

- Santiago

- 15713