# CLEARY GOTTLIEB STEEN & HAMILTON LLP

WASHINGTON, D.C.
PARIS
BRUSSELS
LONDON
FRANKFURT
COLOGNE
MOSCOW

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

D: +1 (212) 225-2760
mlowenthal@cgsh.com

ROME
MILAN
HONG KONG
BEIJING
BUENOS AIRES
SÃO PAULO
ABU DHABI
SEOUL

September 16, 2016

**VIA ECF**

The Honorable Alvin K. Hellerstein
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re: *Jane Doe 1., et al. v. The City of New York, et al.*, 15 Civ. 3849 (AKH)

Dear Judge Hellerstein:

Plaintiffs Jane Doe 1 and Jane Doe 2 ("Plaintiffs") and Defendant the City of New York (the "City") respectfully submit this joint letter concerning the City's assertion, on a recently served privilege log, that nine emails (identified in the City's log as PRIV-042, PRIV-076 – 082, and PRIV-084) were protected by the attorney client privilege.

## PLAINTIFFS' POSITION

As discussed at the September 6 conference, the City belatedly served two new privilege logs, with a total of 46 pages of entries, on August 31 – the day fact discovery ended and more than two months after the related document productions. Those logs should therefore have been served months earlier. The City never gave notice over those months that it would be serving those logs; nor did it seek any relief from the Court to excuse its failure to produce timely logs.

As to the substance of the City's privilege objections, at the September 6 conference the Court directed the parties to discuss the City's privilege objections. The parties did so on September 9, and resolved all issues except those with respect to the nine emails.

The City solely justified the withholding of those emails based upon the attorney client privilege. The nine emails are all from early August 2013 and appear to be from the same email chain. The subject line for all nine is Jane Doe 2's name. The sender and recipient(s) listed in the log are all employees of the Department of Investigation ("DOI") or the Department of Correction's Investigation Division ("DOC ID") and were all involved in those agencies'

Honorable Alvin K. Hellerstein, p. 2

investigations of Jane Doe 2's allegations of rape and sexual abuse by Defendant Santiago. As reflected on its privilege log, the City only asserted attorney client privilege over these emails, and the City's logged descriptions for these emails state that they are emails between DOC or DOI counsel and employees. But Plaintiffs are aware of no evidence that any of these individuals acted as counsel to the City during the relevant time period – and the City has not stated otherwise. As such, there is no basis upon which these email can fall within the attorney client privilege. Indeed, during the meet and confer on September 9, the City could not explain the basis for its assertion of privilege over these emails and informed Plaintiffs that it would follow up the next week with more information.

In an email sent Wednesday afternoon – more than five days after the meet and confer and only two days before the Court's September 16 deadline to file a joint letter regarding any disputed documents – the City informed Plaintiffs that the emails all "relate to a thread starting with an email from Nadene Pinnock – DOC counsel." Exhibit A, email of 9/14 at 4:38 pm, point 3. That the first email (i.e., the oldest one) in an email chain included an attorney does not make the many subsequent communications that were solely between non-attorneys privileged.

In that same Wednesday afternoon email, and for the very first time, the City stated that it would be asserting attorney work product privilege over these emails as well. *Id.* Even in the belatedly produced logs, no such assertion had been made. As such, any contention that any of the emails fell under the work product doctrine had been waived.

Moreover, Plaintiffs promptly followed up, and asked the City "what is the basis for asserting attorney work product with respect to those emails that do not copy an attorney?" *Id.*, email of 9/15 at 11:00 am. The City refused to answer, advising plaintiffs to take the issue to the Court. In specific, the City stated "We've given you all of the information that is required under the Federal Rules and Local Rules. If you disagree with our assertions of privilege at this point, you can take whatever additional steps your side deems appropriate." *Id.*, email of 9/15 at 11:02 am. Plaintiffs made one more effort to avoid burdening the Court, *Id.*, email of 9/15 at 11:11 am, but the City failed to respond.

It is black letter law that the party seeking to withhold a relevant document as privileged has the burden of demonstrating the applicability of that privilege. The City has never contended that the requested documents are not relevant. It was therefore required to provide information sufficient to demonstrate that these nine emails are covered by the attorney client privilege. It has not. Simply stating that the earliest of the emails in a chain was from a lawyer does not itself mean that legal advice was being included even in that email. Moreover, it says nothing about what was communicated in the later emails, none of which were to or from an attorney. In that regard, the City's logged descriptions of these emails – which state that they *all* are emails between counsel and employees – are factually false.

Finally, the City has provided no explanation for its brand new assertion of attorney work product. The emails are all from 2013, years before Jane Doe 2 commenced this lawsuit. And, with the City's refusal even to offer an explanation of how such email could be protected by the work product doctrine, it has demonstrably failed to meet its burden of establishing that those emails are embraced by the work product doctrine.

Honorable Alvin K. Hellerstein, p. 3

Plaintiffs therefore respectfully request that the City be ordered promptly to produce these nine emails.

