# EXHIBIT 10
# PUBLICLY FILED PURSUANT TO JAN. 18, 2017 ORDER, ECF No. 273

# CHAPTER 9.0: VOUCHERING PROCEDURES AND PRESERVING THE CHAIN OF CUSTODY

## 9.1 Objectives

This chapter will provide the investigator with:

- An understanding of chain of custody best practices; and
- An understanding of vouchering best practices.

Division Order # 04/05 in Appendix E sets out ID standard operating procedures for vouchering physical evidence, trace evidence and media evidence, including, but not limited to, evidence from a digital camera, video recorder, audio recorder and computer.

## 9.2 Chain of Custody Best Practices

A chain of custody is exactly that, an unbroken link that begins at the crime scene and documents that (a) custodial possession, and (b) integrity of evidence has been maintained. Like any chain it is only as strong as its weakest link.

In its crime scene best practices manual, the Department of Justice defines "chain of custody" as a process used to maintain and document the chronological history of the evidence.[23]

Put another way, it's a chronological list of those in continuous possession of the evidence.[24]

Maintaining the chain of custody places an enormous responsibility on whoever handles the evidence.

A person who presents physical evidence at a trial must demonstrate that the chain of custody was not broken. He or she must account for its possession from time of receipt to time of trial in order for the evidence to be "admitted."[25]

---

[23] Department of Justice, Crime Scene Investigation: A Guide for Law Enforcement, (Washington, DC: 1999), p. 49.

[24] Daniel E. Hall, Criminal law and procedure, (Thomson Delmar Learning: 2003), p. 544

[25] Daniel E. Hall, Criminal law and procedure, (Thomson Delmar Learning: 2003), p. 544

53

**CONFIDENTIAL**

DEF_0002311

The best kind of evidence is evidence seized at the scene of an incident, as soon after the incident as possible, and which can be directly linked to the incident. Possible evidence seized long after the fact presents many difficulties for an investigator, including but not limited to:

- Proving a direct link with the incident; and

- Proving that it had not been contaminated in the interim.

A case in point is an investigation handled by ID, in which an inmate who was the alleged victim in a Use of Force incident provided a bloodstained t-shirt to an investigator weeks after the incident, claiming he had worn it when injured. This kind of delay in taking bloodstained clothing into evidence raises many questions. How do we know that this t-shirt was in fact worn on the day of the incident? How do we know that the bloodstains were the result of the Use of Force incident under investigation and not another incident? A delay is also important because heat and moisture can reduce the viability of antigens.[26] (Antigens are proteins that stimulate the immune system to produce antibodies. An online forensic text book states: "This ability of antigens to stimulate antibody production is very useful in forensic analyses. Detection of an antibody to a target molecule (botulinum toxin, for example) provides powerful evidence that a victim or suspect had been exposed to the particular antigen. In the case of a death, this evidence can help determine the course of events.")[27]

The best advice from forensic experts is to keep a chain of custody as short as possible.[28] Keep to a minimum the number of people handling the evidence. The more times evidence is transferred, the greater the chance of a problem arising from the transfer. While not usually practical, the optimal chain of custody is a single individual.

## 9.3 Why Do Vouchering and Chain of Custody Matter?

Whenever you begin a case, always keep the following in mind:

- The evidence gathered may one day be scrutinized in OATH administrative, criminal or civil proceedings.

- If the evidence is not preserved and documented in a manner that is consistent with ID procedures and generally accepted best practices, the evidence may not be accepted and

---

[26] Ronald F Becker, Criminal Investigation: A Contemporary Perspective, (Jones and Bartlett Publishers: 2004), p. 109

[27] See World of Forensic Science at http://www.enotes.com/forensic-science/antigen/print.

[28] See, Charles E. O'Hara and Gregory L. O'Hara, Fundamentals of Criminal Investigation, Seventh Edition, (Springfield, Illinois: 2003), p. 102; Oregon State Police, Forensic Services Division, Physical Evidence Manual, (October 20, 2006), p. 4.6

54

**CONFIDENTIAL**

either a guilty individual will go unpunished, or an innocent one may be punished unfairly.

- If the evidence is not preserved and documented in a manner that is consistent with ID procedures and generally accepted best practices, it may negatively impact on your reputation, the reputation of the ID and the reputation of the NYC DOC for investigating internal issues thoroughly, fairly and in a timely manner.

As a forensic expert has noted:

> *The chain of custody is one of the more commonly litigated pretrial issues. An investigator may view his or her role as completed once the evidence has been discovered or bagged. But a case may fail because of the inability of the prosecution to prove the whereabouts of certain evidence – not that it has been lost, but that it was unaccounted for at some point between the time it was discovered and the present moment. The prosecution has the responsibility to establish the location of the evidence every second after it came into the custody of the police. It would be very embarrassing to discover for the first time while undergoing cross-examination by the defense that there was a break in the chain of custody.* [29]

Using appropriate chain of custody and vouchering procedures can prevent speculative allegations that evidence might have been fabricated or tampered with.

A key reason for using appropriate chain of custody and vouchering procedures and best practices is its impact on how OATH or other judicial forums perceive the quality, integrity and thoroughness of the investigation.

Using chain of custody and vouchering procedures and best practices demonstrates that the investigators have acted professionally by taking appropriate care in documenting and safeguarding evidence.

Conversely, poor vouchering and chain of custody practices can also hurt the credibility of a case. It can leave the OATH judge wondering: If they cut corners here, where else might they have cut corners?

## 9.4 Vouchering Best Practices

Vouchers are the physical records that document the chain of custody process. Preparing those documents is known as vouchering.

---

[29] Ronald F Becker, Criminal Investigation: A Contemporary Perspective, (Jones and Bartlett Publishers: 2004), p. 472

**CONFIDENTIAL**

**DEF_0002313**

The information on vouchers should include the identities of whoever handled the evidence, when it was collected, and whenever it was transferred. The Department of Justice said vouchering documents,

> *should include name or initials of the individual collecting the evidence, each person or entity subsequently having custody of it, dates the items were collected or transferred, agency and case number, victim's or suspect's name, and a brief description of the item.*[30]

Vouchering best practices are based on common sense. Imagine being assigned to review evidence from an old case, and you are given a box of exhibits. Or imagine you're an OATH judge hearing the presentation of physical evidence in the ID's case against a correction officer. In both instances, it would be most helpful if you could easily determine chain of custody of the exhibits from vouchering documents.

As the Fundamentals of Criminal Investigation advises:

> *Each transfer [of evidence] should be receipted. It is the responsibility of each transferee to ensure that the evidence is accounted for during the time that it is in his possession, that it is properly protected, and that there is a record of the names of the persons from whom he received it and to whom he delivered it, together with the time and date of such receipt and delivery.*[31]

## 9.5 Chain of Custody and Memo Books

While ID-mandated vouchering forms document the chain of custody, your memo book also plays an important role in supporting the integrity of the chain of custody. Use it to describe the evidentiary object, where it was found, the position in which it was found, the person from whom you received it, the names of any witnesses and any serial number on the object.[32]

---

[30] Department of Justice, Crime Scene Investigation: A Guide for Law Enforcement, (Washington, DC: 1999), p. 49.

[31] Charles E. O'Hara and Gregory L. O'Hara, Fundamentals of Criminal Investigation, Seventh Edition. (Springfield, Illinois: 2003), pp. 82-3

[32] Charles E. O'Hara and Gregory L. O'Hara, Fundamentals of Criminal Investigation, Seventh Edition, (Springfield, Illinois: 2003), p. 96

56

**CONFIDENTIAL**                                                                                                    **DEF_0002314**