UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

JANE DOE 1 and JANE DOE 2, on behalf of
themselves and all similarly situated women,

                          Plaintiff,

-against-

THE CITY OF NEW YORK and BENNY SANTIAGO,

                          Defendants.

-------------------------------------------------------------------------x

**DECLARATION**

15 Civ. 3849 (AKH)

**LIAM L. CASTRO, ESQ.**, an Attorney duly licensed to practice before the United States District Court for the Southern District of New York and before the Courts of the State of New York, upon the penalties of perjury, hereby declares and affirms as follows:

1. I am associated with Koehler & Isaacs LLP, the attorneys for Defendant Benny Santiago, am fully familiar with the facts and circumstances of this matter and do hereby present this Declaration in support of the instant motion seeking a 60-day continuance of both the instant trial and all pre-trial deadlines.

## Procedural Background

2. By Letter-Motion submitted by Plaintiffs and Defendants dated April 4, 2017, the parties submitted a joint application for a 60-day continuance of the instant trial which is scheduled to begin on May 8, 2017 and a 60-day extension of the pre-trial deadlines detailed in a previously submitted March 24, 2017 joint letter. (*See,* Docket Entry 314)

3.  The Court thereafter issued an *Order Denying Continuance* that provided as follows:

> Defendant Benny Santiago's request for a continuance is denied without prejudice. Santiago should move formally, supported by affidavits and briefs, for appropriate relief.
>
> The motion should answer the following questions, among others, by competent proofs, including an affidavit or declaration of his treating physicians. What is Santiago's current condition? Is it likely to improve, and can a date be predicted for his improvement? What is the extent of his cognition and ability to assist in defense of the civil case against him? What is his ability to participate in a trial; is it likely to improve, and when is it likely to improve? Should a guardian ad litem be appointed? Can the criteria of New York law be satisfied, see Fed. R. Civ. P. 17(b); see New York Mental Hygiene Law§§ 81.02(b)(l)- (2), and does this court have jurisdiction so to appoint? *See, generally, Tudorov v. Collazo*, 215 A.D. 2d 750, 627 N.Y.S.2d 419 (2d Dep't 1995) ("It is well settled that a guardian ad litem may be appointed by a court at any stage of an action in which an adult is incapable of adequately prosecuting or defending his or her rights.").
>
> The motion and supporting papers shall be filed by April 14, 2017; opposition papers by April 19, 2017. A hearing will be held on April 21, 2017 at 11:00 a.m. The Clerk shall terminate the motion (ECF 314).
>
> SO ORDERED.

(*See,* Docket Entry 314)

4.  Accordingly, Defendant Santiago now formally moves the Court for a 60-day Continuance of the trial, and 60-day Continuance of pre-trial deadlines. Defendant Santiago does not, at this time, move to appoint a *guardian ad litem* since he is still undergoing medical evaluation and treatment that will elucidate whether the appointment of a *guardian ad litem* is necessary herein. If additional information regarding the same is available at the time of the hearing on April 21, 2017, it will be presented to the Court and counsel.

## Medical Evidence

5.  On January 15, 2017, Defendant Santiago suffered a Cardiovascular Accident (CVA) of the right middle cerebral artery at approximately 6:30am while at work. He was

initially taken to Jamaica Hospital and was thereafter transferred to Lenox Hill Hospital where he was admitted at 9:44am. (*See,* Exhibits A and B, Lenox Hill Hospital Records)

6.      He was treated at the Lenox Hill Dept. of Neurosurgery by Dr. Rafael Alexander Ortiz who performed a Femoral Cerebral Angiogram, Mechanical Thrombectomy and complete Recanalization of the Right MCA Occulaion as indicated in the attached Lenox Hill Medical records dated January 15, 2017. (*See,* Exhibits A and B, Lenox Hill Hospital Records)

7.      Three days later, on January 18, 2017, Defendant Santiago was discharged and issued Patient Discharge Instructions. (*See,* Exhibit B, Lenox Hill Hospital Records)

8.      As indicated therein under the heading of "Care Plan" on page 1, "Call MD if . . . difficulty speaking, mental status change." (*See,* Exhibit B, Lenox Hill Hospital Records)

9.      As further indicated therein under the heading of "Discharge Instructions" on page 2, " . . . Do not make important decisions." (*See,* Exhibit B, Lenox Hill Hospital Records)

