UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JANE DOE 1 and JANE DOE 2, on behalf of
themselves and all similarly situated women,

        Plaintiffs,

    -against-                             15 Civ. 3849 (AKH)

THE CITY OF NEW YORK and BENNY
SANTIAGO,

        Defendants.

---

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE THE EXPERT REPORT AND PROPOSED TRIAL TESTIMONY OF THERESA LANTZ

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

TABLE OF AUTHORITIES.................................................................................... ii

PRELIMINARY STATEMENT ..........................................................................1

ARGUMENT .......................................................................................................4

     I.   LANTZ SHOULD BE PRECLUDED FROM TESTIFYING BECAUSE SHE
          FAILED TO EDUCATE HERSELF ABOUT THE RELEVANT FACTS .................4

     II.  LANTZ HAS NO OPINION RELEVANT TO THE DAMAGES TRIAL..................9

CONCLUSION....................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*24/7 Records, Inc. v. Sony Music Entm't, Inc.*,
    514 F. Supp. 2d 571 (S.D.N.Y. 2007) .................................................................... 4

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
    303 F.3d 256 (2d Cir. 2002)................................................................................. 4

*Fate v. Village of Spring Valley*,
    No. 11 Civ. 6838(JPO), 2013 WL 2649548 (S.D.N.Y. June 13, 2013) ................ 11

*Nimely v. City of New York*,
    414 F.3d 381 (2d Cir. 2005).............................................................................. 4, 11

*Snyder v. Wells Fargo Bank, N.A.*,
    No. Civ. 4496(SAS), 2012 WL 4876938 (S.D.N.Y. Oct. 15, 2012)...................... 10

*United States v. Jacques Dessange, Inc.*,
    No. S2 99 CR. 1182 DLC, 2000 WL 294849 (S.D.N.Y. Mar. 21, 2000) .............. 11

### <u>Rules and Statutes</u>

Fed. R. Evid. 702 ........................................................................................................... 4

Pursuant to Rules 401, 403 and 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), plaintiffs Jane Doe 1 and Jane Doe 2 ("Plaintiffs") respectfully submit this memorandum of law and accompanying declaration of Joseph Kay, dated April 17, 2017 ("Kay Decl.") in support of their motion *in limine* to exclude the expert report and proposed trial testimony of defendant the City of New York's (the "City") correctional expert Theresa Lantz.

## PRELIMINARY STATEMENT

Lantz is a "corrections expert" retained by the City, whose opinions should be excluded from the upcoming trial. *First*, they are incompetent – (a) she never read more than half of the depositions in the case, (b) she never reviewed the vast majority of the exhibits marked at any of the depositions and (c) she ignored the most comprehensive analysis of conditions at the Rose M. Singer Center ("RMSC") – The Moss Group's Sexual Safety Assessment Report. *Second*, her opinions are irrelevant to the damages claims against the City, the only claims against the City that will be tried now.[1]  Instead, her opinions solely address whether – based upon current conditions at RMSC – injunctive relief is needed, and she concedes that the current conditions at RMSC are not relevant to the conditions during the time (ending in 2013) when Plaintiffs were raped and sexually abused. *Third*, Lantz offers inappropriate lay opinion testimony as to the Plaintiffs' credibility, which cannot be the subject of expert testimony.

*As an initial matter*, Lantz's views are incompetent under Rule 702 because she ignored most of the relevant evidence:

---

[1]      Trial, which will commence on May 9, will solely concern claims for damages.  Any claim for injunctive relief will go forward only if, and after, class certification is granted.

- She simply did not review most of the depositions, and virtually all of the witnesses whose testimony she failed to read were City employees charged with running, or reviewing, RMSC operations.  Thus, of the 20 depositions taken in this case, Lantz claims to have read only ten. She never received and did not review the deposition transcripts of the following eight witnesses:  the New York City Department of Correction's ("DOC") former Deputy Commissioner of Investigations Michael Blake, DOC Captain Sabrina Blenman, the DOC's Investigation Division's ("DOC ID") Deputy Director of Investigations Steven Jones, DOC Assistant Deputy Warden Diane Medina, New York City Department of Investigation ("DOI") Investigator Belarminia Ortiz, DOC Captain Ferdinand Torres, DOI Corrections Officer Investigator Rhonda Young, and B.W.[2] (who received money from Santiago on behalf of Jane Doe 1).

