UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

JANE DOE 1 and JANE DOE 2,

                                    Plaintiffs,

                        -against-

THE CITY OF NEW YORK, et al.,

                                    Defendants.

-------------------------------------------------------------------- X

**DEFENDANT CITY OF NEW YORK'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTIONS *IN LIMINE***

15-CV-3849 (AKH)

## PRELIMINARY STATEMENT

Defendant City of New York respectfully submits this memorandum of law (with attachments) in opposition to plaintiffs' six separate motions *in limine*.  As more fully set forth below, the relief plaintiffs seek should be denied except that the City will not call as trial witnesses in the damages phase its corrections practices expert, Theresa Lantz, and will not call some of the witnesses whom plaintiffs assert were "undisclosed."   For these reasons, plaintiffs' motion to exclude Ms. Lantz's testimony (Dkt. 334-36) is moot, and their motion to preclude "undisclosed" witnesses (Dkt. 340-42) is partially moot.  We address each of plaintiffs' motions below in the order in which they were filed on the ECF Docket.  We address the question of trial sequencing in a separate brief filed simultaneously herewith.

## ARGUMENT

**I.     Each Plaintiff's Entire Criminal History is Admissible (Dkt. 331-33)**

Plaintiffs seek to exclude all evidence of their extensive criminal histories on the grounds that the evidence is not admissible under Fed. R. Evid. 609, and even if admissible, the evidence should be excluded because its probative value is outweighed by unfair prejudice, *see* Fed. R. Evid. 403.  (Dkt. 331-33)  Plaintiffs do not address the relevance of their arrests and criminal

convictions to their damages claims for emotional and psychological distress, and post-traumatic stress disorder ("PTSD") which is supported by expert opinion.

As shown below, two of REDACTED felony convictions (Robbery, 1st Degree, and Criminal Possession of Stolen Property, 4th Degree) and two of REDACTED felony convictions (Sex Trafficking, 1st Degree; and embezzlement) are admissible under Fed. R. Evid. 609.  In addition, cross-examination as to certain matters included within their criminal histories – such as their use of false names when arrested, which both plaintiffs admitted they did– is appropriate under Fed. R. Evid. 608(b).  Finally, both REDACTED and REDACTED criminal history is admissible with regard to their damages claims.  Their own expert Dr. Karen Rosenbaum refers to both plaintiffs' criminal history as relevant to assessing the extent of their alleged PTSD.

A.     **Governing Standards – Witness Credibility**

Felony convictions "must be admitted" subject to balancing under Rule 403.  Fed. R. Evid. 609(a)(1)(A).  "[I]nquiry into the essential facts of the conviction, including the nature or statutory name of each offense, its date, and the sentence imposed is presumptively *required* by the Rule, subject to balancing under Rule 403."  *United States v. Estrada*, 430 F.3d 606, 616 (2d Cir. 2005) (emphasis added).  "In conformity with Rule 403, unless the risk of unfair prejudice, confusion, or delay *substantially* outweighs the probative value of a felony conviction, it is the jury's function to assess the probative value of a witness's specific conviction or convictions as part of its overall evaluation of the witness's credibility."  *Id*. at 616-17 (emphasis added).  "Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully."  *Id*. at 617 (citation omitted).

"When performing the Rule 403 analysis under Rule 609(a)(1), district courts are admonished to consider that Rule 609(a)(1) crimes, which do not bear directly on honesty such

as to be automatically admissible under Rule 609(a)(2), may nonetheless be highly probative of credibility." *Id.* at 618. In this connection, "theft crimes, and other crimes involving stealth … bear on a witness's propensity to testify truthfully," as do "crimes requiring planning or preparation … because planning indicates deliberate and injurious violation of basic standards rather than impulse or anger, and usually it involves some element of deceiving the victim." *Id.* (citation and internal quotes omitted).

Under Rule 609(a)(2), "for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving – or the witness's admitting – a dishonest act or false statement." Fed. R. Evid. 609(a)(2). This provision mandates admission of crimes that are "'peculiarly probative of credibility,' such as those for … embezzlement, or false pretense, or any other offense in the nature of *crimen falsi* ….'" *Id.* at 616 (quoting Conference Report [H.R. Conf. Rep. No. 93-1597, 2d Sess., at 9 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7098, 7103)). Crimes falling within this rule must be admitted, without balancing, and without regard to whether the crime was a felony or misdemeanor, because such crimes are "*per se* probative of credibility." *Id.* at 615.

Because credibility is the central issue in this case, all evidence relevant to credibility should be admitted. "When a case would be narrowed to the credibility of two persons – the accused and his accuser – in those circumstances there is greater, not less, compelling reason for exploring all avenues which would shed light on which of the two witnesses is to be believed." *United States v. Ortiz*, 553 F.2d 782, 785 (2d Cir. 1977); *cf. Brundidge v. City of Buffalo*, 79 F. Supp. 2d 219, 226 (W.D.N.Y. 1999) (admitting drug sale and possession convictions in civil rights case, holding that resolution of the case "will rest on which side the jury finds most credible," and that "plaintiff's credibility on the stand and the credibility of her witnesses are …

matters of great importance and outweigh any prejudice that may result" from admission of
convictions).

**B.**   REDACTED **("Jane Doe 1")**

REDACTED (hereafter "Jane Doe 1" or "JD-1") has been arrested over thirty (30) times
and convicted approximately 19 times (*see* Dkt. 332, at pages 2-4; Exhibit A [certificates of
disposition]).  Two of these convictions are admissible under Rule 609, and other matters related
to those two convictions, as well as other arrests and convictions, may be inquired into on cross-
examination under Rule 608.  In addition, all of the convictions and the facts underlying those
convictions are independently admissible because they are relevant to JD-1's damages claims.

**1.**   **Convictions and Related Matters Admissible as to Credibility**

JD-1's most recent conviction is for Robbery, 1st Degree, and arises out of her
participation in the murder of REDACTED in September, 2011.  She was convicted on May 20,
2015, and sentenced to a determinate term of thirteen (13) years' imprisonment.  (Exhibit A,
page 1)  The facts involve premeditation and her intent to deceive the murder victim.  She "set
up" the victim, her boyfriend, so that she and a third party named REDACTED could steal his
car:  She "arranged the meeting between [REDACTED] so that Mr. REDACTED and [JD-1] could
rob Mr. REDACTED …."  (Dkt. 330-3 [guilty plea], at page 4, ll. 21-24) REDACTED ended up stabbing
REDACTED to death inside the car while JD-1 was sitting in the back seat.  After REDACTED murdered
REDACTED, JD-1 got into the driver's seat and stole the car.  She was later arrested in possession of
the stolen car.  (Exhibit B [JD-1 deposition excerpts] at 108)

The governing rules mandate admission of the robbery conviction and the key facts
underlying that conviction.  "The general rule in the Second Circuit … is that robbery
convictions are admissible as probative of a witness's honest character."  *United States v. Steele*,

15-CR-836 (VM), 2016 U.S. Dist. LEXIS 150867, *17 (S.D.N.Y. Oct. 20, 2016) (admitting robbery conviction under Rule 609(a)(1)); *United States v. White*, 81 Fed. R. Evid. Serv. (Callaghan) 243 (S.D.N.Y. 2009) (admitting robbery conviction that involved premeditation and deceiving the victim), *vacated on other grounds*, 692 F.3d 235 (2d Cir. 2012); *United States v. Stevens*, 65 Fed. R. Evid. Serv. (Callaghan) 334 (S.D.N.Y. 2004) ("Robberies by their very nature involve dishonesty and thus have an impact on the integrity and credibility of a witness. The probative value of admitting any robbery conviction, or attempted robbery conviction outweighs its prejudicial effect").