**DEFENDANT'S POSITION**

All nine e-mails at issue reflect communications concerning Jane Doe 2's notice of claim ("NOC"), which was transmitted by the Comptroller to a Department of Correction ("DOC") attorney, Nadene Pinnock, in or about July, 2013.[1] Attorney Pinnock then forwarded the NOC to others within DOC, who in turn forwarded the NOC to others at DOC's sister agency the Department of Investigation ("DOI"), for information-gathering and discussion. For this reason, all of the emails are privileged either as attorney-client communications or attorney work product. Plaintiff's application – their latest in a series of fishing expeditions – should be denied.

The email threads demonstrate that on July 23, 2013, Ms. Pinnock, who was DOC Deputy General Counsel at the time, forwarded the NOC to four other DOC employees – Thomas Bergdall (General Counsel), Flo Finkle (Deputy Commissioner for Investigations), Sabina Blaskovic (Assistant Commissioner for Investigations) and a fourth employee, Eldin Villafane. Subsequently, Ms. Blaskovic forwarded the NOC to two DOI employees, Jennifer Sculco (DOI Inspector General for DOC), and James Christo (DOI investigator also assigned to investigate DOC matters), and there were follow-up communications among the DOC and DOI staff.[2] The subject matter of the communications was the NOC and whether or not DOC or DOI had a pending investigation into the allegations set forth in the NOC.

Because the communications were initiated by Attorney Pinnock, and because they all concerned her initial inquiry about the NOC – a prerequisite to litigation against the City under State law, *see* Gen. Mun. L. § 50-e (McKinney's Cons. N.Y. Law Service 2016) – all are privileged. *See generally United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (document is work product if "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation") (citation omitted). Any communication from Attorney Pinnock to other DOC employees regarding possible litigation against the City is privileged. *See, e.g., Curto v. Medical World Communications, Inc.*, 783 F. Supp. 2d 373, 378 (E.D.N.Y. 2011) (privilege "protects communications between an attorney and a client").

Moreover, subsequent communications between non-attorneys, in the same email thread, seeking to gather information requested by Attorney Pinnock are also privileged under the work product doctrine. "Notwithstanding the common description of the doctrine as the 'attorney' work product doctrine, ... it is not in fact necessary that the material be prepared by or at the direction of an attorney." *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 384, 394 (S.D.N.Y. 2015) (Scheindlin, J.) (citations omitted). Rule 26(b)(3) extends work product protection to

---

[1] The privilege log entries describe the subject matter of the communications as Jane Doe 2's "sexual assault allegation."

[2] During fact discovery, plaintiffs deposed Sculco and Christie – twice, each – but did not depose Pinnock, Bergdall, Finkle, Blaskovic or Villafane. The City would likely have opposed any depositions of Pinnock or Bergdall, both of whom are, or were, DOC attorneys.

"documents and tangible things that are prepared in anticipation of litigation ... by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer or agent) ...." Fed. R. Civ. P. 26(b)(3)(A). "Agents include those who are enlisted by legal counsel to perform investigative or analytical tasks to aid counsel in preparing for litigation." *Costabile v. County of Westchester*, 254 F.R.D. 160, 164 (S.D.N.Y. 2008) (citation omitted). In addition, "an individual who worked directly with and under the supervision of counsel and was responsible for such tasks as coordinating the gathering of evidence and identifying and contacting witnesses, was found to fall within the scope of Rule 26(b)(3)." *Montesa v. Schwartz*, 12-CV-6057 (CS) (JCM), 2016 U.S. Dist. LEXIS 80822, *51 (June 20, 2016) (citing *Sterling Drug, Inc. v. Harris*, 488 F. Supp. 1019, 1027 (S.D.N.Y. 1980)).

Plainly, communications between non-lawyers at the direction of Attorney Pinnock, for the purpose of "gathering ... evidence" in anticipation of litigation – which usually follows the filing of an NOC – falls within the scope of the work product doctrine and is privileged. *Cf. Montesa*, at *53-55 (non-lawyer communications regarding defense of litigation protected by work product doctrine).

Plaintiffs assert that the City somehow "waived" the privilege by serving the privilege log late, but the Court specifically rejected that argument at the status conference on Sept. 6, 2016, as plaintiffs are aware. They advance another waiver argument here, claiming that the City waived the work product privilege because the log – which contains one hundred thirty seven (137) entries, culled from over three thousand (3,000) documents comprising approximately ten thousand (10,000) pages – omits the words "work product" and only asserts the "attorney-client" privilege for the nine disputed emails. Plaintiffs are clearly not prejudiced by the omission of the words "work product" from the log, and they do not advance any argument to the contrary in their portion of this letter above. Rather, as they have throughout the litigation, they engage in pointless gamesmanship, and cite no authorities holding that in similar circumstances (notification of a privilege claim on a small number of entries on a log regarding a vast document production two weeks after the log was served), a party waived its right to claim the work product privilege.