10.     On January 26, 2017, Defendant Santiago saw his surgeon, Dr. Ortiz at Lenox Hill Hospital for a follow-up examination. (*See,* Exhibit A, Lenox Hill Hospital Records)

11.     On March 3, 2017, Dr. Ortiz performed a Femoral Cerebral Angiogram and Cartoid Artery Stenting upon Defendant Santiago at Lenox Hill Hospital. (*See,* Exhibit A, Lenox Hill Hospital Records)

12.     On March 9, 2017, Defendant Santiago saw his surgeon, Dr. Ortiz at Lenox Hill Hospital for another follow-up examination. (*See,* Exhibit A, Lenox Hill Hospital Records)

13.     On March 31, 2017, Defendant Santiago saw a neurologist, Dr. Ellen J. Braunstein, who reported, *inter alia,* the following: " . . . The patient is concerned, because he

feels that he cannot remember anything. When he is actually asked questions, it appears that he does have the ability to remember, but he is having problems with organizations skills. This may be referable to his stroke. I therefore would like him to get a Neuropsychiatric evaluation and cognitive rehabilitation. Otherwise, there are no other new complaints." (*See,* Exhibit C, Dr. Braunstein Reports)

14.  Dr. Braunstein also indicated in her review of the patient's systems that Defendant Santiago was "Positive for forgetfulness." (*See,* Exhibit C, Dr. Braunstein Reports)

15.  Dr. Braunstein's Referral Recommendations included a referral to: "Neuropsychology, Neuropsych evaluation and cognitive rehabilitation." (*See,* Exhibit C, Dr. Braunstein Reports)

16.  Dr. Braunstein's Treating Physician's Summary Report dated March 31, 2017 provides as follows: **(i)** the diagnosis includes *memory loss,* **(ii)** the prescribed treatment is *Needs – Brain MRI, EEG, Sleep study, Neurotrax & follow up in 2 wks. Neuropsychiatric Evaluation must be done* and **(iii)** the specific prognosis is *Indeterminate at present. Waiting for above tests to be completed.* (*See,* Exhibit D, Dr. Braunstein Reports) (emphasis added)

17.  On April 4, 2017, Defendant Santiago underwent testing for the following domains: Memory, Executive Function, Attention and Visual Spatial. Notably, whereas his Visual Spatial score was 101.4, his scores for Memory, Executive Function and Attention Domains were all deemed to be outside of the 70-130 range.

18.     Defendant Santiago's *Memory Score* was only **68.4** with a breakdown as follows:

    Verbal Memory: Total Accuracy **75.3**

    Delayed Verbal Memory: Accuracy **60.2**

    Non-Verbal Memory: Total Accuracy **72.2**

    Delayed Non-Verbal Memory: Accuracy **65.8**

19.     Defendant Santiago's *Executive Function Score* was only **68** with a breakdown as follows:

    Go-NoGo: Composite Score **50.9**

    Stroop Interference: Composite Score, Level 3 **84.0**

    Catch Game: Total Score **69.1**

20.     Notably, Defendant Santiago's *Attention Score* was only **37.2** with a breakdown as follows:

    Go-NoGo: Rsp Time **25.0**

    Go-NoGo: Rsp Time Std Dev **25.0**

    Stroop Interference: Rsp Time Level 2 **61.5**

(*See*, Exhibit C, Dr. Braunstein Reports)

21.     As Dr. Braunstein stated in her accompanying April 13, 2017 Declaration, "[i]n light of Mr. Santiago's current memory loss, the issues regarding his attention span and the fact that diagnosis and treatment are still in progress, [she] support[s] the request by his lawyers for a 60-day delay of his trial during which time more information regarding his diagnosis and treatment can be assembled and submitted to the court for review."

5

22.     Defendant Santiago's most recent evaluation was by Dr. Antonio Joseph, his nephrologist at NYU Langone Medical Center. Dr. Joseph indicated the following: "He was diagnosed with cerebral vascular accident on 1/23/17 that left him partially disabled. He also has severe memory loss (short term & long term) as a result of his cerebral vascular accident. His condition is unlikely to improve in the near future and no date can be predicted for improvement. His ability to participate in a trial or assist in his defense is limited."

(*See,* Exhibit E, Letter from Dr. Antonio Joseph)

### Declaration of Jasmine Santiago

23.     Attached hereto is the Declaration of Defendant Santiago's daughter, Jasmine. Her observations are particularly relevant since they substantiate that he suffers from memory loss and attention disorder on a day to day basis and that these conditions can and will affect his ability to prepare for and participate in the instant trial if it proceeds on May 8, 2017.