- Although Lantz  read the first volume of the deposition transcripts of the DOI's Assistant Inspector General James Christo and Inspector General Jennifer Sculco, she inexplicably ignored the second day of their depositions.  These are not trivial omissions – Christo led the investigation of Jane Doe 2's allegations and failed to maintain the chain of custody for a pair of pants collected from Jane Doe 2's cell (the "Pants") and Sculco was Christo's direct superior.

- For the few transcripts she did read, Lantz did not bother to review the exhibits marked at those depositions.

- Lantz only reviewed a two-page appendix to the comprehensive report by The Moss Group (with which Lantz has worked as a consultant for years), whose factual findings paint a highly negative picture of the conditions at RMSC at the time the Plaintiffs were being victimized.

As a result, Lantz's understanding of the practices and policies at RMSC – for any particular time period, much less that time period relevant to the damages claims – is based upon a fraction of the relevant information and not upon the "sufficient facts" required by Rule 702(b).

*Furthermore*, Lantz's incompetent opinions are irrelevant because the City's *Monell* liability for damages turns exclusively on whether the City's practices and policies <u>at the time Plaintiffs were being raped and sexually abused</u> – the period ending in May 2013 – were unconstitutional because they reflected deliberate indifference to the sexual safety of the women housed at RMSC.  Indeed, the City conceded at the March 20 conference before the Court that the "*Monell* proof that's required for the damages claims is proof that as of the date of those

---

[2]      B.W. is Jane Doe 1's adoptive mother.

incidents, that is, 2012/13, city policymakers were on notice of misconduct in the jails and did

nothing, despite the fact that they were on notice of a persistent widespread pattern of

misconduct." Tr. of Mar. 20, 2017 Court Conf. 22:16-21, ECF No. 312.  The City was on notice,

and did nothing.  As Plaintiffs' prison conditions expert, Timothy P. Ryan, extensively explains,

the City's deliberate indifference to sexual abuse at RMSC began "on or before January 1, 2011"

and continued thereafter, while Plaintiffs were being raped and sexually abused.  *See* Expert

Report of Timothy P. Ryan ¶¶ 100-236 (Nov. 3, 2016) (Kay Decl. Ex. 1) ("Ryan Report").

       Lantz, however, <u>offers no opinion</u> on whether RMSC was being operated

consistent with Constitutional standards <u>when Plaintiffs were being raped and sexually abused</u>.

Instead, her opinion exclusively focuses on whether – today – injunctive relief is warranted.  As

she admitted:

> Q:     So is it fair to say that you're not opining on whether or not
> [the City had an adequate] commitment [to sexual safety] at the
> time the alleged sexual misconduct took place by Mr. Santiago?
> A:     Correct.

Lantz Dep. 84:12-16 (Kay Decl. Ex. 2).  Indeed, she repeated the point for emphasis:

> Q.     So it is fair to say that you disagree with Mr. Ryan's
> conclusions that there are problems at [RMSC] that need to be
> corrected?
> A.     Well, I think that they are [now] trying to address a
> multitude of issues in areas and some of them may be problems.
> Q.     And again, you're talking about what is going on today at
> the RMSC, not what was going on back [in] 2009 to 2012 or '13?
> A.     As far as?
> Q     As far as your conclusions -- your criticisms of Mr. Ryan's
> report?
> A.     <u>I'm looking at where we're at today.</u>

*Id.* 289:13-290:2 (emphasis added).  Lantz thus has no opinion that is relevant to whether the

City is liable for damages under *Monell* for the rapes and sexual abuse Plaintiffs suffered.

Finally, Lantz's expert report inappropriately offers her personal lay views as to the Plaintiffs' credibility.  These clearly biased observations have no place in the report of a so-called "corrections expert."  With these statements, Lantz tries to usurp the role of the jury, which must be rejected.  In light of the foregoing, Lantz should be precluded from testifying in connection with the damages trial.