In connection with the robbery, moreover, JD-1 admitted that she "set up" her boyfriend so that she and a third party, REDACTED, could steal his car.  (Dkt 330-3, at page 4)  After REDACTED killed her boyfriend, she drove off in the car.  She gave two written statements to police stating that she knew REDACTED was going to "jux" (i.e., stab) REDACTED to take his car.  (Exhibit C [JD-1 statements])  These facts are admissible to show premeditation and her intent to deceive REDACTED, her boyfriend at the time.  *See Estrada*, 430 F.3d at 616-18.  We submit that cross-examination regarding these facts and use of her statements if necessary, either to refresh her recollection or as evidence, is appropriate.  *Cf. Blake v. Coughlin*, No. 99-0208, 2000 U.S. App. LEXIS 2290, *4-5 (2d Cir. Feb. 16, 2000) (murder conviction admissible in Section 1983 lawsuit where plaintiff "feigned a suicide in order to throw the police off his trail, changed his appearance and his name, and moved three times over the ensuing seven weeks" after the crime).

JD-1's next-most-recent conviction is for Criminal Possession of Stolen Property, 4th Degree ("CPSP"), a Class E felony (Exhibit A, page 2).  She was convicted on August 3, 2011, and sentenced to six months in jail followed by five years of probation.  (*Id.*)  She stole a 2007 Nissan Sentra, drove recklessly with her niece in the front seat, and when she was pulled over,

she lied to the police by telling them that her friend sold her the car.  (<u>Exhibit B</u>, at 100:2-9, 105:8-24)  She said she was "having fun, driving around" with her niece.  (*Id*. at 101)

The rules also mandate admission of the CPSP, 4th Degree, conviction.  "Courts in the Second Circuit have held that convictions for … possession of stolen property [are] appropriate to evaluate a witness' truthfulness."  *Jones v. City of New York*, 98-CV-6493 (LBS), 2002 U.S. Dist. LEXIS 2052, *6-7 (S.D.N.Y. Feb. 11, 2002) (citing *United States v. Hourihan*, 66 F.3d 458, 464 (2d Cir. 1995); Fed. R. Evid. 609(a)(1)).  The underlying facts, likewise, are admissible. JD-1 admits that she stole the car from someone who she had been driving with, and then lied to the police when they pulled her over.  (<u>Exhibit B</u>, at 100:2-9, 105:8-24)

Apart from these two convictions, JD-1 admits to other acts that may be inquired into on cross-examination as relevant to her credibility.  Rule 608(b) allows inquiry into "specific instances of a witness's conduct in order to attack … the witness's character for truthfulness." Fed. R. Evid. 608(b).  Admission of such evidence is subject to balancing under Rule 403.  *See generally United States v. Desposito*, 704 F.3d 221, 233-34 (2d Cir. 2013) (allowing cross-examination of defendant even though subject matter was "previously inadmissible"); *United States v. Jones*, 900 F.2d 512, 521 (2d Cir. 1990).

JD-1 admits to using false names (Mia Wilson and Leah Walker) when she was arrested on prior occasions.  (<u>Exhibit B</u>, at 14-16)  On one such occasion there was a warrant outstanding for her arrest.  (*Id*. at 16)  Cross-examination regarding aliases is routinely permitted, especially when the witness used the alias when dealing with law enforcement.  *See, e.g., Manigault v. City of New York, et al.*, 11-CV 4307 (LAK), Order dated July 10, 2012 (Dkt. 63, at page 5); *Fletcher v. City of New York*, 54 F. Supp. 2d 328, 333 (S.D.N.Y. 1999) (evidence of plaintiff's aliases admissible under Rule 608); *Young v. Calhoun*, 85 Civ. 7584, 1995 U.S. Dist. LEXIS 4555, at

*15 (S.D.N.Y. Apr. 7, 1995) (finding the use of plaintiff's pseudonyms probative of his truthfulness). As one circuit recognized, "[i]f a man lies about his own name, might he not tell other lies? The use of an alias bears directly on the question of plaintiff's credibility and truthfulness." *Lyda v. United States*, 321 F.2d 788, 793 (9th Cir. 1963). "Courts in the Second Circuit have consistently held that a witness' use of false names or identities is the proper subject of cross-examination under Rule 608." *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 551 (E.D.N.Y. 2011) (citation and internal quotes omitted).

JD-1 also admitted to stealing cars on one other occasion apart from the two that resulted in felony convictions. She stole a car and a credit card inside the car (Exhibit B, at 98-99), another "specific instance" of conduct that bears on her truthfulness. As noted above, when she stole the Nissan Sentra in 2011, she told the police that her friend sold her the car, and admits that this statement was a lie. Cross-examination into her car theft and lying to the police is appropriate under Rule 608(b), especially since she also claims that her "memory is shot" and that she is "just bad with memory" (Exhibit B, at 59; Exhibit G [Rosenbaum Report], at page 11 (JD-1 "has difficulty with memory for dates and for details")). *See Jones*, 900 F.2d at 521 (allowing cross-examination of prior false statements where witness "could not remember important facts" because false statements "tend to undermine defendant's innocent explanation").[1]

JD-1 also admits to assaulting police officers and biting police officers twice. (Exhibit B, at 97) On one occasion she sent an officer to the hospital with bite marks, telling her, "Fuck you white bitch" in the process. (Exhibit D [criminal court complaint, arrest report 6/22/08]) She

---

[1] JD-1 was found by court-appointed examiners to have exaggerated her claimed memory loss when she was facing charges for having participated in the murder of her ex-boyfriend. (Dkt. 330-5 [CPL § 730 Report])

resisted arrest either by flailing her arms or more aggressive behavior almost every time she was arrested.  (We will have copies of the criminal complaints and arrest reports at the pre-trial conference.)  At the same time, she claims that she did not report Santiago's alleged misconduct because he is an "authority figure."  When asked to explain, she said that Santiago "ha[d] the upper hand … [he] got control of everything."  (Exhibit B, at 79-80)

Her conduct biting officers and violently resisting arrest – as well as her lying repeatedly to the police – undermines her claim that she is afraid of authority, and cross-examination and proof by extrinsic evidence of these facts should be admitted.  The doctrine of "impeachment by contradiction … provides that when a witness puts certain facts at issue in his testimony, the [adversary] may seek to rebut those facts, including by resorting to extrinsic evidence if necessary."  *United States v. Ramirez*, 609 F.3d 495, 499 (2d Cir. 2010); *see generally* Fed. R. Evid. 608, Advisory Committee Note, 2003 Amendment (Rule 608(b) "leaves the admissibility of extrinsic evidence offered for other grounds of impeachment (such as contradiction, prior inconsistent statement, bias and mental capacity) to Rules 402 and 403").  Extrinsic evidence is admissible if "the prior testimony being contradicted was itself material to the case at hand." *United States v. Rodriguez*, 539 F. Supp. 2d 592, 595 (D. Conn. 2008) (quoting *United States v. Perez-Perez*, 72 F.3d 224, 227 (1st Cir. 1995)).