Finally, the nine disputed emails and its attachment comprise all of fifteen (15) pages – an insignificant number in light of the twenty thousand (20,000) pages of documents the City produced, in addition to the ESI. Plaintiffs' complaints about these nine emails lack any sense of proportion and further illustrate why the new proportionality rules were adopted. *Cf. Henry v. Morgan's Hotel Group, Inc.*, 15-CV-1789 (ER) (JLC), 2016 U.S. Dist. LEXIS 8406, *9 (S.D.N.Y. Jan. 25, 2016) (citation and internal quotes omitted) (proportionality rule was "intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production of relevant information").

In plaintiffs' reply, below, they point to one email in the thread referenced above that was produced bearing Bates ## 9464-65, and note that Jennifer Sculco was questioned about that email at her deposition. The City concedes that no claim of privilege attaches to that specific email, as it was produced and was the subject of deposition questioning without objection. However, with regard to the other eight emails in the chain, which concern some of the same communications but also reflect others, we submit that the privilege should attach. The privilege

Honorable Alvin K. Hellerstein, p. 5

was adequately preserved, and we submit that the criteria for subject matter waiver do not apply here. *See generally* Fed. R. Evid. 502(a).

The courts recognize that "subject matter waiver will be justified only in 'situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner.'" *Obeid v. LaMack*, 14-CV-6498 (LTS) (MHD), 2015 U.S. Dist. LEXIS 127327, *28 (S.D.N.Y. Sept. 16, 2015) (quoting Fed. R. Evid. 502(a), 2007 Advisory Committee Notes at 455 (Thomson Reuters 2015 Rev. Ed. - Civil Rules)). "As the cases recognize, such unfairness may be found in one of two circumstances -- when the discovered party releases information, otherwise privileged, that is favorable to its position in the lawsuit while withholding privileged information that is adverse to its position (that is, using the privilege as 'a sword and a shield') or when it asserts a position that implicitly puts into issue the substance of privileged information, absent which the claim or assertion cannot properly be assessed." *Id.* (citations omitted). *See also Levy v. Young Adult Institute*, 13-CV-2861 (JPO) (SN), 2016 U.S. Dist. LEXIS 178260, *8-9 (S.D.N.Y. Dec. 14, 2015) (subject matter waiver appropriate only "unusual situations" and is intended to "prevent[] a party from tactically disclosing some beneficial privileged information while concealing harmful reports and opinions") (citing *In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987)).

Plaintiffs cannot make such a showing here, and if necessary, the City will submit the other eight (8) emails for the Court's *in camera* review. As noted above, the documents are not voluminous and would comprise just thirteen (13) pages.

For the foregoing reasons, plaintiffs' motion should be denied.

## PLAINTIFFS' REPLY

The City's accusation of "pointless gamesmanship" comes with particular ill grace considering it was the City who refused to provide any of the factual information above during the meet and confer process and instead forced Plaintiffs to burden the Court in order to obtain a simple explanation for its assertion of privilege.

Moreover, with the benefit of the City's description of the relevant email threads – which the City could have and should have provided during the meet and confer process – Plaintiffs have now been able to locate emails that the City has already produced from the same day, among the same participants and regarding the same subject matter as the nine emails at issue in this letter. One such email chain is attached as Exhibit B. The bottom email of the chain appears to be the same July 23, 2013 email from Nadene Pinnock on which the City bases its assertion of privilege for all nine emails currently in dispute – all of which are subsequent emails in the same thread between non-attorneys. It is abundantly clear from the face of that email that Ms. Pinnock is not providing legal advice and that the assertion of privilege over this email is entirely baseless. Exhibit B, email of July 23, 2013 at 4:22 PM. Ms. Pinnock simply forwards Jane Doe 2's comptroller claim to several DOC employees with essentially no commentary. The City's argument that further communications between non-attorneys that were "initiated" by this email are somehow protected by attorney client privilege or attorney work product is therefore entirely meritless.

Honorable Alvin K. Hellerstein, p. 6

      Even though it is clear that the nine emails are not privileged and Plaintiffs' motion should therefore be granted on that ground alone, the City has also waived any privilege that might have applied because it has already produced emails regarding the same subject matter. In addition, during their depositions on July 27, Plaintiffs asked both Jennifer Sculco and James Christo questions about Exhibit B, about DOI's response to Jane Doe 2's comptroller claim, and about DOI's general process when notified of a claim received by the Comptroller's Office, and the City's counsel did not object to any of these lines of questioning.

      Finally, the City does not dispute that its privilege log was factually false in claiming that each of the nine emails were sent by or to an attorney. The City's sudden invocation of attorney work product once it realized that attorney client privilege could not apply should be rejected as a belated and illegitimate attempt to avoid production. Indeed, the City now concedes that at least one of the emails is not privileged and should not have been logged, and offers no response as to how any of the remaining emails either contain privileged communications or attorney work product.

      Thus, the City's assertions of privilege over the nine emails at issue are baseless and, nevertheless, waived.

Respectfully submitted,

*Mitchell A. Lowenthal /KLE*

Mitchell A. Lowenthal

cc: All Counsel of Record (By Electronic Filing on ECF)