24.     If, as she states, he cannot remember things; confuses people and events; needs to sleep during the day; falls asleep or gets headaches when reading anything; and cannot remember things both short-term and long-term, it is abundantly clear that he cannot presently assist his counsel in preparing for trial, much less participate in the trial itself.

### Preparation For Trial and Participation In A Jury Trial

25.     This is a complicated, fact-driven matter that hinges in large part upon the credibility and memory of numerous witnesses. Depositions of approximately 22 individuals have been taken in this case, most of which will need to be reviewed by Defendant Santiago since they concern allegations of fact. Notably, Defendant Santiago did not attend these depositions which means that he has no prior familiarity with the testimony (to the extent that he

could even remember the same) and must now review and absorb the entirety of the transcripts themselves – thousands of pages. Plaintiffs have also listed 22 witnesses who they intend to call at trial. Again, Defendant Santiago must become familiar with and anticipate such testimony so that it can be addressed and rebutted at trial.

26. There is a great deal of preparation that needs to be done with the active participation of Defendant Santiago. In order to fully prepare for trial, Defendant Santiago needs to review thousands of pages of deposition transcripts and numerous exhibits. He must absorb all of this information and then prepare to testify and undergo what will surely be several blistering cross-examinations by the many lawyers involved in this case.

27. Defendant Santiago cannot presently do these tasks since his memory and attention span are severely compromised, as indicated by Dr. Braunstein's medical reports and in the accompanying Declaration of his daughter, Jasmine Santiago. If he is unable to even read a few magazine pages without getting a headache or falling asleep, unable to remember basic facts and relationships, and unable to drive to and remember familiar places, he clearly cannot be expected to review thousands of pages of deposition transcripts and exhibits or remember the basic facts of this case or strategize with his counsel or participate in direct /cross-examination at trial.

28. Finally, it is of great concern to his defense lawyers that he will be observed in his present distracted, fidgety and uneasy state by a jury that will hold his fate in their hands. In a case where there was no prior criminal prosecution, where there was no physical evidence and where credibility is key, Defendant Santiago should not be deprived of the opportunity to present himself and his defenses in a fair and proper light. If the jury, over the course of several weeks of trial, receives all of Plaintiffs' evidence, hears all of Plaintiffs' witnesses and simultaneously

observes Defendant Santiago staring off into space, squirming in his seat, and falling asleep, it can and will be interpreted in the worst possible way. And when he finally does testify and undergoes cross-examination, his inability to remember or focus upon anything may be wrongly interpreted as indifference, obstructionism or outright lying. The end result could easily be a miscarriage of justice.

29. It will be extremely prejudicial for Defendant Santiago to participate in a trial where allegations of rape comprise the subject matter given his present medical state. This is especially true when there clearly exists a possibility of him getting better once his diagnosis and treatment plan are established and put into place – something that Dr. Braunstein says will be forthcoming.

### Guardian Ad Litem

30. The Court's April 5, 2017 Order raised the issue of whether a *Guardian Ad Litem* might be appointed for Defendant Santiago.

31. Before addressing the procedural and jurisdictional aspects of such an appointment, we must first determine whether the same is medically necessary. As Dr. Braunstein has indicated, the diagnosis and treatment plan for Defendant Santiago has not been completed yet and more testing and evaluation is scheduled. Once that is done, if it appears that such an application is medically necessary, such a motion will be made in the appropriate court – either New York Surrogate's or Family Court, or in United States District Court.

## Conclusion

32. The application for a 60-day continuance is a reasonable request in response to an unexpected and tragic medical circumstance that has befallen a party herein. But for the stroke suffered by Defendant Santiago, both he and his counsel would be ready for trial on May 8, 2017. All that is being asked of the Court is a 60-day continuance of the trial and pre-trial deadlines. During this time, Defendant Santiago's diagnosis and treatment will proceed so that his medical condition can be stabilized, he can be given proper medication and therapy and he can participate in the trial as if he had not suffered a stroke.

33. No previous application for the relief sought herein has been made other than Defendant's April 4, 2017 Letter Motion.

Dated: New York, New York
       April 14, 2017

LIAM L. CASTRO, ESQ. (LC-9291)