## ARGUMENT

Rule 702 provides that expert testimony is admissible only if the expert opinion:  (1) provides "scientific, technical, or other specialized knowledge [that] will help the trier of fact," (2) is "based on sufficient facts or data," (3) is "the product of reliable principles and methods" and (4) reliably applies "the principles and methods to the facts of the case."  Fed. R. Evid. 702. In deciding a motion to exclude expert testimony, the Court must "undertake a rigorous examination of the facts on which the expert relies," as well as the expert's methods and application.  *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002).  The Court must find that expert testimony is supported by "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).  The burden of establishing admissibility by a preponderance of the evidence falls on the proponent of the testimony.  *24/7 Records, Inc. v. Sony Music Entm't, Inc.,* 514 F. Supp. 2d 571, 574 (S.D.N.Y. 2007).

The City cannot meet its burden of showing that Lantz's testimony satisfies Rule 702.

## I.    LANTZ SHOULD BE PRECLUDED FROM TESTIFYING BECAUSE SHE FAILED TO EDUCATE HERSELF ABOUT THE RELEVANT FACTS

Lantz's opinions are not based on the "sufficient facts" required by Rule 702(b). Apart from what she learned from her limited review of the record in this case, Lantz has no

knowledge of the operations or conditions at RMSC – she has no knowledge at any point in time, much less at any point relevant to when Plaintiffs were being raped and sexually abused.  Under cross examination, she conceded that she needed to review the depositions of "anybody that had testified," and asserted that she had asked for <u>all</u> such transcripts.  Lantz Dep. 69:15-70:3 (Kay Decl. Ex. 2).  But she did not come close to meeting that standard.

According to her report, Lantz only received a total of ten deposition transcripts, Expert Report of Theresa Lantz at 6-7 (Dec. 9, 2016) (Kay Decl. Ex. 3) ("Lantz Report") – less than 50% of the depositions taken in the case.  <u>Lantz never received, and therefore never read, most of the transcripts of DOI or DOC officials discussing the sexual safety conditions at RMSC.</u>[3]  Further, Lantz said that she reviewed Mr. Ryan's report, and it referred to all of the transcripts Lantz failed to read, Ryan Report at 65-66 (Kay Decl. Ex. 1).  Yet at no point did Lantz ask to see the transcripts that were withheld from her.

Nor was any explanation offered for why most of the relevant testimony was withheld from Lantz (despite her testimony that she purportedly asked to see all of it).  What she was sent appeared to be a random collection of transcripts, including in critical instances the first

---

[3]      Lantz did not review testimony from many of the investigators and supervisors overseeing the DOI and DOC ID investigation into Jane Doe 2's allegations – much of which directly contradicts and criticizes findings on which she bases her expert opinion – including testimony from:  DOI Corrections Officer Investigator Young, who participated in every interview of Jane Doe 2 and disagrees with Christo's characterizations of the investigation; Captain Ferdinand Torres, the DOI investigator who collected crucial DNA evidence from Jane Doe 2's cell and failed to create adequate chain of custody documentation; DOI Investigator Ortiz, Torres's partner on the investigation; Deputy Director of Investigations Jones, who oversaw the administrative investigation into Jane Doe 2's allegations; and Deputy Commissioner of Investigations Blake, a high-ranking official within the City who supervised the administrative investigation.  *See* Kay Decl. ¶¶ 3, 5, 6, 8, 10.   Likewise, Lantz did not review the second day of testimony from Assistant Inspector General Christo or Inspector General Sculco.  *See id.* ¶ 9.  Those depositions were re-opened because of new and material information learned in productions after the first day of depositions.  *Id.*

Lantz also failed to review other key witnesses who corroborate Jane Doe 1's and Jane Doe 2's allegations, including B.W., who identified Santiago as the man who gave her money for Jane Doe 1; Assistant Deputy Warden Diane Medina, who reported to DOI allegations that Santiago was abusing two other women in 2012; and <u>the City's own 30(b)(6) representative</u>, Captain Sabrina Blenman, who testified to the changes in RMSC policies.  *Id.* ¶ 4, 7, 11.

day – but not the second – of testimony given by various witnesses.  In any event, she herself could not explain why she received some transcripts and not others, and was accordingly in no position to explain why the ones withheld from her did not contain evidence that could, or would, have changed her opinions.  What she did confirm is that she had no idea who nearly a dozen relevant witnesses were, much less what their testimony was.  Lantz Dep. 74:10-82:5 (Kay Decl. Ex. 2).