JD-1 will put in issue the alleged fact that she was scared of Santiago because he was an "authority figure" – a rote description she gave at deposition, and on which she could not elaborate except to repeat that he had the "upper hand" and "control of everything."  Her testimony about her alleged fear of authority figures is therefore "material" to her case and impeachment by contradiction, through extrinsic evidence, is admissible.

JD-1 also offered sexual favors and bribes to police officers in order to avoid arrest (Exhibit B, at 93-94), matters that are admissible to impeach her supposed "fear of authority" as well as her credibility.  Fed. R. Evid. 401, 403, 608.  In or about July, 2007, she falsely told the police her name was "Mia" REDACTED , but when the arresting officer informed her that giving false information was a crime she admitted that she lied.  (At the time, there was a warrant outstanding for her arrest.)  She then told the officer that her boyfriend "will pay to get me out of here right now," apparently offering the officers $450.00, and then told the officers she would give them blowjobs all week if they let her go.  (Exhibit F [criminal complaint])  She admitted these material facts at deposition.  (Exhibit B, at 93-94, 96)  We submit that cross-examination on these matters is relevant to credibility and her claim that she supposedly fears authority.  *See* Fed. R. Evid. 402, 608.

## 2.   Convictions and Related Matters Admissible as to Damages

Federal courts generally hold that where a plaintiff alleges severe emotional distress damages in a Section 1983 lawsuit, prior arrests and encounters with law enforcement are admissible to prove other causes of the alleged emotional distress.  *E.g., Udemba v. Nicoli*, 237 F.3d 8, 15 (1st Cir. 2001) (where plaintiff alleged emotional distress due to false arrest, prior arrest "had obvious probative worth as to the nature and extent of the ensuing damages"); *Lewis v. District of Columbia*, 793 F.2d 361, 363 (D.C. Cir. 1986) (drug use and prior arrests admissible as relevant to damages); *Karnes v. Skrutski*, 62 F.3d 485, 500 (3d Cir. 1995) (admitting prior arrest where plaintiff testified that alleged false arrest "diminished his respect for the police and thus caused him damage").  *See generally Halvorsen v. Baird*, 146 F.3d 680, 686 (9th Cir. 1998) ("If a person's damages are, 'I was extremely upset by the event,' then

evidence of similar events before and after the one at issue may support an inference that part or all the distress was attributable to the other events").[2]

Plaintiff's damages expert, Karen Rosenbaum, M.D., discusses JD-1's arrests, criminal convictions, and her drug and alcohol abuse extensively in her report (copy attached as Exhibit G). Her diagnoses are that JD-1 suffers from six separate conditions, four of which have nothing to do with any alleged sexual abuse by Santiago: Borderline Intellectual functioning (per history), Cocaine Use Disorder, Cannabis Use Disorder, and Alcohol Use Disorder (Exhibit G, at page 10). The last three disorders are "in remission" solely because JD-1 has been incarcerated for the past six (6) years without access to drugs or alcohol. A fifth condition, Schizoaffective Disorder, was also pre-existing. (*Id*. at 11) She concludes that Santiago's alleged abuse "worsened her pre-existing conditions and *contributed* to the co-morbid condition" of PTSD. (*Id*.; emphasis added)

Significantly, she does not conclude that Santiago's alleged abuse is the sole cause of PTSD. Plainly, other traumas – including her history of prostitution, drug and alcohol abuse, and her involvement in, and witnessing, the murder of her boyfriend at close range – also "contributed" to her alleged PTSD. The DSM-V criteria for PTSD, for example, specifically includes "exposure to … death" including by "witnessing, in person, the event as it occurs to others." (DSM-V, Diagnostic Criteria 309.81 (F43.10))

In contrast, the City's expert, Dr. Lopez-Leon, concludes that JD-1 does not suffer from PTSD but is malingering for secondary gains. According to Dr. Lopez-Leon, JD-1 "has a very long history of severe psychiatric problems complicated by substance use disorders, significant

---

[2] Courts in this district have held that prior criminal convictions are admissible as 404(b) evidence on the issues of causation and damages in Section 1983 lawsuits. *E.g., Stephen v. Hanley*, 79 Fed. R. Evid. Serv. (Callaghan) 875, 2009 U.S. Dist. LEXIS 43334, *26-28 (E.D.N.Y. May 21, 2009) (citing cases).

psychologically traumatic experiences, and legal difficulties, that precede the alleged sexual

abuse while she was detained at RMSC."  (Dkt. 330-6 [Lopez-Leon Report, Defendant's

Memorandum of Law in Support of Motions in Limine, Exh. F], at page 2)  She has undertaken

multiple suicide attempts, three that occurred long before any claimed "abuse" by Santiago, and

one during 2016, which occurred after her father told her he had lung cancer.  (*Id.* at 18-19)  She

is "exaggerating" psychiatric symptoms – telling Dr. Lopez-Leon at one point that she "has

PTSD" because of Santiago.  (*See id.*)

Dr. Rosenbaum attributes JD-1's purported PTSD to Santiago's "rapes" and Dr. Lopez-

Leon disagrees.  Both experts, however, acknowledge that JD-1 suffered many traumas before

she ever met Santiago, and suffered other traumas afterward.  JD-1's criminal record is evidence

of these clinically significant traumatic events and other mental illnesses.  In these

circumstances, the jury is entitled to hear all of the evidence and weigh the expert's opinions.

*See generally United States v. Matera*, 489 F.3d 115, 121-22 (2d Cir.), *cert. denied*, 552 U.S. 969

(2007) (approving trial judge's instruction that expert testimony "should not substitute for the

jury's own reason, judgment and common sense").

   **C.**  **REDACTED**  **("Jane Doe 2")**

  **REDACTED**  (hereafter "Jane Doe 2" or "JD-2") has been arrested over twelve (12)

times and convicted approximately 12 times (*see* Dkt. 332, at 4-6).  Two of these convictions are

admissible under Rule 609, and other matters related to those two convictions, as well as other

arrests and convictions, may be inquired into on cross-examination under Rule 608.  In addition,

all of the convictions and the facts underlying those convictions are independently admissible

because they are relevant to JD-2's damages claims.