Lantz also took a truncated view of the few depositions she did read.  For example, she never read any of the exhibits that were marked at those depositions, *id.* 150:22-151:23 (Kay Decl. Ex. 2), and accordingly never cared to grasp the full context of those exhibits or their significance.  She just ignored "any additional materials other than the transcript," so as a result she did not "recall what the exhibits were" and based her opinion solely on the few transcripts she read. *Id.*  Indeed, her report does not list the exhibits to any of the depositions as materials she read in forming her opinions.  *See* Lantz Report at 5-7 (Kay Decl. Ex. 2).

Finally, other than a two-page appendix describing RMSC in summary terms, Lantz did not even review the comprehensive report issued by The Moss Group, Sexual Safety Assessment Report:  New York City Department of Correction (June 2015) (DEF_0014410-95) (Kay Decl. Ex. 4) ("Moss Group Report"), which in detail describes the deplorable conditions at RMSC during the time relevant to the damage claims being tried.  Lantz Dep. 193:9-195:7 (Kay Decl. Ex. 2).  She did not review the report even though Lantz has worked closely with The Moss Group as a consultant on between ten and twenty occasions.  *Id.* 91:12-92:2; *see also* Lantz Report at 4-5 (Kay Decl. Ex. 3).  The Moss Group Report runs nearly 100 pages, and includes devastating factual findings about sexual safety conditions at Rikers Island.  For example:

- That, after conducting a review of the forty-six sexual abuse or harassment allegations, the Moss Group concluded that the "issue that gave the most concern" was "whether [the investigations] were thorough." Moss Group Report at DEF_0014435 (Kay Decl. Ex. 4).

- That in a "majority of the investigations reviewed, they did not contain interviews with all possible witnesses," including in many cases the accused staff, other staff involved in the case, nearby staff and inmates, or clinical staff. *Id.*

- That the failure to interview relevant personnel "taints the conclusions of nearly every investigation reviewed. One cannot take an inmate report and never take the statement of the accused staff and all other possible witnesses and conclude the allegation is unfounded." *Id.*

- That the Moss Group specifically points to one investigative file which it states "included five paragraphs describing the reasons why the victim was lying, despite video and testimony evidence that suggested something clearly had taken place" and did not mention that "physical and DNA evidence would have been possibly available." *Id.* at DEF_0014435-36.

- That "video evidence was rare" because "[m]any areas do not have cameras or have cameras that 'monitor, but do not record.'" *Id.* at DEF_0014435.

- That, among investigators, there "appeared to be a lack of understanding of the evidentiary standard required in cases of sexual abuse and harassment." *Id.* at DEF_0014436.

- That "[i]nmates described a fear based environment as evidenced by reluctance to report staff or inmate misconduct, reluctance to raise issues or ask questions due to the belief that they won't be taken seriously or will be retaliated against." *Id.* at DEF_0014448.

- That there was no PREA training being conducted in facilities at the time of the inspection. *See id.* at DEF_0014422 (there was "little PREA-specific training actually occurring at [the inspected facilities, including RMSC] per the Training Director and staff interviewed").

- That, although "[a]ll of the facilities reported they have phone numbers of hotlines," when The Moss Group called each of these hotlines it found that "not one of the numbers functioned as a private way to report." *Id.* at DEF_0014425. The Moss Group found that the hotlines were not confidential and often did not work, reached inappropriate persons or were answered "by [DOI] staff who were very short with the caller and seemed more concerned about being called than why the call was being made." *Id.*

Although she had had the full report to review, Lantz decided to read none of it except for a two-page appendix generally describing RMSC, *id.* at DEF_0014465-66. Lantz Dep. 194:8-195:7 (Kay Decl. Ex. 2). Just those two pages are "really all [she] paid attention to."