1.      **Convictions and Related Matters Admissible as to Credibility**

JD-2's most recent conviction is for Sex Trafficking, and arises out of her participation in luring two young women, one aged 19 and one aged 20, between November 7, 2012 and December 1, 2012, to a home in Queens for the purposes of profiting from prostitution by instilling fear in them that if they did not engage in prostitution they would be physically harmed. JD-2 pled guilty on May 28, 2013, and was sentenced June 11, 2013 to a term of one to three years. She, along with her co-defendant intentionally advanced and profited from prostitution by means of instilling fear in a person that did not engage in this prostitution that she could be physically harmed. (Exhibit K [5/28/13 Plea Minutes])

The facts underlying this conviction involve premeditation and JD-2's intent to deceive the two victims of sex trafficking. *See Estrada*, 430 F.3d at 618. JD-2's conviction is further admissible because crimes involving "sex abuse of children in the witness's care" may be admissible under Rule 609(a)(1) as probative of credibility. *Id.*. The victims of JD-2 sex trafficking crime were at the time 19 and 20 years-old. Here, the jury will be tasked with weighing the credibility of JD-2 against the credibility of co-defendant Santiago, and therefore the witnesses' credibility is of paramount importance, and the probative value clearly outweighs any prejudice to JD-2.

JD-2's next-most-recent conviction is for Embezzlement which occurred on or about July 23, 2008 (Exhibit L [JD-2 deposition excerpts], at 59-61). While an employee of a store in North Carolina, JD-2 stole jewelry from the store called The Painted Daisy. (*Id.*) Pursuant to Fed. R. Evid. 609(a)(2), JD-2's conviction for embezzlement, a crime of dishonesty, must be admitted without regard to balancing or whether the crime was a felony or misdemeanor, because such

crimes are "*per se* probative of credibility." *Estrada*, 430 F.3d at 615.  The conviction is less than ten (10) years old which renders it admissible under the Rule.

Similar to JD-1, *supra*, apart from JD-2's convictions she admitted at her deposition to other acts that may be inquired into on cross-examination as relevant to her credibility.  JD-2 admits to using false names (Tamika Jones, Denise Williams, and Darier Williams), birth dates, and social security numbers in an attempt to prevent the police from learning of her true identity when she was arrested on prior occasions.  (Exhibit L, at 20-24)  As discussed *supra*, cross-examination regarding aliases is routinely permitted, especially when the witness used the alias when dealing with law enforcement (*see* Point I-B-1, above).  We submit that cross-examination on these matters is relevant to credibility.  *See* Fed. R. Evid. 402, 608.

Defendants should be permitted to question JD-2 on one further arrest that bears on her credibility and truthfulness under Fed. R. Evid. 608.  On July 6, 2016, during the pendency of this lawsuit, JD-2 was arrested again, and charged with Grand Larceny in the 4th degree and Criminal Possession of Stolen Property in the 4th degree.  According to information in the file, JD-2, along with three (3) others, worked in concert to "strip," or disassemble, a car that was reported stolen on June 20, 2016.  JD-2 made admissions that she was present when the van was stolen and that she knew it to be stolen.  In that case JD-2 was offered the opportunity to take a plea to petit larceny, possession of stolen property, or unauthorized use of a vehicle.  She chose to plea to unauthorized use and an additional charge of disorderly conduct.

JD-2 admitted in Court that "on or about July 6, 2016, here in Queens, New York [she] w[as] exercising control over a motor vehicle without proper permission and also acting in a disorderly manner."  JD-2's sentence was 10 days of community service and a conditional discharge.  If JD-2 failed to complete the community service she would receive a sentence of

three (3) years' probation.  JD-2 acted in concert with others, by stealth, to "strip" a stolen

vehicle, no doubt to sell the parts.  Defendants have a good faith basis to cross-examine about

this incident pursuant to Fed. R. Evid. 608 – her arrest occurred after her deposition in this case,

so defendants could not ask her about it at that time.

### 2.      Convictions and Related Matters Admissible as to Damages

Plaintiff's damages expert, Karen Rosenbaum, M.D., discusses JD-2's arrests, criminal

convictions, her prior trauma history of childhood abuse, hospitalizations, depression, mood

instability, and suicide attempts, all which predate JD-2's allegations against co-defendant

Santiago (copy attached as Exhibit M).  Her diagnosis is that JD-2 suffers from PTSD.  (Exhibit

M, at page 10)  She concludes that JD-2's PTSD symptoms "developed and have persisted in the

aftermath of Santiago sexually assaulting her in jail" and that her trauma history "made her

vulnerable to the development of PTSD." (*Id.*, at page 13)  According to Dr. Rosenbaum, JD-2

first developed PTSD as a minor.  (*Id*. at 14-15)

Significantly, Dr. Rosenbaum does not conclude that Santiago's alleged abuse (assuming

it happened) is the sole cause of JD-2's PTSD.  She acknowledges that other traumas that pre-

date her alleged involvement with Santiago – including a traumatic childhood environment,

depression, and suicide attempts – caused her to develop "PTSD symptoms for the first time,

which led to her hospitalizations."  *Id*.

Dr. Rosenbaum attributes exacerbation of JD-2's purported PTSD to Santiago's "sexually

assaulting her in jail."  The City's expert, Dr. Fayer, disagrees.  Both experts, however,

acknowledge that JD-2 suffered many traumas before she ever met Santiago, and suffered other

traumas afterward.  Like JD-1, JD-2's criminal record is evidence of these clinically significant

traumatic events and other mental illnesses.  In these circumstances, the jury is entitled to hear all

of the evidence and weigh the expert's opinions.  *See Matera*, 489 F.3d 115 at 121-22 (expert testimony "should not substitute for the jury's own reason, judgment and common sense").

### D.    Naseka Browne (Non-Party Witness)

Naseka Browne was convicted of Robbery, 2nd Degree, in or about 2011.[3]  As noted above, robbery convictions are admissible under Rule 609(a)(1).  *Estrada*, 430 F.3d at 618 ("theft crimes … bear on a witness's propensity to testify truthfully"); *Steele*, *supra*, at *17 (admitting robbery conviction); *White, supra* (same); *Stevens, supra* (same).  We reserve the right to cross-examine Ms. Browne, if she testifies, as to specific instances of her conduct if warranted under Rule 608(b).  We will make a proffer before she testifies if necessary.

## II.    Plaintiffs' Motion to Exclude Theresa Lantz is Moot (Dkt. 334-36)

The City will not call Theresa Lantz on the damages phase of the case, so plaintiffs' motion to exclude her is moot, at this time.  We reserve the right to call Ms. Lantz if plaintiffs' expert Timothy Ryan testifies in the damages phase about *current* jail conditions – as opposed to jail conditions prior to 2013 – and thereby opens the door to rebuttal expert testimony.