*Id*. 194:8-18.  At no point did Lantz explain why she ignored all of the Moss Group Report's many factual findings.  But her testimony makes clear that is precisely what she did.

    Compounding Lantz's failure to learn the vast majority of facts in this case, was her refusal to answer hypothetical questions based upon the actual facts – completely undermining Plaintiffs' right to cross-examination.  For example, in her report, Lantz asserts that there was a properly documented chain of custody for the Pants, which were seized on May 10, 2013.  *See* Lantz Report at 20-21 (Kay Decl. Ex. 3).  When cross-examined, she admitted that she was unaware of the issues relating to the chain of custody for the Pants.  Lantz Dep. 155:10-13 (Kay Decl. Ex. 2).  But when she was told what those issues were – for example, the City's failure to document what happened to the Pants from May 10, when they were picked up from Jane Doe 2's cell, until May 14, when they were dropped off at the New York City Police Department ("NYPD"), and the evidence that the Pants were tampered with after they were seized and before they were given to the NYPD – Lantz refused to answer, saying only that, if she had known of those facts, "I'm not sure what conclusion I would have come up with."  *Id*. 155:18-156:12.  When pressed further, she refused to respond, saying that "I don't like to respond to hypothetical."  *Id*. 158:6-19.  And when told to assume that an expert (Plaintiffs' DNA expert, Julie A. Heinig, Ph.D.) found male DNA all over the pants, Lantz flat-out refused to accept that assumption.  *See id*. 158:25-160:10 ("Well, I'm not going to assume a response.").  Her consistent position was that she based her opinions "on what information [she] had at the time," *Id*. 165:16-18, and was not willing to answer any questions based on the assumption that the information she had at the time was incomplete.  *Id*. 155:3-165:24.  Yet, the information she had was demonstrably incomplete, and her refusal to accept assumptions based upon the actual facts eviscerated Plaintiffs' ability to cross-examine her based upon the actual facts in the case.

**II.**    **LANTZ HAS NO OPINION RELEVANT TO THE DAMAGES TRIAL**

Even if Lantz was in possession of "sufficient facts" to permit her, under Rule 702(b), to offer testimony in this damages trial, the opinions she provided are not relevant to this phase of the case. The City's liability for damages under *Monell* turns on the practices and procedures in place between 2011 and 2013 – the period during which Jane Doe 1 and Jane Doe 2 were being sexually abused and raped. The City conceded this precise point to the Court at the March 20 conference:

> The *Monell* proof that's required for the damages claims is proof that as of the date of those incidents, that is, 2012/13, city policymakers were on notice of misconduct in the hails and did nothing, despite the fact that they were on notice of a persistent widespread pattern of misconduct.

Tr. of Mar. 20, 2017 Court Conf. 22:16-21, ECF No. 312. As Mr. Ryan extensively explains in his report, the City was then on notice, and did nothing. For example, there were many complaints over many years that – apart from the two Plaintiffs – Santiago was sexually abusing RMSC women; some of those incidents are discussed in Mr. Ryan's report. Ryan Report ¶ 30 (Kay Decl. Ex. 1). Yet not once did the City even investigate these allegations, much less take any action to discipline Santiago. That is but one example, and it is clear evidence of deliberate indifference.

Lantz offers no opinion on whether – or not – the City's practices and procedures complied with constitutional requirements <u>when Plaintiffs were being raped and abused</u>. And, as the City conceded to the Court, the state of affairs at that time is what is relevant to the *Monell* damages claims. All Lantz does is opine on whether – today – further injunctive relief is needed

in order for the City to comply with the Prison Rape Elimination Act and to satisfy minimum

constitutional requirements.[4]  As she admitted:

> Q:      So is it fair to say that you're not opining on whether or
> not [the City had an adequate] commitment [to sexual safety] at the
> time the alleged sexual misconduct took place by Mr. Santiago?
> A:      Correct.

Lantz Dep. 84:12-16 (Kay Decl. Ex. 2).