## III.    Plaintiffs' Motion to Exclude Dr. Lopez-Leon Should be Denied (Dkt. 337-39)

Plaintiff moves to exclude Dr. Manuel Lopez-Leon's testimony, *inter alia*, because he did not review the entirety of Jane Doe 1's medical records, arguing that his testimony must be excluded because it is not based on "sufficient facts or data" as required by Fed. R. Evid. 702. (*See* Dkt. 339 [Memorandum of Law in Support of Plaintiff's Motion *in Limine* to Exclude the Expert Report and Proposed Trial Testimony of Manuel Lopez-Leon, M.D. ("Lopez-Leon M.I.L.")], at Section I).  For the reasons that follow, Plaintiff's argument should be rejected.

---

[3] http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ3/WINQ130

Federal Rule of Evidence 702 ("Rule 702") provides that an expert may testify as to his or her opinion "only if (a) the expert's…knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

The burden is on the proponent of the expert to demonstrate the qualifications of the proposed expert; "[r]ejection of expert testimony, however, is still "the exception rather than the rule." *Figueroa v. Bos. Sci. Corp.*, 254 F. Supp. 2d 361, 366 (S.D.N.Y. 2003) (quoting Fed. R. Evid. 702 advisory committee's note (2000 Amendments)); *see also*, *Sorto-Romero v. Delta Int'l Mach. Corp.*, No. 05-CV-5172 (SJF) (AKT), 2007 U.S. Dist. LEXIS 71588, at *11 (E.D.N.Y. Sep. 24, 2007). This is because "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Id.* (citing *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996); *Lippe v. Bairnco Corp.*, 288 B.R. 678, 685-87 (S.D.N.Y. 2003)).

### A. Dr. Lopez-Leon's Opinion is Based on Sufficient Facts or Data, and is Reliable and Relevant to the Issue of Jane Doe 1's Alleged Damages

Plaintiff argues, at length, that because Dr. Lopez-Leon only reviewed a portion of Jane Doe 1's medical history his opinion is inadmissible. (Lopez-Leon M.I.L., at Section I.A) This ignores the obvious fact, which Dr. Lopez-Leon can explain to the jury, that not all medical documentation is equally relevant, useful, or even applicable to Dr. Lopez-Leon's analysis. Moreover, Dr. Lopez-Leon reviewed the expert report of Dr. Rosenbaum, which describes in detail the key entries in JD-1's medical records that were relevant to her analysis (*see* Exhibit G). And in making her argument, Plaintiff does not even reference the two-hour forensic-interview that Dr. Lopez-Leon conducted with Jane Doe 1 on December 21, 2016, in order to form his

opinion and prepare his report.  (*See*, Lopez-Leon M.I.L., at Sec. I.A; Forensic Psychiatric

Report of Dr. Manuel Lopez-Leon ("Lopez-Leon Report"), "Sources of Information," p. 2).

Rule 702's requirement that an expert base his or her opinion on "sufficient facts or data"

does not require the Court to certify that an expert has reviewed every piece of potentially

relevant evidence before offering an opinion; rather, "under *Daubert*, trial courts are charged

with a 'gatekeeping' function to ensure that scientific expert testimony is reliable and 'relevant to

the task at hand.'"  *Benjumen v. AES/Charter Bank (In re Benjumen)*, 408 B.R. 9, 18 (Bankr.

E.D.N.Y. 2009) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)).

Under *Daubert*, the key inquiry is whether the expert has "employ[ed] in the courtroom the same

level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*

*Tire Co. v. Carmichael*, 526 U.S. 137, 147-148 (1999).  The question is not whether Dr. Lopez-

Leon reviewed all the records that he could have, but rather, did Dr. Lopez-Leon in preparing his

opinion and report rely on sufficient facts or data to satisfy his professional obligations.  The

answer to this properly stated question is in the affirmative.

Dr.Lopez-Leon is certified as a forensic psychiatrist by the American Board of Psychiatry

and Neurology, and serves as a clinical professor of psychiatry at the New York University

School of Medicine. (Exhibit H [Lopez-Leon Report & *Curriculum Vitae*], at page 1).  In

preparing his opinion, Dr. Lopez-Leon reviewed a portion of Jane Doe 1's medical records, and

then reviewed a report by Plaintiff's expert which concluded that Jane Doe 1 suffered Post-

Traumatic Stress Disorder ("PTSD") as a result of the alleged sexual assaults by C.O. Santiago.

(Lopez-Leon M.I.L., at Section I.B, p. 6).  Dr. Lopez-Leon did not merely review medical

records in this case, however.  Instead, after gleaning the necessary and relevant background

information, he interviewed Jane Doe 1 for two hours, and formed his opinion based on the

clinical impressions he formed in that interview, as informed by the background medical records. (Exhibit I [Deposition of Dr. Manuel Lopez-Leon ("Lopez-Leon Dep."), Feb. 6, 2017], at 52: 5-11] ("Q. Why [did you not request additional records?" "A....the information that I had was sufficient for me to use as a -- to have a background understanding of the individual before I interviewed her"); *see also*, *id.*, at p. 55: 15-18 ("Q. You looked at records for about an hour, hour and 15, right, minutes. Is that enough preparation to conduct a forensic examination?" "A In this case...yes, I felt that I had the information that I needed. Not to give an opinion but to go in to the interview and gather my own information."). Further, that interview was not informal, but a forensic psychiatric examination in which Dr. Lopez-Leon conducted specific psychological testing regarding malingering and PTSD. (Id., at p. 193:1-11).

It is clear that Dr. Lopez-Leon predicated his opinion on the interview with Jane Doe 1, as informed by the background information gleaned from medical records, by the fact that he did not form his opinion or even begin to draft his report before it.  (Lopez-Leon Dep., at p. 55: 15-25; id., at p. 145: 4-10 ("Q. As the record stands, do you think you would be able to make -- you had sufficient information to make such diagnosis?" "A. I would say, yes." "Q. And would it have been made according to medical standards?" "A Yes.")).[4]

The question for the Court is whether, based on the approximately 45 pages of medical records Dr. Lopez-Leon reviewed, in addition to reviewing Dr. Rosenbaum's report which set forth in detail key entries in JD-1's medical records, and conducting a two-hour forensic-interview of Jane Doe 1, his report is sufficiently reliable so as to render his opinion admissible. The answer is clearly in the affirmative.  *See*, *Shea v. Long Island R.R. Co.*, 2009 U.S. Dist.

---

[4] To the extent that Plaintiff seeks to argue that the City of New York improperly sought to limit the scope of information available to Dr. Lopez-Leon, the fact that he had sufficient information to form a professionally valid opinion renders the argument moot.  (See, Lopez-Leon M.I.L., at Sec. I. B, p. 6)

LEXIS 43748, at *6 (S.D.N.Y. May 20, 2009) (admitting a psychiatric experts opinion that Plaintiff had fully recovered from alleged PTSD based solely on a review of medical records and clinical interview) (cited with affirmation *Karam v. Cnty. of Rensselaer*, No. 1:13-cv-01018 (MAD/DJS), 2016 U.S. Dist. LEXIS 68460, at *12 (N.D.N.Y. May 25, 2016) (admitting an expert opinion based on review of medical records and interviews); *C.f.*, *Benjumen v. AES/Charter Bank (In re Benjumen)*, 408 B.R. 9, 14 (Bankr. E.D.N.Y. 2009) (admitting expert testimony based on an interview and several tests to assess an individual's capacity to return to work).