> Q:      So it is fair to say that you disagree with Mr. Ryan's
> conclusions that there are problems a [RMSC] that need to be
> corrected?
> A:      Well, I think that they are [now] trying to address a
> multitude of issues in areas and some of them may be problems.
> Q:      And again, you're talking about what is going on today at
> the RMSC, not what was going on back [in] 2009 to 2012 or '13?
> A:      As far as?
> Q:      As far as your conclusions -- your criticisms of Mr. Ryan's
> report?
> A:      <u>I'm looking at where we're at today.</u>

*Id.* 289:13-290:2 (emphasis added).  Lantz thus has no opinion that is relevant to whether the

City is liable for damages under *Monell* for the rapes and sexual abuse Plaintiffs suffered.

To the degree that Lantz does offer an opinion regarding the City's handling of

Plaintiffs' abuse, it consists entirely of determinations as to the credibility of Plaintiffs and

unsupported lay inferences that are wholly improper for an expert opinion.  *See Snyder v. Wells*

*Fargo Bank, N.A.*, No. Civ. 4496(SAS), 2012 WL 4876938, at *4 (S.D.N.Y. Oct. 15, 2012)

(alteration in original) ("It is well established that '[e]xpert testimony is not relevant if the expert

is offering a personal evaluation of the testimony and credibility of others

. . . .'") (collecting cases).   Under Rule 702, expert testimony should be excluded where the

---

[4]       Lantz's opinions on the need for further injunctive relief also suffer from disabling defects.  They are, for example, based on the same incomplete record discussed above, and are premised largely not on facts but on her uncritical assumptions about what may happen in the future.  Plaintiffs do hope that the class claim will be tried, and that a remedy for the ongoing constitutional deprivations at RMSC will be presented to the Court for redress.  But only then will it be necessary to address the adequacy of Lantz's opinions on that subject.

expert opines on the credibility of a witness. *Nimely*, 414 F.3d at 397-98 ("[T]his court, echoed by our sister circuits, has consistently held that expert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702."). Such opinions are precluded because "an expert may not intrude on the jury's role in assessing credibility." *United States v. Jacques Dessange, Inc.*, No. S2 99 CR. 1182 DLC, 2000 WL 294849, at *2 (S.D.N.Y. Mar. 21, 2000).

In Lantz's own words, she viewed her role as an expert as looking for "any type of substantiation . . . related to what [Plaintiffs] may have said in their depositions." Lantz Dep. 66:3-22 (Kay Decl. Ex. 2). Simply, this is not expert analysis: rather, Lantz attempts to usurp the role of the jury by weighing the evidence – or at least the small amount of evidence she has reviewed – making credibility determinations, and ultimately deciding what she believes happened. This is entirely impermissible, as experts may not offer testimony "about what [they] believe[] actually happened or about the credibility of any witness." *Fate v. Village of Spring Valley*, No. 11 Civ. 6838(JPO), 2013 WL 2649548, at *6 (S.D.N.Y. June 13, 2013).

**CONCLUSION**

For the foregoing reasons, the Court should exclude the expert report and proposed

testimony of Theresa Lantz from the damages trial.


Dated: New York, New York
       April 17, 2017

                              CLEARY GOTTLIEB STEEN & HAMILTON LLP


                              By:  /s/ James L. Bromley
                                     James L. Bromley
                                     *jbromley@cgsh.com*

                                     One Liberty Plaza
                                     New York, New York 10006
                                     Tel: (212) 225-2000
                                     Fax: (212) 225-3999

Of Counsel:
Mitchell A. Lowenthal
*mlowenthal@cgsh.com*
Josh E. Anderson
*jeanderson@cgsh.com*


                                     William D. Gibney
                                     *wdgibney@legal-aid.org*
                                     Marlen S. Bodden
                                     *mbodden@legal-aid.org*
                                     Barbara P. Hamilton
                                     *bphamilton@legal-aid.org*
                                     THE LEGAL AID SOCIETY
                                     199 Water Street, 6th Floor
                                     New York, New York 10038
                                     Tel: (212) 577-3300

                                     *Attorneys for Plaintiffs*