**B.     To the Extent any of Dr. Lopez-Leon's Bases for his Opinion Are Contradicted, that is Properly Reserved for Cross Examination**

Plaintiff next argues that because they have identified contradictory evidence regarding some of the bases for Dr. Lopez-Leon's conclusions his report must be excluded.  (Lopez-Leon M.I.L., at Sec. I.C)  This misses the point, "[r]ejection of expert testimony… [is] "the exception rather than the rule." *Figueroa v. Bos. Sci. Corp.*, 254 F. Supp. 2d 361, 366 (S.D.N.Y. 2003) (quoting Fed. R. Evid. 702 advisory committee's note (2000 Amendments)); *see also*, *Sorto-Romero v. Delta Int'l Mach. Corp.*, No. 05-CV-5172 (SJF) (AKT), 2007 U.S. Dist. LEXIS 71588, at *11 (E.D.N.Y. Sep. 24, 2007).  "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Id.* (citing *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996); *Lippe v. Bairnco Corp.*, 288 B.R. 678, 685-87 (S.D.N.Y. 2003)).  Thus, to the extent that Dr. Lopez-Leon's report is not fully encompassing, as noted *supra*, the appropriate remedy is thorough cross-examination not exclusion. *Blanchard v. Eli Lilly & Co.*, 207 F. Supp. 2d 308, 318 (D. Vt. 2002) ("vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof enable jury to

weigh shaky but admissible evidence") (citing *Daubert*, 509 U.S. at 596; *Ambrosini v. Labarraque*, 101 F.3d 129 (D.C. Cir. 1996)).

Further, Plaintiff attempts to argue that the alleged discrepancies, for which they offer no citations to the record, in conjunction with the allegedly insufficient facts or data founding Dr. Lopez-Leon's opinion render his conclusions a series of *non-sequiturs* and inadmissible. However, because Dr. Lopez-Leon's opinion and report are based on sufficient facts and data (*supra*, Section I.A), and because the appropriate means of challenging an expert's report for inconsistencies and inadequacies is cross-examination (*supra*), this argument fails.

For the foregoing reasons Dr. Lopez-Leon's opinions are properly admitted within the scope of Rule 702.

### C.      Dr. Lopez-Leon's Opinion That JD-1 is Malingering is Admissible

Plaintiff also argues that Dr. Lopez-Leon's opinions must be excluded because it contains inadmissible credibility evidence, viz., Dr. Lopez-Leon concludes that JD-1 is malingering. (Lopez-Leon M.I.L., at Section II).  But evidence of malingering has long been recognized as admissible in cases where plaintiffs claim injuries.

Plaintiff argues that *Nimely* and the prohibition on experts offering testimony regarding a witness's credibility bars the testimony of Dr. Lopez-Leon.  (See, Lopez-Leon M.I.L., at Sec. II.A); *Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005).  However, Plaintiff fails to distinguish *Nimely* and its progeny, which bar expert testimony as to their views on a witness's credibility and the veracity of the alleged underlying event(s), from the distinct medical diagnosis of malingering.

As many courts have held since *Nimely*, malingering is admissible evidence. *See*, *e.g.*, *D'Attore v. N.Y.C. Dep't of Corr.*, 2012 U.S. Dist. LEXIS 142544, at *40-41 (S.D.N.Y. Sep. 27,

2012) ("medical malingering… may conceivably go to credibility and the extent of damages");
*Chapnick v. United States*, 2009 U.S. Dist. LEXIS 124597, at *30 (E.D.N.Y. Sep. 1, 2009)
(allowing evidence of malingering directly on the issue of credibility); *Cunningham v. United
States*, 472 F. Supp. 2d 366, 377 (E.D.N.Y. 2007) (admitting forensic psychiatrist's testimony
that plaintiff was not malingering in support of his claim of exacerbated PTSD); *Springer v.
Cedro*, 894 F. Supp. 2d 474, 480 (S.D.N.Y. 2012) (malingering evidence admitted during the
damages phase of a bifurcated trial); *Shepler v. Metro-N. Commuter R.R.*, 2016 U.S. Dist. LEXIS
51259, at *13 (S.D.N.Y. Apr. 15, 2016) (evidence of malingering is admissible, but not if it is
purely from a collateral source).

 Dr. Lopez-Leon's testimony regarding malingering is clearly admissible as to damages.
Indeed, this is precisely what is included in Dr. Lopez-Leon's report and opinion.  (*See*, Lopez-
Leon Dep., at p. 193: 1- 11 (tested and confirmed diagnosis of malingering); *id.*, p. 194:12- 195:
12 (regarding consistency of malingering behavior); *see also*, *id.*, at 200:5- 201:4 (nightmares
inconsistent with what would be expected of person with PTSD).  As a result, Plaintiff's
argument is misplaced. Dr. Lopez-Leon's testimony is not inadmissible credibility testimony, but
admissible testimony regarding malingering and symptomology.

 Finally, Plaintiff argues that Dr. Lopez-Leon's testimony must be excluded based on Fed.
R. Evid. 403, which prohibits the introduction of relevant evidence if "its probative value is
substantially outweighed by a danger of one or more of the following: unfair prejudice,
confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting
cumulative evidence."  Plaintiff's argument again hinges on the contention that Dr. Lopez-
Leon's report is somehow insufficiently based, and Plaintiff argues that Dr. Lopez-Leon

concluding that Jane Doe 1 was malingering is so prejudicial as to render it inadmissible. (Lopez-Leon M.I.L., Sec. II.B).

Malingering, as defined by Dr. Lopez-Leon, means "feigning symptoms for a secondary gain, either monetary or otherwise." (Lopez-Leon Dep., at p. 68: 19-22); *United States v. Espinal*, 769 F. Supp. 116, 120 (S.D.N.Y. 1991) (defining malingering as seeking "a secondary gain by feigning…"). Dr. Lopez-Leon's conclusion that Jane Doe 1 was malingering is necessarily based on some conduct, including, *inter alia*, the fact that Jane Doe 1 was unwilling to discuss incidents related to this lawsuit with the doctor without taking several breaks to talk to her attorney. (Lopez Leon M.I.L., Sec. II.B, p. 11). Plaintiff's argument that Dr. Lopez-Leon founded his opinion regarding malingering on specific conduct that is prejudicial is obviously true, and it is true in every case in which malingering testimony is offered; however, it is not substantially more prejudicial than probative. (*See, supra*, Section II.A (cases admitting evidence of malingering). Further, Plaintiff's arguments appear somewhat inconsistent, while attacking the admissibility of Dr. Lopez-Leon's opinion on the ground that it was not tied to any specific facts or data as required by Rule 702, Plaintiff is also identifying the specific facts and data underlying Dr. Lopez-Leon's opinion and arguing that they are impermissibly prejudicial.

Plaintiff's arguments to exclude the testimony of Dr. Lopez-Leon are without merit, and his opinions should be admitted into evidence.

## IV.   Plaintiffs' Motion to Preclude "Undisclosed" Witnesses is Moot, Except that the City Should be Permitted to Call Witnesses to Authenticate Documents (Dkt. 340-42)

Plaintiffs seek to preclude the City from calling witnesses whom the City did not identify in their Rule 26(a) disclosures. Most if not all of these witnesses have knowledge of the City's current policies and practices with regard to inmate sexual safety – evidence that would be

relevant to any claim for injunctive relief, but not for damages.  We would not have identified any of these witnesses during discovery because JD-1 did not seek injunctive relief in her own behalf at the outset and otherwise lacks standing to seek injunctive relief (as plaintiffs recognize in their own filings, *see, e.g.*, Dkt. 310, at 6), and because this Court denied class certification early in the case.

Plaintiffs recognize that the proof required for injunctive relief would differ from that required to prove <u>Monell</u> liability for damages only.  For example, they point out that Faye Yelardy, who is DOC's PREA coordinator, was appointed to that post in 2014, "<u>after the period of time relevant to plaintiffs' damage claims</u>."  (Dkt.341, at page 5 (emphasis in original); *see also id*. at pages 5-6 ("The majority of the undisclosed witnesses appear to be recent hires … who would therefore not have information pertinent to the historical time period relevant to the damages claims"))

As plaintiffs acknowledge, we informed them that some of these names would likely come off the list (Dkt. 341, at page 2, fn. 1), and at this time we would withdraw the names of those witnesses who were not deposed during discovery, as well as any witness to testify about camera coverage at RMSC.[5]  We expressly reserve our right to call them and any other appropriate witness if the Court decides to hold a bench trial on injunctive relief.

We submit, however, that the City should be permitted to call witnesses to authenticate and explain business records, even though we may not have identified these witnesses by name in our initial draft of the JPTO.  Plaintiffs' brief does not address this category of witnesses.  The two sets of records for whom the City plans to call witnesses are (i) JD-1's movement history, and (ii) Santiago's time sheets.  These records were produced during discovery and used in the

---

[5] Plaintiffs assert that our withdrawing these names somehow "underscore[s] the City's abuse of the pre-trial process" (Dkt. 341, at page 2, fn. 1).  We disagree.

City's motion for summary judgment.  Both sets of records were explained through the declarations of witnesses, neither of whom was identified in the City's Rule 26(a) disclosures. (*See* Dkt. 264 [Declaration of Capt. Tyrone Carter]; 265 [Declaration of Cynthia Wynn]) Plaintiffs did not object to our using declarations by those witnesses at the time.

Accordingly, we have edited our witness list to include these two witnesses, at this time. However, if either of them is unavailable, we respectfully request permission to call an equivalent witness whose knowledge will be interchangeable with that of Capt. Carter and Ms. Wynn – that is, the testimony will be limited to authenticating and explaining the business records.  We advised plaintiffs by email that this was our intent, by listing these witnesses by category rather than by name.  In these circumstances, we respectfully submit that any non-disclosure of witnesses whose sole function will be to authenticate and explain business records is "harmless."  Fed. R. Civ. P. 37(c)(1).

The circuit employs a four-factor test to determine whether preclusion of evidence that was not disclosed under Rule 26 is warranted:  "the explanation, if any, for the failure to name the witness or to otherwise supplement the [disclosure], the importance of the testimony of the witness, the need for time to prepare to meet the testimony, and the possibility of a continuance." *Outley v. City of New York*, 837 F.2d 587, 590 (2d Cir. 1988) (internal brackets omitted); *see Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (same).  None of these factors supports preclusion.  First, the City did not name the witness(es) because more than one City employee is qualified to authenticate and explain DOC records.  We would not ordinarily disclose the names of every such witness every time we produce business records kept by City agencies.  The City produced the records well within the discovery period, and plaintiffs did not seek the testimony of any witness during discovery to explain them.

Second, the testimony is important.  While lawyers can read the records and infer their meaning, a lay jury may not understand what the records show and how they were compiled. Witness testimony is needed to explain them.  Third, the time needed to prepare for the testimony is not substantial.  Again, plaintiffs' counsel had these records – the movement history and time sheets – from practically the outset of the case, and had substantial time to seek deposition testimony if they needed it, in order to understand them.  That they never sought such testimony indicates that they understand what these records show.  The witnesses would simply explain the records to the jury.  Fourth, we do not seek a continuance on this basis, nor do plaintiffs, because a continuance is not necessary.

For these reasons, plaintiffs' motion to preclude "undisclosed" witnesses should be denied to the extent set forth above.

## V.     Plaintiffs' Motion to Deem Certain Facts Admitted Should be Denied (Dkt. 343-45)

Plaintiffs seek an instruction from the Court during trial that fifty-five (55) stipulations proposed by plaintiffs concerning (1) chain of custody of the pants, (2) records relating to the City's investigation into JD-2's claims, (3) the response to allegations of rape and sexual abuse by Santiago, and (4) records relating housing area logbooks, be deemed admitted.  Importantly, plaintiffs cite to no case law as to why defendants should be forced to agree to their proposed stipulations, or as to why the Court should deem plaintiffs' proposed stipulations admitted.

When defendants received plaintiffs' portion of the proposed JPTO there were fifty-five (55) proposed stipulations that they wanted defendants to agree to.  City defendant agreed to four (4) stipulations, either as proposed or with minor edits. Defendants carefully reviewed all of the stipulations that plaintiffs are seeking to deem admitted.  Without burdening the Court with a paragraph-by-paragraph assessment of the reason why the majority of the stipulations were

rejected, defendant City refused to stipulate for various reasons, including, but not limited to, mischaracterization of the evidence/record and irrelevance.  As we explained to plaintiffs' counsel by email, we simply declined to adopt their characterization of the evidence, and would prefer that the relevant facts be told to the jury in the respective witness' own words.

The City proposed one additional stipulation to plaintiffs, namely that "forensic testing was conducted by experts for plaintiff Jane Doe 2 and the City, and the experts agree that semen was not present on the pants."  This fact is acknowledged by the experts for both sides. However, plaintiffs did not agree to the City's proposed stipulation.  Plaintiffs cannot have it both ways – indignation at "the City's refusal" to admit certain facts, when they refuse to admit to a fact that is indisputable.

On April 20, 2017, the City proposed three (3) additional stipulations: (1) "According to plaintiff's expert 'all of the tests were negative for the presence of semen.'" (Heinig report, at pg. 2); (2) "According to tests conducted by plaintiff's expert the 'tests establish that, while there was no semen found on the jeans, there was male DNA found in the crotch area as well as on other parts of the jeans.'" (Heinig report, at pg. 3); and (3) "According to tests conducted by plaintiff's expert 'a mixed DNA profile was obtained from the nonsperm fraction of the swabs from the right leg consisting of major and minor contributors with at least one male contributor.'"  (Heinig report, at pg. 2).  Plaintiffs, at the time of this submission, have yet to respond to the City as to whether they agree to these stipulations of indisputable facts.

Plaintiffs aim to try this case by dozens of stipulations and deposition designations in an attempt to prevent live witnesses from testifying before the jury.  We submit that the Court should exercise its discretion and not permit plaintiffs to do so (*see* Dkt. 330 [Defendant's Memorandum of Law in Support of Motions in Limine], at 6-12).  If the Court were to deem all

fifty-five (55) of plaintiffs' purported stipulations as admitted facts at trial there would no doubt

be repeat testimony from witnesses called by defendants who will be called for various reasons

to explain/clarify/rebut some or all of the facts that plaintiffs are asking the City to stipulate to.

Accordingly, defendant City submits that the Court should reject plaintiffs' request in its entirety

to deem certain facts admitted at trial.

**VI.**     **Plaintiffs' Motion to Exclude the City's Exhibits Should be Denied (Dkt. 346-48)**

Plaintiffs seek to preclude the City from introducing any exhibits at trial because we did

not identify our exhibits by Bates number on Monday, April 10, but were able to do so by

Thursday, April 13, 2017, three days later, and more than ten days before the JPTO was due to

be submitted.  Plaintiffs seek to preclude *all* of the City's exhibits, even though only *some* of

them had Bates numbers affixed to them in the first place.  In their motion (Dkt. 346-48),

plaintiffs do not assert any other grounds for exclusion of the exhibits, viz., all of the documents

either were produced in discovery or else publicly available and known to plaintiffs.

Although plaintiffs seek the extreme sanction of preclusion, they fail to cite *any* Rule or

decision that would support preclusion in these circumstances.  The motion, moreover, is

supported by at least one materially false representation regarding our designation of the Inmate

Grievances as an exhibit (discussed below).  This motion should be seen for what it is:  An

unsupported, baseless attempt to play "gotcha" on the eve of trial which would severely, and

unnecessarily, prejudice the City's defense and deny the jury important information necessary to

decide the case.  The motion should be denied.

As noted above, in order to assess any motion to preclude evidence at trial, the Court

should consider the following factors:  "the explanation, if any, for the failure to … supplement

the [disclosure], the importance of the testimony of the witness, the need for time to prepare to

meet the testimony, and the possibility of a continuance." *Outley*, 837 F.2d at 590.  None of these factors supports preclusion, and all strongly weigh in favor of denying plaintiffs' motion.

First, the explanation for the City's "non-disclosure" of Bates numbers is that the member of the City's team who handled that aspect of our trial preparation was working remotely the weekend before the exhibit list was due.  She had important family, child care obligations that weekend (facts that we did not share with plaintiffs' counsel because they are not necessarily entitled to know about such personal matters).  The City's system, however, does not allow for remote access to its document management databases.  Accordingly, we compiled the initial list as best we could remotely, and then added more exhibits in the days immediately afterward.  The "failure" to provide Bates numbers, moreover, was temporary.  We provided the Bates numbers three days later (Exhibit J [E-mail from Larkin to plaintiffs' team, 4/13 with list attached]).  Contrary to plaintiffs' counsel's representation, the list *does* include the Bates range for the Inmate Grievances (Exhibit J, at page 4).

Second, the importance of the information was minimal in this context.  We identified each exhibit with clear descriptions.  For example, we identified the investigation files we intended to use by file number and inmate name.  These files should have been readily accessible to plaintiffs – whose law firm, no doubt, has the ability to conduct searches of its document management systems and databases.  We did not identify by Bates number some of the documents that plaintiffs produced, such as their medical records, because these documents are readily identifiable and available to them.  We *could* not identify by Bates number those documents that had no Bates number – such as those related to each plaintiffs' criminal convictions that plaintiffs themselves identified in their discovery responses.  That plaintiffs seek

to preclude all of the City's exhibits when only some of them actually bore Bates numbers underscores the motion's lack of substance.

Third, the "time needed" by plaintiffs to locate the exhibits between the night of April 10, when we forwarded them, to the afternoon of April 13, was at most two and one-half business days. We understand that plaintiffs' objections to our exhibits were due initially on April 17, but in the course of preparing any JPTO, both parties typically continue working on the order and revising it until it is filed. If plaintiffs needed additional time to forward their objections to us, we would have understood – if they have further objections they want to add, they may do so up until the order is filed. The Court will then assess the objections at the pre-trial conference or at trial.[6] No additional time is needed, at this point, for plaintiffs to address the purported "non-disclosure" of Bates numbers.

Fourth, neither side seeks a continuance because one is not necessary.

For these reasons, we submit that plaintiffs' motion to preclude the City's exhibit list should be denied. While we do not move for sanctions against their counsel for filing this baseless motion, we remind the Court that 28 U.S.C. § 1927, and the Court's inherent authority, allow it to do so.

---

[6] In this connection, we suggested a stipulation that, subject to Your Honor's approval, neither side would object to an exhibit solely because it was not listed in the JPTO, but that all sides would reserve all other objections. Co-defendants' counsel agreed to the stipulation but plaintiffs did not.

## **CONCLUSION**

For the foregoing reasons, the City submits that plaintiffs' motions *in limine*

should be denied or otherwise decided as set forth above.

Dated:        New York, New York
              April 24, 2017

                            Respectfully submitted,

                            ZACHARY W. CARTER
                            Corporation Counsel of the City of New York
                            *Attorney for Defendants*
                            100 Church Street
                            New York, New York 10007
                            (212) 356-2641 or -2650


                            By:    _____/s/_____
                                   Arthur G. Larkin
                                   Kimberly M. Joyce
                                   Senior Counsels

                                   Peter Brocker
                                   Assistant Corporation Counsel

## LIST OF EXHIBITS

Exhibit A                         JD-1 certificates of disposition

Exhibit B                         JD-1 deposition excerpts (14-16, 59, 79-80,
                                  93-94, 97-108

Exhibit C                         JD-1 statements to police

Exhibit D                         *People v. [JD-1]*, Docket #2008-QN-034197
                                  (complaint, arrest report)

Exhibit E                         *People v. [JD-1]*, Docket #2011-QN-020818
                                  (complaint)

Exhibit F                         *People v. [JD-1]*, Docket #2007-QN-037819
                                  (complaint)

Exhibit G                         Report of Karen Rosenbaum, M.D. (JD-1)

Exhibit H                         Manuel Lopez-Leon, M.D. – CV

Exhibit I                         Lopez-Leon deposition excerpts

Exhibit J                         E-mail (Larkin to Bromley, 4/13 @ 2:06
                                  pm.), with attachment

Exhibit K                         *People v. [JD-2]*, plea allocution

Exhibit L                         JD-2 deposition excerpts (20-24, 59-61)

Exhibit M                         Report of Karen Rosenbaum, M.D. (JD-2)